1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| JOSEPH A. KENNEDY,<br><br>     *Plaintiff*,<br><br>  v.<br><br>BREMERTON SCHOOL DISTRICT,<br><br>     *Defendant*. | CASE NO.<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Joseph A. Kennedy ("Coach Kennedy") brings this action for declaratory and injunctive relief in order to vindicate his constitutional and civil rights to engage in the private religious expression that is compelled by his sincerely held religious beliefs.  The Bremerton School District ("BSD" or the "District") violated those rights when it took adverse employment action against him because of that expression.

## I. NATURE OF THE ACTION

1. Coach Kennedy has worked for nearly eight years as a popular and well-respected football coach at Bremerton High School ("BHS").

2. This case is about Coach Kennedy's right to pray quietly and alone at the conclusion of BHS football games, and to do so on the field where the game was played.  Coach Kennedy's sincerely held religious beliefs compel this brief, private religious expression.

3. Coach Kennedy's practice fully complies with BSD's written policies on "Religious-Related Activities and Practices," which nowhere prohibit religious expression by on-

duty school employees.  Board Policy 2340, Aug. 13, 1992, Ex. A.  It also complies with BSD's initial letter to Coach Kennedy, which prescribed certain guidelines for his religious expression while reaffirming that "you and all District employees possess fundamental free exercise and free expression rights under the First Amendment."  Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 2.

4.     BSD publicly admitted that there is "*no evidence*" that students have ever been "coerced" to pray with Coach Kennedy.  BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 1 (emphasis added).  BSD also admitted that Coach Kennedy has never "actively encouraged, or required, [student] participation" in any religious activity.  Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 2.

5.     BSD further conceded that Coach Kennedy's religious expression is "fleeting"— lasting no more than 30 seconds—and that no student, parent, or member of the community ever complained about that conduct in Coach Kennedy's eight years of coaching at BHS.  Letter to Coach Kennedy, Oct. 23, 2015, Ex. E, at 2; BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 3–4.

6.     But BSD was not satisfied with Coach Kennedy's full "compli[ance]" with its "directives not to intentionally involve students in his on-duty religious activities."  BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 2.  Instead of abiding by its written policies—and its initial letter to Coach Kennedy—BSD changed the rules.

7.     In a sweeping new directive, BSD purported to prohibit on-duty school employees from engaging in any and all "*demonstrative religious activity*" that is "readily observable to (if not intended to be observed by) students and the attending public."  Letter to Coach Kennedy, Oct. 23, 2015, Ex. E, at 3 (emphasis added).

8.     When Coach Kennedy engaged in the brief, quiet prayer that is required by his faith after the next BHS football game, BSD suspended him.  The District later retaliated against Coach Kennedy by giving him a poor performance evaluation—for the first time in his entire BHS coaching career—and then firing him because he purportedly "failed to follow district policy."  BSD Coaching Evaluation Form, Nov. 20, 2015, Ex. J.

COMPLAINT
Page 2

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

9.      BSD's revised directive, which purports to ban any "demonstrative religious activity" that is "readily observable" to students or members of the public, is baldly unconstitutional.  On its face, BSD's policy would prohibit all on-duty school employees, while in view of any student or member of the community, from making the sign of the cross, praying towards Mecca, or wearing a yarmulke, headscarf, or a cross.  After all, each of those actions is "demonstrative" religious expression and would be interpreted as such.

10.     BSD's actions violate Coach Kennedy's First Amendment rights to free speech and free exercise, as well as his rights under Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of religion.

11.     Coach Kennedy brings this Complaint to vindicate his constitutional and civil rights to act in accordance with his sincerely held religious beliefs by offering a brief, private prayer of thanksgiving at the conclusion of BHS football games.

## II.      PARTIES

12.     Plaintiff Joseph A. Kennedy resides in Port Orchard, Washington.

13.     Defendant Bremerton School District is a school district located in Bremerton, Washington.

## III.      JURISDICTION

14.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This action arises under the Constitution and laws of the United States; 42 U.S.C. § 1983; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

15.     Coach Kennedy also seeks a declaration of his rights in this case of actual controversy under 28 U.S.C. § 2201.

16.     This Court has personal jurisdiction over Bremerton School District because it is located in Kitsap County, Washington, which is within the area encompassed by the United States District Court for the Western District of Washington.

## IV.      VENUE

17.     Venue is proper in this court under 28 U.S.C. § 1391.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

18.     Defendant is located in Bremerton, Washington, which is within the area encompassed by the United States District Court for the Western District of Washington.   A substantial portion of the actions and conduct complained of occurred in Bremerton, Washington.

## V.     STATEMENT OF FACTS

### A.     Coach Kennedy's Background and Employment History

19.     Since 2008, Coach Kennedy has been employed as a football coach at BHS.   He has worked as an assistant coach for the BHS varsity football team and the head coach for the BHS junior varsity football team.

20.     Coach Kennedy is currently employed by the United States Navy at the Puget Sound Naval Shipyard and Intermediate Maintenance Facility in Bremerton, Washington.   The claims at issue in this action relate only to Coach Kennedy's employment as a football coach with BSD.

21.     Coach Kennedy was raised in the State of Washington.   After playing football and wrestling at Naches Valley High School, near Yakima, Washington, he moved to Bremerton to complete high school.   Coach Kennedy graduated from BHS in 1988.

22.     After graduating high school, Coach Kennedy served on active duty in the United States Marine Corps from 1988 to 2006.   He is a veteran of the Gulf War, where he served as a diesel mechanic for the Third Battalion, Eleventh Marine Corps Regiment.

23.     After the Gulf War, Coach Kennedy served in numerous leadership roles in the Marine Corps, including training non-commissioned officer, substance abuse control officer, company gunnery sergeant, and company first sergeant.   Coach Kennedy retired from the Marine Corps in 2006 as a gunnery sergeant.

24.     Coach Kennedy had extensive experience coaching and mentoring high school students on a volunteer basis before he was hired as a football coach at BSD.   He had previously worked as a volunteer football and wrestling coach at local high schools, including in Bellingham, Washington; Lewiston, Idaho; and Boise, Idaho.   Joseph A. Kennedy Resume, Ex. H.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

25.     Upon information and belief, BSD initially hired Coach Kennedy in part based on the strength of his leadership, his teamwork, and his experience mentoring student athletes.

26.     Prior to fall 2015, Coach Kennedy received overwhelmingly positive performance evaluations, which confirm that he "d[id] an excellent job mentoring players and building character in them," that "[h]is work with our players . . . is a great asset to our community," and that "[h]is enthusiasm and positive attitude is great for team [morale]." *See, e.g.*, BSD Coaching Evaluation Form, Dec. 2012, Ex. I; BSD Coaching Evaluation Form, Mar. 2012, Ex. I; BSD Coaching Evaluation Form, Nov. 2009, Ex. I.  Each of Coach Kennedy's prior evaluations recommended that he be rehired for the following year.

**B.     Coach Kennedy's Religious Beliefs and Religious Expression**

27.     Coach Kennedy is a practicing Christian.  He is compelled by his sincerely held religious beliefs to engage in brief, private religious expression at the conclusion of BHS football games.

28.     Coach Kennedy has engaged in private religious expression at the conclusion of football games since 2008, when he first started work as a BHS football coach.  After watching the film *Facing the Giants* (2006), Coach Kennedy made a covenant with God that he would give thanks through prayer, at the end of each game, for what the players had accomplished and for the opportunity to be part of their lives through the game of football.

29.     After the game is over, and after the players and coaches from both teams have met to shake hands at midfield, Coach Kennedy feels called to pause on the playing field to engage in private religious expression.  He takes a knee at the 50-yard line and offers a brief, quiet prayer of thanksgiving for player safety, sportsmanship, and spirited competition.  That prayer lasts approximately 30 seconds.

30.     Coach Kennedy is not motivated to engage in private religious expression in order to proselytize or attract others to his religious faith.  Instead, he offers a brief prayer of thanksgiving as part of a covenant he made with God before he started coaching at BHS.

31.     Because Coach Kennedy's prayer lifts up the players and recognizes their hard work and sportsmanship during the game, his sincerely held religious beliefs require him to pray

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

on the field where the game was played.  His private religious expression is outside the ordinary scope of his responsibilities as a BSD employee.

32.     Initially, in 2008, Coach Kennedy prayed alone.  After several games where he prayed alone, some BHS players asked whether they could join him.  Coach Kennedy responded, "This is a free country.  You can do what you want."

33.     Over time, the number of players who gathered near Coach Kennedy after the game grew to include the majority of the team.  The number of players who participated varied from game to game.  Sometimes there were no players who gathered, and Coach Kennedy prayed alone.  Sometimes BHS players invited players from the opposing team to join.

34.     Eventually, Coach Kennedy began giving short motivational speeches to the players after the game.  Those speeches often involved religious content.

35.     Some former BHS players have said that they "didn't view it as a prayer at all," because Coach Kennedy "didn't say 'under God' or anything involving religion. . . .  He just gave us a post-game speech."  Kelsey Harkness, "After Losing His Public School Job for Praying, Coach Kennedy Speaks Out," *The Daily Signal*, Jan. 26, 2016, http://dailysignal.com/2016/01/26/after-losing-his-public-school-job-for-praying-coach-kennedy-speaks-out/.  Another former player has said that, "I prayed because I'm Catholic, but some walked off.  There was never any pressure."  Christine Clarridge, "Crowd Prays with Coach as He Defies School District," *Seattle Times*, Oct. 16, 2015, http://www.seattletimes.com/seattle-news/education/scores-join-coach-in-postgame-prayer/.

36.     In the past, Coach Kennedy sometimes participated in pre- and post-game locker room prayers that the BHS football team engaged in as a matter of school tradition.  This activity "predated [his] involvement with the program."  Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 1.  Coach Kennedy's sincerely held religious beliefs do not require him to lead any prayer, involving students or otherwise, before or after BHS football games.  He immediately ceased participating in all locker room prayers upon receiving instructions to do so.

37.     At all times, as BSD concedes, "[e]ach activity has been voluntary," and there is "no evidence" that students have ever been "coerced" to pray with Coach Kennedy.  Letter to

COMPLAINT
Page 6

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Coach Kennedy, Sept. 17, 2015, Ex. B, at 1; BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 1.   Indeed, BSD has admitted that Coach Kennedy has never "actively encouraged, or required, [student] participation" in any religious activity.   Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 1.

38.   According to 2010 census data, approximately 73% of the people living in Kitsap County do not associate with a specific religion, making the Kitsap County population one of the least religious in the State.   Association of Religion Data Archives, Kitsap County Membership Report,   http://www.thearda.com/rcms2010/r/c/53/rcms2010_53035_county_name_2010.asp. But in the eight years since Coach Kennedy began working at BHS, no student, parent, or member of the community ever complained about his private religious expression after football games.   BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 3–4.

39.   Other BHS coaches have also engaged in religious expression at the beginning and end of BHS football games.   For example, Assistant Coach David Boynton has engaged in a Buddhist chant near the 50-yard line at the conclusion of many BHS football games.

40.   Upon information and belief, Coach Boynton has never been suspended, let alone dismissed, on the basis of his religious expression.

41.   Upon information and belief, BSD has previously allowed unrestricted public access to the football field at the conclusion of BHS football games.   Parents, fans, and members of the community frequently walked onto the field to congratulate players, meet with players, and socialize after the game.   BHS Athletic Director Jeff Barton has described the football field as a public space that cannot be closed to members of the public.

42.   Coach Kennedy does not pray in order to attract public attention or acclaim. Instead, he is compelled by his sincerely held religious beliefs to give thanks to God on the playing field at the conclusion of each game.   His goal is simply to coach high school football in his hometown and to act in accordance with his religious convictions.

C.   **BSD Issues an Initial Set of Directives for Coach Kennedy's Religious Expression**

43.   Upon information and belief, BSD became aware of Coach Kennedy's post-game

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

religious expression after an employee of another high school approached a BHS administrator to compliment him on Coach Kennedy's ability to bring players from opposing teams together at the conclusion of the game.  BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 3–4.

44.     On September 17, 2015, BSD Superintendent Aaron Leavell sent Coach Kennedy a letter announcing that BSD "has been conducting an inquiry into whether District staff have appropriately complied with Board Policy 2340, 'Religious-Related Activities and Practices.'" Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 1.  Board Policy 2340 provides as follows:

> As a matter of individual liberty, a student may of his/her own volition engage in private, non-disruptive prayer at any time not in conflict with learning activities. School staff shall neither encourage nor discourage a student from engaging in non-disruptive oral or silent prayer or any other form of devotional activity.

Board Policy 2340, Aug. 13, 1992, Ex. A, at 3.  Notably, Board Policy 2340 does not prohibit demonstrative religious expression by on-duty school employees.

45.     BSD's September 17, 2015 letter admitted that any student participation in Coach's Kennedy's post-game religious expression was entirely "voluntary," that Coach Kennedy "ha[d] not actively encouraged, or required, participation" by the students, and that his actions were "entirely well intentioned."  Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 1; *see also* Letter to BSD Families, Staff, and Community, Sept. 17, 2015, Ex. C, at 1 ("To be clear: The BSD football coaching staff's conduct has been entirely well intentioned.").

46.     BSD nevertheless opined that Coach Kennedy's actions "would very likely be found to violate the First Amendment's Establishment Clause."  Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 1.

47.     In the September 17, 2015 letter, BSD prescribed certain guidelines for Coach Kennedy's private religious expression.  Among other things, BSD stated that "[y]ou and all District staff are free to engage in religious activity, including prayer, so long as it does not interfere with job responsibilities" and is "physically separate from any student activity."  *Id.* at 3. BSD further stated that, "[i]n order to avoid the perception of endorsement," Coach Kennedy's religious expression "should either be non-demonstrative (*i.e.*, not outwardly

discernable as religious activity) if students are also engaged in religious conduct, or it should occur while students are not engaging in such conduct." *Id.*

48.     After receiving BSD's September 17, 2015 letter, Coach Kennedy temporarily stopped his practice of engaging in religious expression immediately after BHS football games. At the conclusion of the game on September 18, 2015, Coach Kennedy gave a short motivational speech to the players that included no mention of religion or faith.

49.     On his drive home, Coach Kennedy felt "dirty" because he had broken his covenant with God.  He turned his car around and went back to the field, where he waited until everyone else had left the stadium.  Then Coach Kennedy walked to the 50-yard line, where he knelt to pray alone.

### D.     BSD Denies Coach Kennedy's Request for a Religious Accommodation and Issues a New—And More Restrictive—Set of Directives

50.     On October 14, 2015, Hiram Sasser, counsel for Coach Kennedy, sent a letter to Superintendent Leavell and BSD Board Members Scott Rahm, J. David Rubie, Jonee Dubos, Alyson Rotter, and Carolynn Perkins.  Letter to BSD, Oct. 14, 2015, Ex. D, at 1.  In that letter, Coach Kennedy informed BSD that he is compelled by his sincerely held religious beliefs—his covenant with God—to pray following each football game.  *Id.* at 1–2.  The letter further explained that Coach Kennedy's private religious expression is protected by the First Amendment to the United States Constitution, and that there is no lawful basis to prohibit that religious expression.

51.     In response to BSD's stated concerns about the Establishment Clause, the letter explained that, under controlling U.S. Supreme Court and Ninth Circuit case law, "[t]here can be no legitimate concern that the District is somehow establishing religion because it merely permits one of its coaches . . . to say a short personal prayer after a football game." *Id.* at 4.

52.     In his October 14, 2015 letter, Coach Kennedy formally requested a religious accommodation under Title VII of the Civil Rights Act that would affirm his right to engage in a brief, quiet prayer at the 50-yard line at the conclusion of BHS games.  *Id.* at 1, 6.  Coach

COMPLAINT
Page 9

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Kennedy also informed BSD that, beginning on October 16, 2015, he would continue his practice of saying a brief, private prayer following BHS football games.  *Id.* at 6.

53.     At the conclusion of the football game on October 16, Coach Kennedy walked to midfield for the customary handshake with the opposing team.  He waited until the BHS players were walking toward the stands to sing the post-game fight song.  Then he knelt at the 50-yard line, closed his eyes, and prayed a brief, silent prayer.

54.     While Coach Kennedy was kneeling with his eyes closed, coaches and players from the opposing team, as well as members of the general public and media, spontaneously joined him on the field and knelt beside him.

55.     On October 23, 2015, just hours before the football game scheduled for that night, Superintendent Leavell sent Coach Kennedy a second letter that "emphasize[d] [his] appreciation for [Coach Kennedy's] efforts to comply with the September 17 directives," and acknowledged that Coach Kennedy's religious expression on October 16 was "fleeting."  Letter to Coach Kennedy, Oct. 23, 2015, Ex. E, at 1–2.

56.     Nonetheless, BSD went on to deny Coach Kennedy's request for a religious accommodation and opine that his "overtly religious conduct" was prohibited by the Establishment Clause.  *Id.* at 2.

57.     In its October 23, 2015 letter, BSD claimed for the first time that Coach Kennedy's religious expression—although "fleeting"—nonetheless "drew [him] away from [his] work," including certain post-game supervisory tasks.  *Id.*  But BSD had never formally or informally assigned any post-game supervisory obligations that would prohibit Coach Kennedy from engaging in "fleeting" religious expression lasting no more than 30 seconds—a shorter period of time than would be required for a trip to the bathroom.

58.     Instead, BSD invoked these alleged post-game supervisory tasks to discourage Coach Kennedy's religious expression and discriminate against him on that basis.

59.     BSD's October 23, 2015 letter further suggested that that Coach Kennedy should abandon his typical practice and instead leave the field and go to a "private location within the school building, athletic facility or press box" in order to pray.  *Id.* at 3.  That invitation belies

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

any concerns about post-game supervision, since traveling to a location dozens or hundreds of yards away would obviously take Coach Kennedy away from his players for a significantly longer period of time.

60.    By suggesting that Coach Kennedy should pray in a "private location" that is physically separated from his players, BSD effectively admitted that post-game supervisory obligations are no reason to prohibit Coach Kennedy's religious expression.

61.    BSD's proposal also failed to accommodate Coach Kennedy's sincerely held religious beliefs, which compel him to pray on the playing field as he gives thanks for player sportsmanship and safety during the game that has just concluded.

62.    The prohibitions laid out in BSD's October 23, 2015 letter are significantly broader than those contained in its initial letter.  The September 17, 2015 letter affirmed Coach Kennedy's right to "engage in religious activity, including prayer" so long as it "does not interfere with job responsibilities" and is "physically separate from any student activity."  Letter to Coach Kennedy, Sept. 17, 2015, Ex. B, at 3.  The District's October 23, 2015 letter, however, forbid Coach Kennedy from engaging in any "demonstrative religious activity" that is "readily observable to (if not intended to be observed by) students and the attending public."  Letter to Coach Kennedy, Oct. 23, 2015, Ex. E, at 3.

63.    At the conclusion of the BHS varsity football game on October 23, 2015—the same day he received the District's second letter—Coach Kennedy knelt alone at the 50-yard line and bowed his head for a brief, quiet prayer.

### E.    BSD Places Coach Kennedy on Administrative Leave and Prohibits Him from Participating in BHS Football Activities

64.    On October 28, 2015, BSD placed Coach Kennedy on paid administrative leave and prohibited him from "participat[ing], in any capacity, in BHS football program activities." Letter to Coach Kennedy, Oct. 28, 2015, Ex. F.  The District's stated reason for these adverse employment actions was that Coach Kennedy had "engag[ed] in overt, public and demonstrative religious conduct while still on duty as an assistant football coach."  *Id.*

COMPLAINT
Page 11

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

65.     BSD summarized its purported rationale for taking adverse employment action against Coach Kennedy in a public document entitled "Bremerton School District Q&A Regarding Assistant Football Coach Joe Kennedy."  BSD Statement and Q&A, Oct. 28, 2015, Ex. G.  The District stated that it had placed Coach Kennedy on administrative leave because he "engag[ed] in overt, public religious displays on the football field while on duty as a coach."  *Id.* at 1.  At the same time, the District conceded that Coach Kennedy "has complied with [BSD's] directives not to intentionally involve students in his on-duty religious activities."  *Id.* at 2.

66.     Upon information and belief, although BHS Assistant Coach David Boynton has engaged in a Buddhist chant at the 50-yard line at the conclusion of many BHS football games— and has continued to do so after BSD issued its October 23, 2015 letter—BSD did not take adverse employment action against Coach Boynton on the basis of his religious expression.

## F.     BSD Retaliates Against Coach Kennedy By Giving Him a Poor Performance Evaluation and Failing to Re-Hire Him

67.     Prior to fall 2015, Coach Kennedy received overwhelmingly positive performance evaluations.  *See, e.g.*, BSD Coaching Evaluation Form, Dec. 2012, Ex. I (Coach Kennedy "d[id] an excellent job mentoring players and building character in them"); BSD Coaching Evaluation Form, Mar. 2012, Ex. I ("[h]is work with our players . . . is a great asset to our community"); BSD Coaching Evaluation Form, Nov. 2009, Ex. I ("[h]is enthusiasm and positive attitude is great for team [morale]").  Each of those prior performance evaluations recommended that Coach Kennedy be rehired for the following year.

68.     In November 2015, however, Coach Kennedy received a poor performance evaluation for the first time in his BHS coaching career.  BSD Coaching Evaluation Form, Nov. 20, 2015, Ex. J.  The November 2015 evaluation recommended that Coach Kennedy not be rehired because he allegedly "failed to follow district policy" regarding religious expression and allegedly "failed to supervise student-athletes after games."  *Id.*

69.     In January 2016, Coach Kennedy's contract was not renewed.

70.     Although BSD attributed its adverse employment actions to Coach Kennedy's alleged failure to follow district policy and supervise players, the District's own correspondence

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

makes clear that it acted on the basis of Coach Kennedy's religious expression. *See* BSD Statement and Q&A, Oct. 28, 2015, Ex. G, at 1 ("This action was necessitated" because Coach Kennedy failed to "refrain from engaging in overt, public religious displays on the football field while on duty as a coach"); Letter to Coach Kennedy, Oct. 28, 2015, Ex. F (Coach Kennedy "engag[ed] in overt, public and demonstrative religious conduct while still on duty as an assistant football coach").

71.     Upon information and belief, although Coach Boynton has continued to engage in private religious expression at the conclusion of BHS football games, BSD did not give poor performance evaluations to Coach Boynton or otherwise retaliate against him based on his religious expression.

### G.     Coach Kennedy Files a Charge of Religious Discrimination with the EEOC

72.     Coach Kennedy promptly filed a complaint of religious discrimination with the Equal Employment Opportunity Commission (EEOC) on December 15, 2015.  He filed a discrimination charge on January 30, 2016.

73.     The U.S. Department of Justice issued a right-to-sue letter on June 27, 2016. Letter to Mr. Joseph Kennedy, June 27, 2016, Ex. K.

## VI.     CAUSES OF ACTION

### COUNT I – VIOLATION OF FIRST AMENDMENT RIGHT TO FREE SPEECH

74.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

75.     Pursuant to 42 U.S.C. § 1983, Coach Kennedy brings this claim against BSD for acting under color of state law to deprive him of rights secured by the U.S. Constitution.

76.     Coach Kennedy's private religious expression is fully protected under the First Amendment, which prohibits the government from "abridging the freedom of speech."  This prohibition applies to state and local governments through the Fourteenth Amendment.

77.     By BSD's own admission, Coach Kennedy's protected religious expression was a driving factor in its decision to take adverse employment action against Coach Kennedy.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

78.     BSD's ban on any demonstrative religious expression by Coach Kennedy violates the First Amendment, as does its decision to take adverse employment action against him because of such expression.

79.     BSD has engaged in unconstitutional viewpoint discrimination against Coach Kennedy.

**COUNT II – VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE EXERCISE**

80.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

81.     Pursuant to 42 U.S.C. § 1983, Coach Kennedy brings this claim against BSD for acting under color of state law to deprive him of rights secured by the U.S. Constitution.

82.     The First Amendment likewise guarantees Coach Kennedy's right to freely exercise his religion.

83.     BSD's blanket ban on any demonstrative religious expression by Coach Kennedy violates the First Amendment, as does its decision to take adverse employment action against him because of such expression.

**COUNT III – DISPARATE TREATMENT UNDER TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964**

84.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

85.     BSD's decision to enforce its apparent policy banning all private, demonstrative religious expression by employees on duty against only Coach Kennedy—and not other similarly situated employees who also engaged in private, demonstrative religious expression—constitutes disparate treatment under the Title VII of the Civil Rights Act of 1964.

86.     BSD directly discriminated against Coach Kennedy on the basis of his religion.

87.     Specifically, the District's conduct constitutes discrimination on the basis of religion under 42 U.S.C. § 2000e-2(a).

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

88.     Coach Kennedy is entitled to an injunction reinstating him as an assistant coach for the BHS varsity football team and the head coach of the BHS junior varsity football team under 42 U.S.C. § 2000e-5(g).

### COUNT IV – PROTECTED CHARACTERISTIC AS A MOTIVATING FACTOR UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

89.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

90.     Coach Kennedy's protected religious expression was a motivating factor behind BSD's decision to take adverse employment action against Coach Kennedy.

91.     Specifically, the District's conduct violates 42 U.S.C. § 2000e-2(m).

### COUNT V – FAILURE TO ACCOMMODATE UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

92.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

93.     BSD failed to offer Coach Kennedy a reasonable accommodation that would allow him to exercise his sincerely held religious beliefs.

94.     BSD's decision not to offer Coach Kennedy a reasonable accommodation to practice his sincerely held religious beliefs violates Title VII of the Civil Rights Act of 1964.

95.     Specifically, the District's conduct violates 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-(j).

### COUNT VI – RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

96.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

97.     BSD retaliated against Coach Kennedy as prohibited by Title VII of the Civil Rights Act of 1964 when it took adverse employment action against him on the basis of his opposition to a prohibited employment action: that is, discrimination against him based on his religious beliefs.

98.     Specifically, the District's conduct violates 42 U.S.C. § 2000e-3(a).

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

### COUNT VII – FAILURE TO RE-HIRE UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

99.     Coach Kennedy hereby incorporates and adopts by reference each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

100.    BSD discriminated against Coach Kennedy as prohibited by Title VII of the Civil Rights Act of 1964 when it failed to re-hire him on the basis of his religious beliefs.

101.    Specifically, the District's conduct violates 42 U.S.C. § 2000e-2(a)(1).

### VII.    REQUEST FOR ATTORNEYS' FEES AND COSTS

102.    Coach Kennedy is entitled to recover reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b), in an amount to be proven at trial.

103.    Coach Kennedy is likewise entitled to attorneys' fees and costs under 42 U.S.C. § 2000e-5(k), in an amount to be proven at trial.

### VIII.    JURY TRIAL DEMAND

104.    Coach Kennedy requests a jury trial on all issues that may be tried to a jury.

### PRAYER FOR RELIEF

Coach Kennedy prays that this Court enter Judgment:

1.     Declaring that BSD's discrimination against Coach Kennedy on the basis of his religious expression violates Coach Kennedy's freedom of speech as protected by the First Amendment;

2.     Declaring that BSD's discrimination against Coach Kennedy on the basis of his religious expression violates Coach Kennedy's right to free exercise as protected by the First Amendment;

3.     Declaring that BSD's actions violate Title VII of the Civil Rights Act of 1964;

4.     Ordering BSD to reinstate Coach Kennedy to his previous positions as assistant coach of the BHS varsity football team and head coach of the BHS junior varsity football team;

5.     Ordering BSD to provide Coach Kennedy with a religious accommodation that affirms his right to offer a brief, quiet prayer at the 50-yard line at the conclusion of BHS football games;

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

6.      Awarding Coach Kennedy attorneys' fees and costs;

7.      Awarding Coach Kennedy pre- and post-judgment interest; and

8.      Awarding Coach Kennedy all other appropriate relief as the Court deems just and

proper.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Dated:  August 9, 2016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hiram Sasser*
        SBA No. 24039157
Michael Berry*
        SBA No. 24085835
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel:  (972) 941-6162
Fax:  (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*

Anthony J. Ferate*
        SBA No. 21171
FERATE PLLC
4308 Echohollow Trail
Edmond, OK 73025
Tel: (202) 486-7211
*aj@feratepllc.com*

Respectfully submitted,

Rebekah Perry Ricketts*
        SBA No. 24074883
Benjamin D. Wilson
        SBA No. 24084105
Bryan M. Clegg
        SBA No. 24097506
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Tel:  (214) 698-3100
Fax:  (214) 571-2900
*rricketts@gibsondunn.com*
*bwilson@gibsondunn.com*
*bclegg@gibsondunn.com*

 /s/ *Jeffrey Paul Helsdon*
Jeffrey Paul Helsdon
        WSBA No. 17479
OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel:  (253) 564-9500
Fax:  (253) 414-3500
*jhelsdon@tacomalawfirm.com*

*Counsel for Plaintiff Joseph A. Kennedy*

*\* Pro hac vice* application pending.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2016, the foregoing document was served via electronic filing on all counsel of record in this case.


/s/ *Jeffrey Paul Helsdon*
Counsel for Plaintiff

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500