# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| JOSEPH A. KENNEDY, | CIVIL ACTION NO. |
| *Plaintiff*, | |
| v. | **COMPLAINT** |
| BREMERTON SCHOOL DISTRICT, | |
| *Defendant*. | **JURY DEMAND** |

### Complaint Appendix

| Exhibit | Description |
|---|---|
| A | Board Policy 2340, Aug. 13, 1992 |
| B | Letter from Bremerton School District to Coach Kennedy, Sept. 17, 2015. |
| C | Letter to BSD Families, Staff, and Community, Sept. 17, 2015. |
| D | Letter from Coach Kennedy to Bremerton School District, Oct. 14, 2015. |
| E | Letter from Bremerton School District to Coach Kennedy, Oct. 23, 2015. |
| F | Letter from Bremerton School District to Coach Kennedy, Oct. 28, 2015. |
| G | Bremerton School District Statement and Q&A, Oct. 28, 2015. |
| H | Joseph A. Kennedy Resume. |
| I | BSD Coaching Evaluation Forms, 2009-2012. |
| J | BSD Coaching Evaluation Form, Nov. 20, 2015. |
| K | EEOC Letter to Mr. Joseph Kennedy, June 27, 2016. |

# EXHIBIT

# A

**Religious-Related Activities and Practices**

The Board recognizes that views and opinions regarding the relationship of the schools and religion are diverse.  While community opinions are important in shaping policy, the Board must give primary credence to the United States and Washington state constitutions and the decisions made by the respective courts when establishing guidelines for making decisions regarding religious-related activities and practices.  The Board further accepts the declaration of the state Board of Education that "all students . . . possess the constitutional right to the free exercise of religion and to have their schools free from sectarian control or influence."  To this end, the Board hereby establishes the following guidelines to preserve the rights of all students within the framework of the respective constitutions.

1.  Factual and objective teaching about religion, the impact of religion and religious-based ideas and ideals may be included in classroom instruction in relation to the District's educational goals and essential student learning objectives.  It is inherent to the teaching of history, science, literature, social studies, intercultural education, human relations, art and music to include what various religions and religious movements have contributed to these fields.

    Study of these disciplines, including the religious dimension, shall give neither preferential nor disparaging treatment to any single religion or to religion in general and must not be introduced or utilized for devotional purpose.

    Criteria used to guide academic inquiry in the study of religion shall seek the same neutrality, objectivity and educational effectiveness expected in other areas of the curriculum.  In addition, materials and activities should be sensitive to America's pluralistic society and should educate rather than indoctrinate.  Instructional activities should meet the three-part test established and used by the US Supreme Court to determine constitutionality:

    a.    the activity must have a secular purpose;
    b.    the activity's principal or primary effect must be one that neither advances nor inhibits religion and
    c.    the activity must not impose excessive involvement on the part of the school in order to maintain a neutral position toward the advancement of religion.  This constitutional restriction shall not preclude a student from expressing his/her views relative to belief or non-belief about a religious-related issue in compositions, reports, music, art, debate and classroom discussion, when consistent with the assignment.

    All religious-related instructional materials and/or activities must relate to secular student learning goals or standards.

    Staff shall avoid assigning work that emphasizes the religious aspects of a holiday.  Individual students should be allowed, at their own direction, to use religious personages, events or symbols as a vehicle for artistic expression, if consistent with the assignment.

2.   A student may decline to participate in a school activity that is contrary to his/her religious convictions.  School personnel will honor written requests from parents who want their child or children excused from any activity the parents deem objectionable and will provide an alternative activity for any child so excused.

3.   If non curriculum-related student groups are permitted to meet on school premises immediately before or after school hours, students shall be permitted to meet to discuss religious, political, philosophical or other issues provided such group meetings are student-initiated and student-managed in compliance with Board policy.

4.   Religious groups may rent school facilities under the policy providing for facilities rental. Activities of such groups shall be clearly separated from school sponsored activities so that the District does not support or appear to support the establishment of religion.

5.   A student may distribute religious literature under the same conditions that other literature may be distributed on the campus provided that such distribution does not intrude on the operation of the school.

6.   Material and/or announcements promoting religion may not be distributed by non-students or on behalf of groups or individuals who are not students.

7.   Religious services, programs or assemblies shall not be conducted in school facilities during school hours or in connection with any school sponsored or school related activity.  Speakers and/or programs that convey a religious or devotional message are prohibited.

8.   Musical, artistic and dramatic presentations which have a religious theme may be included in course work and programs on the basis of their particular artistic and educational value or traditional secular usage.  They shall be presented in a neutral, non-devotional manner, be related to the objective of the instructional program and be accompanied by comparable artistic works of a nonreligious nature.

   Music and drama of religious significance should be justified on the basis of its particular musical or dramatic value.  The program should not be presented in such a way as to promote any particular religious belief or experience.  Any program which constitutes the practice of religious rites or which might be interpreted as religious indoctrination must be avoided.

   Since a variety of activities are included as part of a holiday theme, care must be exercised to focus on the historical and secular aspects of the holiday rather than its devotional meanings. Music programs shall not use the religious aspect of a holiday as the underlying message or theme.  Pageants, plays and other dramatic activities shall not be used to convey religious messages.  Religious symbols such as nativity scenes, if used, shall be displayed in conjunction with a variety of secular holiday symbols so that the total presentation emphasizes the cultural rather than religious significance of the holiday.

9.      A student, upon the request of a parent, may be excused to participate in religious instruciton for a portion of a school day provided the activity is not conducted on school property. (Credit shall not be granted for such instruction.)

10.     Upon receipt of a parent(s) request, a student shall be excused from attending school in observance of a religious holiday.

11.     Students may wear religious attire or symbols provided they are not materially and substantially disruptive to the educational process.

12.     As a matter of individual liberty, a student may of his/her own volition engage in private, non-disruptive prayer at any time not in conflict with learning activities.  School staff shall neither encourage nor discourage a student from engaging non-disruptive oral or silent prayer or any other form of devotional activity.

13.     Commencement exercises shall be free from sectarian influence.

14.     There shall be no school sponsorship of baccalaureate services.  Interested parents and students may plan and organize baccalaureate exercises provided that the service is not promoted through the school and staff, and student participation is voluntary.

15.     NJROTC ceremonies and/or activities shall be non-sectarian in nature.  Traditions such as invocation and benediction observances which are non-denominational in nature may be included as part of the military procedure used in events such as annual inspection, pass-in-review, etc.

Students, parents and staff who are aggrieved by practices or activities conducted in the school or District may register their concern with the building principal or District Superintendent.

| Legal Reference: | US Constitution | First Amendment, Fourteenth Amendment |
| | Wash Constitution | Article I, § 11 |
| | Wash Constitution | Art. 9, Sec. 4 and Art. 26 |

Bremerton School District

| Adopted: | 11/14/85 | | |
| Revised: | 10/11/90 | 10/15/98 | |
| Affirmed: | 4/23/87 | 1/11/90 | 8/13/92 |

# EXHIBIT

# B



**Bremerton
School
District**

September 17, 2015

Dear Mr. Kennedy:

As you are aware, the Bremerton School District has been conducting an inquiry into whether District staff have appropriately complied with Board Policy 2340, "Religious-Related Activities and Practices," particularly with respect to the Bremerton High School football program. That policy is intended to implement the District's obligation to ensure that the fundamental constitutional rights of all members of the District community are honored. I wish to thank you for your candid cooperation and assistance in that process.

The District's inquiry has revealed two problematic practices within the football program. First, we learned that you have a practice, at most games, of providing an inspirational talk at midfield following the completion of the game. Students from both Bremerton High School and the opposing team (along with coaches from the opposing team and sometimes other attendees of the game) are invited to participate in this activity. During the activity, you hold up a helmet from each team and speak while the students and other participants kneel. Your talks have included overtly religious references, and you acknowledged that they likely constitute prayer. You explained that you began kneeling at midfield following games when you first started coaching at BHS, and that over time students asked to join, with the activity evolving organically.

Second, you acknowledged that prior to most games, in the locker room, you lead the students and coaching staff in a prayer. You explained that this activity predated your involvement with the program.

Each activity has been voluntary. While students and others have either been invited or allowed to join in, you have not actively encouraged, or required, participation. Nevertheless, as I believe you now understand, both activities would very likely be found to violate the First Amendment's Establishment Clause, exposing the District to significant risk of liability.

The District's inquiry revealed that there has been little, if any, training of coaching staff regarding Policy 2340 or the broad range of issues related to religious conduct of District staff in relation to students. Many assistant coaches, including yourself, are not professional educators and thus likely have not been exposed to extensive education and training regarding the admittedly complex constitutional law issues arising in public education. Thus, while I am concerned that you continued the midfield postgame prayer in games on September 11 and 14, 2015, following direction from your head coach as well as the BHS athletic director to cease these activities, I also understand how these practices developed and persisted over time, and know that they have been entirely well intentioned.

That said, I believe we agree that going forward, it is imperative that clear parameters be established and consistently followed in order to ensure that the rights of all BHS community members are respected and honored. Board Policy 2340 includes the following statement:

> As a matter of individual liberty, a student may of his/her own volition engage in private, non-disruptive prayer at any time not in conflict with learning activities. School staff shall neither encourage nor discourage a student from engaging in non-disruptive oral or silent prayer or any other form of devotional activity.

This policy is intended to implement the District's obligations under the First Amendment to the United States Constitution, which reads:

> Congress shall make no law respecting *an establishment of religion*, or *prohibiting the free exercise thereof*; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Many decades of federal court litigation, including decisions of the United States Supreme Court, have fleshed out the meaning of the First Amendment's Establishment Clause and Free Exercise Clause. In the public schools context, it is clear that schools and their employees may not directly prohibit students from participating in religious activities, nor may they require students to participate in religious activities. Further, it is equally clear that school staff may not indirectly encourage students to engage in religious activity (or discourage them from doing so), or even engage in action that is likely to be perceived as endorsing (or opposing) religion or religious activity. In short, schools and their employees, while performing their job duties, must remain neutral – allowing non-disruptive student religious activity, while neither endorsing nor discouraging it.

As pertains to athletics, the federal courts have held that:

- Schools may not allow prayers to be read – even by students – over the public address system at even optional extracurricular events, such as football games – *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000)
- Schools may not allow coaches to initiate, lead or supervise student prayer – *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (5th Cir. 1995)
- Schools may not even allow coaches to participate in or appear to endorse religious activity that is entirely student-initiated – *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153 (3rd Cir. 2008)

I recognize that you and all District employees possess fundamental free exercise and free expression rights under the First Amendment. However, the courts have held that where there is direct tension between the district's need to avoid an Establishment Clause violation and a school employee's free exercise or expression rights, the latter must yield so far as necessary to avoid school endorsement of religious activities. *Borden*, above; *Berger v. Rensselaer Central School Corp.*, 982 F.2d 1160 (7th Cir. 1993). The District is clearly bound by these federal precedents. Should the District disregard them, allowing conduct that violates the Establishment Clause, the

District will be subjected to significant potential liability, endangering precious funds needed to educate the District's students and sustain its important programs.

Therefore, the following clear standards apply and must be adhered to going forward:

- You may continue to provide motivational, inspirational talks to students before, during and after games and other team activity, focusing on appropriate themes such as unity, teamwork, responsibility, safety, endeavor and the like that have long characterized your very positive and beneficial talks with students.
- Your talks with students may not include religious expression, including prayer. They must remain entirely secular in nature, so as to avoid alienation of any team member.
- Students are free to initiate and engage in religious activity, including prayer, so long as it does not interfere with school or team activities. Student religious activity must be entirely and genuinely student-initiated, and may not be suggested, encouraged (or discouraged), or supervised by any District staff.
- If students engage in religious activity, school staff may not take any action likely to be perceived by a reasonable observer, who is aware of the history and context of such activity at BHS, as endorsement of that activity. Examples identified in the *Borden* case include kneeling or bowing of the head during the students' religious activity.
- You and all District staff are free to engage in religious activity, including prayer, so long as it does not interfere with job responsibilities. Such activity must be physically separate from any student activity, and students may not be allowed to join such activity. In order to avoid the perception of endorsement discussed above, such activity should either be non-demonstrative (*i.e.*, not outwardly discernible as religious activity) if students are also engaged in religious conduct, or it should occur while students are not engaging in such conduct.

I understand that the foregoing parameters may not address every potential scenario. They are intended to ensure that existing problematic practices do not continue. I encourage you to raise any questions you may have about these parameters, or scenarios not clearly addressed by them, with your supervisors, and also invite you to address such questions directly to me. I am sincerely committed to honoring your rights and continuing your outstanding contributions to the BHS football program, while also ensuring that the District is not exposed to liability because we have inadvertently violated the rights of students or other community members. I am confident that we share these important goals, and can work together to achieve them going forward.

Sincerely,

Aaron Leavell, Superintendent
Bremerton School District

# EXHIBIT

# C



**Bremerton
School
District**

September 17, 2015

Dear Bremerton School District families, staff and community,

Our District recently learned that a member of our coaching staff was participating in religious prayer with our students on school property. Because of the constitutional concerns this raised, we hired an outside attorney to determine whether there was a need for training and clarification of the parameters around staff involvement in religious activities with students.

These concerns have now been resolved.

We are pleased that Joe Kennedy will continue coaching our student athletes, and we look forward to the game tomorrow night.

Our coaching staff can continue to provide motivational, inspirational talks to students before, during and after games and other team activity, focusing on appropriate themes such as unity, teamwork, responsibility, safety and endeavor. This is the heart of our athletics program.

However, talks with students may not include religious expression, including prayer. They must remain entirely secular in nature, so as to avoid alienation of any team member and, importantly, violate the law and our Board policy.

Students are free to initiate and engage in religious activity, including prayer, so long as it does not interfere with school or team activities. Student religious activity must be entirely and genuinely student-initiated, and may not be suggested, encouraged (or discouraged), or supervised by any District staff.

The District is bound by these federal precedents. Should the District disregard them, we would be subjected to significant potential liability, endangering precious funds needed to educate the District's students and sustain its important programs.

Moving forward, the District realizes we must take steps to make sure our staff members understand the implications of federal law. We will make sure coaching staff are provided ample training regarding this admittedly complex area of constitutional law. **To be clear: The BHS football coaching staff's conduct has been entirely well-intentioned.** It is up to the District to establish clear parameters that will ensure compliance with these laws (*included on page 2 and 3 of this document*).

While we certainly wish we had provided coaching staff with training and direction that might have avoided the current controversy, this process has been a learning experience – one that will surely continue – and I am optimistic that the BHS football program will continue to thrive within these newly clarified guidelines.

Sincerely,

Aaron Leavell, Ed.D
Superintendent

/pg

Bremerton Policy and Legal References

Board Policy 2340 includes the following statement:

> As a matter of individual liberty, a student may of his/her own volition engage in private, non-disruptive prayer at any time not in conflict with learning activities. School staff shall neither encourage nor discourage a student from engaging in non-disruptive oral or silent prayer or any other form of devotional activity.

This policy is intended to implement the District's obligations under the First Amendment to the United States Constitution, which reads:

> Congress shall make no law respecting *an establishment of religion*, or *prohibiting the free exercise thereof*; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Many decades of federal court litigation, including decisions of the United States Supreme Court, have fleshed out the meaning of the First Amendment's Establishment Clause and Free Exercise Clause. In the public schools context, it is clear that schools and their employees may not directly prohibit students from participating in religious activities, nor may they require students to participate in religious activities. Further, it is equally clear that school staff may not indirectly encourage students to engage in religious activity (or discourage them from doing so), or even engage in action that is likely to be perceived as endorsing (or opposing) religion or religious activity. In short, schools and their employees, while performing their job duties, must remain neutral – allowing non-disruptive student religious activity, while neither endorsing nor discouraging it.

As pertains to athletics, the federal courts have held that:

- Schools may not allow prayers to be read – even by students – over the public address system at even optional extracurricular events, such as football games – *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000)
- Schools may not allow coaches to initiate, lead or supervise student prayer – *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (5th Cir. 1995)
- Schools may not even allow coaches to participate in or appear to endorse religious activity that is entirely student-initiated – *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153 (3rd Cir. 2008)

The District of course recognizes that its employees possess fundamental free exercise and free expression rights of their own under the First Amendment. However, the courts have held that where there is direct tension between the district's need to avoid an Establishment Clause violation and a school employee's free exercise or expression rights, the latter must yield so far as necessary to avoid school endorsement of religious activities. *Borden*, above; Berger *v. Rensselaer Central School Corp.*, 982 F.2d 1160 (7th Cir. 1993). The District is bound by these federal precedents. Should the District disregard them, allowing conduct that violates the

Establishment Clause, the District will be subjected to significant potential liability, endangering precious funds needed to educate the District's students and sustain its important programs.

The District's inquiry into this matter did reveal practices that are not allowed under federal precedent. However, it also revealed that coaching staff have not been provided ample training regarding this admittedly complex area of constitutional law. **To be clear: The BHS football coaching staff's conduct has been entirely well-intentioned.**

Going forward, the District has established clear parameters that will ensure compliance with the District's obligations under the Establishment Clause, while honoring and respecting the fundamental personal free exercise and free expression rights of students and the coaching staff. These parameters will continue to allow students to engage in voluntary, student-initiated religious activity; allow coaching staff to continue to deliver the inspirational, motivational, team-building talks to students that have been such an asset not only to BHS teams but to those of opposing teams and their coaching staffs; and allow our staff to engage in their own religious activities in a manner that will not run afoul of the United States Constitution.

September 17, 2015

# EXHIBIT
# D



October 14, 2015

<u>***Via Certified Mail RRR and E-mail***</u>

Bremerton School District
134 Marion Avenue N
Bremerton, WA 98312

Aaron Leavell, Superintendent
Scott Rahm, Board Member
J. David Rubie, Board Member
Jonee Dubos, Board Member
Alyson Rotter, Board Member
Carolynn Perkins, Board Member

**Subj: Request for Coach Joseph A. Kennedy to Continue Post-Game Prayer**

Dear Superintendent Leavell and Board Members:

Bremerton High School (BHS) football coach Joseph "Joe" Kennedy retained Liberty Institute and volunteer counsel Anthony J. Ferate (BHS '94) to represent him in this matter.  Please direct all correspondence related to this matter to Liberty Institute at the contact information provided below.

Coach Kennedy has been a football coach at BHS since August 2008.  Currently, Coach Kennedy serves as the varsity assistant coach, and as the junior varsity head coach. Since August 2008, Coach Kennedy has engaged in a private religious activity whereby at the conclusion of each football game, he walks to the 50-yard line and prays.  By letter dated September 17, 2015, you directed Coach Kennedy to cease this private religious expression.    This letter constitutes Coach Kennedy's request for a religious accommodation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, allowing him to continue his post-game personal prayer, and that you rescind the directive in your September 17 letter that he cease his post-game personal prayer.  The First Amendment to the United States Constitution and federal statutory law protect Coach Kennedy's right to private religious expression following BHS football games. Indeed, Bremerton School District's attempts to ban or prohibit Coach Kennedy's private religious expression violate both the First Amendment to the U.S. Constitution and Title VII of the Civil Rights Act of 1964.

In order to understand why Coach Kennedy's private religious expression is constitutionally protected, it is important to understand the factual context surrounding Coach Kennedy's practice.  Coach Kennedy is motivated by his sincerely-held religious beliefs to pray following each football game.  Coach Kennedy's inspiration for doing so came about after he watched the film "Facing the Giants."   After watching the film,

October 14, 2015
Page 2

Coach Kennedy felt compelled by his religious faith, and his sincerely-held religious beliefs, to begin thanking God for the young men he is privileged to coach.

**Factual Background**

Since August 2008, Coach Kennedy's practice has remained largely unchanged. Coach Kennedy's first post-game prayer occurred on his very first game as a coach. After the game ended and his official coaching duties ceased, Coach Kennedy walked, alone, to the 50-yard line where he audibly spoke a short prayer of thanksgiving for player safety, fair play, and spirited competition.  Coach Kennedy did not announce what he was doing, nor did he invite anyone to join him.  He quietly, but audibly, prayed alone, away from the coaches, players, and fans.  This practice continued for several games until several students approached Coach Kennedy and asked if they were permitted to be there when he prayed, to which he responded, "it's a free country, you can do whatever you want to do."  Thereafter, after subsequent games, students continued to voluntarily go where Coach Kennedy prayed.  Members of the opposing team also sometimes went to where Coach Kennedy prayed.

Although Coach Kennedy's prayers are verbal, he does not pray in the name of a specific religion or deity, and he does not say "amen."  Each post-game prayer lasts approximately fifteen to twenty seconds, during which Coach Kennedy is unaware of who may or may not be in the vicinity. Coach Kennedy's sole intent, as motivated by his sincerely-held religious beliefs, is to say a brief prayer of thanksgiving and then move on. Coach Kennedy has never received a complaint about his post-game personal prayers.

To summarize, Coach Kennedy engages in private religious expression during non-instructional hours, after his official duties as a coach have ceased.  He neither requests, encourages, nor discourages students from participating in, or coming to where he prays.  His prayers neither proselytize nor denigrate the beliefs of others.  And he has never received a complaint about his post-game personal prayers.   Under these circumstances, there is no constitutional prohibition against Coach Kennedy's private religious expression, regardless of whether students voluntarily come to the location where he is praying.

**Coach Kennedy's Private Religious Expression is Constitutionally Protected**

Bremerton School District Board Policy 2340, "Religious Activities and Practices," is largely silent on the First Amendment rights of District employees.  But the United States Supreme Court rejected the notion that public school employees relinquish First Amendment rights by virtue of their government employment. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

October 14, 2015
Page 3

The Supreme Court has repeatedly held that the First Amendment requires public school officials to be neutral in their treatment of religion, showing neither favoritism toward nor hostility against religious adherents.  *See Everson v. Bd. of Educ.*, 330 U.S. 1, 18 (1947).  Accordingly, the First Amendment forbids religious activity that is sponsored by the government but protects religious activity that is initiated by individuals acting privately, as is the case with Coach Kennedy. As the Court explained in several cases, "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. v. Mergens*, 496 U.S. 226, 250 (1990) (plurality op.).

The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech" of private individuals. U.S. Const., amend. I. This prohibition applies to state and local governments through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Lovell v. Griffin*, 303 U.S. 444, 450 (1938). The government also may not suppress or exclude the speech of private individuals for the sole reason that their speech is religious. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995); *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Widmar v. Vincent*, 454 U.S. 263 (1981). As the Supreme Court explained:

> [P]rivate religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression. . . . Indeed, in Anglo-American history, at least, government suppression of speech has so commonly been directed precisely at religious speech that a free-speech clause without religion would be Hamlet without the prince.

*Pinette*, 515 U.S. at 760.  Furthermore, the Court held that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel v. Ctr. Moriches Sch. Dist.*, 508 U.S. 384 (1993).

Your September 17 letter states that these bans on religious expression are necessary to avoid an Establishment Clause violation, an argument the Supreme Court expressly questioned.  *See Good News Club*, 533 U.S. at 113 (questioning "whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination").  As support for this dubious legal argument, you cite to *Borden v. Sch. Dist. of the Twnshp. of East Brunswick*, 523 F.3d 153 (3rd Cir. 2008).  But that same opinion you cite states "not every religious display of a school official will have the necessary 'history and context' to be an Establishment Clause violation." *Id.* at 166. Indeed, "speech by a public employee, *even a teacher*, does not always represent, or even appear to represent, the views of the state." *Tucker v. Calif. Dep't of Educ.*, 97 F.3d 1204, 1213 (9th Cir. 1996) (emphasis added).  Here, Coach Kennedy's private religious expression cannot be said to invoke the imprimatur of the government.

October 14, 2015
Page 4

The case of *Wigg v. Sioux Falls Sch. Dist.*, 382 F.3d 807 (8th Cir. 2004), is instructive.  In *Wigg*, the court affirmed the right of a public elementary school teacher to participate in an explicitly Christian, proselytizing, after-school program in the same school in which she taught.  The facts of *Wigg*, when compared to the present matter, demonstrate the wrongness of Bremerton School District's directives to Coach Kennedy:

| *Wigg* | Coach Kennedy |
|---|---|
| Public school employee | Public school employee |
| Elementary school ($2^{nd} - 3^{rd}$ grade) | Secondary school ($9^{th} - 12^{th}$ grade) |
| Proselytizing after school | Private, personal prayer after football games |
| In classroom | In football stadium |

The *Wigg* court concluded that the school district's "effort to avoid an establishment of religion . . . unnecessarily limits the ability of its employees to engage in private religious speech on their own time."  *Id.* at 814.  The court found the school's policy "preventing [school] employees from participating in religious-based activities [was] viewpoint discriminatory and, thus, per se unconstitutional."  *Id.*  The court held the teacher's after school proselytizing was constitutionally protected as private speech that did not put the school district at risk of violating the Establishment Clause.  *Id.* at 815.

There can be no legitimate concern that the District is somehow establishing religion because it merely permits one of its coaches, on his own time, to say a short personal prayer after a football game.  "The proposition that schools do not endorse everything they fail to censor is not complicated."  *Mergens*, 496 U.S. at 250 (plurality op.).  As the U.S. Court of Appeals for the Ninth Circuit explained, "the desirable approach is not for schools to throw up their hands because of the possible misconceptions about endorsement of religion," finding instead that it is

> [f]ar better to teach [students] about the [F]irst [A]mendment, about the difference between private and public action, about why we tolerate divergent views . . . .  The school's proper response is to educate the audience rather than squelch the speaker. Schools may explain that they do not endorse speech by permitting it. If pupils do not comprehend so simple a lesson, then one wonders whether the [] schools can teach anything at all. Free speech, free exercise, and the ban on establishment are quite compatible when the government remains neutral and educates the public about the reasons.

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044, 1055 (9th Cir. 2003) (quoting *Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*, 9 F.3d 1295, 1299-1300 (7th Cir. 1993)).

October 14, 2015
Page 5

No reasonable observer could conclude that a football coach who waits until the game is over and the players have left the field and then walks to mid-field to say a short, private, personal prayer is speaking on behalf of the state.  Quite the opposite, Coach Kennedy is engaged in private religious expression upon which the state may not infringe.  In fact, any attempt by Bremerton School District to ban or prohibit Coach Kennedy—or any private citizen—from praying violates the First Amendment.   In *Tucker*, the U.S. Court of Appeals for the Ninth Circuit held that the California Department of Education's ban on religious advocacy and displays in the workplace— even when the stated reason was to avoid the appearance of supporting religion—was unconstitutional.  The District's ban on Coach Kennedy's private religious expression is likewise unconstitutional.

Under Title VII of the Civil Rights Act of 1964, Bremerton School District may not discriminate against Coach Kennedy on the basis of his religious exercise, and it must accommodate his sincerely-held religious beliefs.  Title VII provides that "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .." 42 U.S.C. § 2000e-2(a).  Additionally, Title VII requires Bremerton School District to accommodate its employees' religious practices. 42 U.S.C. § 2000e(j); 29 CFR § 1605.2.  Therefore, you must permit Coach Kennedy to continue his post-game prayers.

**Students May Voluntarily Come to Where Coach Kennedy Prays**

In your September 17 letter, you acknowledged that Coach Kennedy does not encourage or require participation in his practice of private, post-game prayer.  You also acknowledge that Bremerton School District Board Policy 2340 permits BHS students to voluntarily engage in prayer.  But your directive to Coach Kennedy is inconsistent with Board Policy 2340: "You and all District staff are free to engage in religious activity, including prayer . . . [but] students may not be allowed to join such activity."  You also prohibit Coach Kennedy from joining student-initiated prayers. Incredibly, you take the extra step of banning Coach Kennedy from bowing his head or even being physically present where students may be praying.  This too is unconstitutional.

This is tantamount to a declaration that Coach Kennedy, while praying as you concede he is allowed to do, must flee the scene if students voluntarily come to the same area and pray as well.  There is no requirement in the law that Coach Kennedy flee from students if they voluntarily choose to come to a place where he is privately praying during personal time.  According to the U.S. Department of Education's "Guidance on Constitutionally Protected Prayer in Public Elementary and Secondary Schools" ("Guidance"), teachers may "take part in religious activities where the overall context makes clear that they are not participating in their official capacities."  The Guidance also

October 14, 2015
Page 6

provides a solution for schools seeking to avoid the appearance of school sponsorship or endorsement of student speech: school officials "may make appropriate, neutral disclaimers to clarify that such speech (whether religious or non-religious) is the speaker's and not the school's." Guidance on Constitutionally Protected Prayer in Public Elementary and Secondary Schools, U.S. Dept. of Educ., Feb. 7, 2003, http://www2.ed.gov/policy/gen/guid/religionandschools/prayer_guidance.html (last visited October 12, 2015). This simple, constitutionally sound solution also applies to school employee speech, and is far less restrictive than Bremerton School District's outright ban on Coach Kennedy's private religious expression, and its requirement that he flee should students voluntarily appear where he happens to be praying. Coach Kennedy, or another school official, can simply clarify that the prayer is the speaker's private speech, and not that of the School District.

**Conclusion**

For the reasons provided herein, there is no lawful prohibition against Coach Kennedy's practice of saying a private, post-game prayer at the 50-yard line. The prayers are Coach Kennedy's private religious speech, and no reasonable observer could conclude that BHS sponsors, endorses, or encourages student participation. To the extent that students voluntarily choose to join Coach Kennedy, the District must not discriminate against, prohibit or interfere with student-initiated religious activities. A simple disclaimer that Coach Kennedy's prayers are his private speech will suffice to avoid any constitutional concerns.

Beginning on October 16, 2015, Coach Kennedy will continue his practice of saying a private, post-game prayer at the 50-yard line. We respectfully request that, by no later than 5:00pm on October 16, 2015, you rescind the directive in your letter of September 17, 2015, that he cease doing so, and that you permit Coach Kennedy to continue his practice of saying a private, post-game prayer at the 50-yard line.

Sincerely,

Hiram Sasser
Deputy Chief Counsel

# EXHIBIT

# E



**Bremerton
School
District**

October 23, 2015


Dear Coach Kennedy:

On September 17, 2015, I provided you with guidance and a set of standards for compliance with Bremerton School District Board Policy 2340. Those directives were in response to your prior practices involving on-the-job prayer with players in the Bremerton High School football program, both in the locker room prior to games as well as on the field immediately following games. In general, I believe that you have attempted to comply with the guidelines set forth in that letter.

However, immediately following the end of the homecoming game on October 16, 2015, you knelt at midfield and bowed your head in prayer. While most of the BHS players were at that moment engaged in the traditional singing of the school fight song to the audience, your intention to pray at midfield following the game was widely publicized, including through your own media appearances.

I wish to emphasize my appreciation for your efforts to comply with the September 17 directives. Nevertheless, I find it necessary to clarify the District's expectations going forward. As was discussed in that letter:

> Many decades of federal court litigation, including decisions of the United States Supreme Court, have fleshed out the meaning of the First Amendment's Establishment Clause and Free Exercise Clause. In the public schools context, it is clear that schools and their employees may not directly prohibit students from participating in religious activities, nor may they require students to participate in religious activities. Further, it is equally clear that school staff may not indirectly encourage students to engage in religious activity (or discourage them from doing so), <u>or even engage in action that is likely to be perceived as endorsing (or opposing) religion</u> or religious activity. In short, schools and their employees, while performing their job duties, must remain neutral – allowing non-disruptive student religious activity, while neither endorsing nor discouraging it.

Federal case law makes clear that a violation of the United States Constitution's First Amendment Establishment Clause occurs if a school employee engages in conduct which a reasonable observer, familiar with the history and context of the conduct, would perceive as government endorsement of religion. I again emphasize that the District does not prohibit prayer or other religious exercise by employees while on the job. However, as my September 17 letter stated, such exercise must not interfere with the performance of job responsibilities, and must not lead to a perception of District endorsement of religion. I conclude that your conduct of October 16, 2015, is not consistent with these requirements.

As the District has emphasized to your legal representatives, paid assistant coaches in District athletic programs are responsible for supervision of students not only prior to and during the course of games, but also during the activities following games and until players are released to their parents or otherwise allowed to leave. Supervision of students, including in dressing rooms, is explicitly listed among the responsibilities of assistant coaches in the District. Indeed, I have confirmed with your head coach that for over ten years, all assistant coaches have had assigned duties both before and after each game and have been expected to remain with the team until the last student has left the event; that until recently, you regularly came to the locker room with the team and other coaches following the game; that you have been among the assistant coaches with specific responsibility for the supervision of players in the locker room following games; and that you have helped in the supervision of students until they are picked up by parents or leave the facility, including during post-game meetings between the head coach and coordinators. From this review, I am satisfied that you are and have been aware that as a paid assistant coach, you remain on duty following games until the last student has left the event. If that has been unclear, I trust any confusion on your part as to these expectations has now been remedied.

Thus, when you engaged in religious exercise immediately following the game on October 16, you were still on duty for the District. You were at the event, and on the field, under the game lights, in BHS-logoed attire, in front of an audience of event attendees, solely by virtue of your employment by the District. The field is not an open forum to which members of the public are invited following completion of games; but even if it were, you continued to have job responsibilities, including the supervision of players. While I understand that your religious exercise was fleeting, it nevertheless drew you away from your work. More importantly, any reasonable observer saw a District employee, on the field only by virtue of his employment with the District, still on duty, under the bright lights of the stadium, engaged in what was clearly, given your prior public conduct, overtly religious conduct. And there were many such observers: The game had ended mere moments earlier. Under federal court precedent, a court would almost certainly find your conduct on October 16, in the course of your District employment, to constitute District endorsement of religion in violation of the United States Constitution. That same case law not only allows, but requires, the District to prohibit such violations from recurring. In addition, Washington courts have held that Article IX Section 4 of the Washington Constitution, which provides that public schools "shall be forever free from sectarian control or influence," imposes an even more strict prohibition on public agency endorsement of religion.

I wish to again emphasize that the District does not prohibit prayer or other religious exercise by its employees. However, it must prohibit any conduct by employees that would serve as District endorsement of religion. I have explained above why your conduct of October 16 violates that expectation. On the other hand, I wish to make it clear that religious exercise that would not be perceived as District endorsement, and which does not otherwise interfere with the performance of job duties, can and will be accommodated. Development of accommodations is an interactive process, and should you wish to continue to engage in private exercise while on the job, the District will be happy to discuss options for that to occur in a manner that will not violate the law.

*Aaron Leavell, Ed.D., Superintendent*
*Bremerton School District 100-C, 134 Marion Avenue N., Bremerton, Washington 98312*
*(360) 473-1006   ♦   Fax (360) 473-1040   ♦   E-mail: aaron.leavell@bremertonschools.org*
*An Equal Opportunity Employer and Educator*

Joe Kennedy
October 23, 2015
Page 3

It is common for schools to provide an employee whose faith requires a particular form of exercise with a private location to engage in such exercise during the work day, not observable to students or the public, so long as this does not interfere with performance of job responsibilities. For example, a private location within the school building, athletic facility or press box could be made available to you for brief religious exercise before and after games, if this will not interfere with your assigned duties. Please let me know if you would like to discuss such accommodations.

Finally, I would like to remind you of what I said in my September 17 letter: That is, the District values very highly your positive contributions to the BHS football program, and in particular, your motivational and inspirational talks to the players. In that letter, I assured you that you could continue that practice, focusing on appropriate themes such as unity, teamwork, responsibility, safety and endeavor. After the game immediately following that letter, you provided such a talk to the players of both teams, while remaining entirely secular. That talk was well received, and appreciated by the District and the community. I would certainly encourage continuation of that practice.

To summarize: While on duty for the District as an assistant coach, you may not engage in demonstrative religious activity, readily observable to (if not intended to be observed by) students and the attending public. You may not repeat your conduct of October 16, 2015, for the reasons discussed above. Given the severity and likelihood of liability faced by the District in the event of further violations of these directives, any further violations will be grounds for discipline, up to and including discharge from District employment. It is my hope that you will choose to honor these expectations, and continue your positive work with the BHS football program for the remainder of this season.

Sincerely,

Aaron Leavell, Ed.D.
Superintendent

/pg

# EXHIBIT

# F



**Bremerton
School
District**

October 28, 2015

Dear Coach Kennedy,

On September 17, 2015, you were provided with written direction regarding religious activity while on duty. You told me that you understood and would follow those guidelines. However, immediately following completion of the Bremerton High School varsity football game on October 16, 2015, you violated those directives by engaging in overt, public and demonstrative religious conduct while still on duty as an assistant coach.

Rather than taking any action with respect to your employment status in response to that conduct, I provided you with additional direction by letter on October 23, 2015. In that letter, I offered several possible means of accommodating your desire to engage in private prayer following football games – offering private locations for you to pray in the school building, athletic facility or stadium press box – so long as your brief, private religious exercise would not interfere with your performance of your continuing duties as an assistant coach. Observing that the development of accommodations is an interactive process, I also invited you to contact me to discuss these or other options for accommodating your free exercise rights.

Rather than contact me, or use any of the offered accommodations, on October 23, 2015, while still on duty, you kneeled on the field and prayed immediately following the varsity football game. Further, on October 26, 2015, while still on duty as the head coach of the junior varsity team, you kneeled on the field and prayed immediately following that game, while your players were still engaging in post-game traditions. You then rejoined your players for a post-game talk. Your conduct on both occasions was in direct violation of the directives set forth in my October 23 letter.

Effective immediately, pending further District review of your conduct, you are placed on paid administrative leave from your position as an assistant coach with the Bremerton High School football program. This leave will remain in effect until you are notified that it has been lifted. Unless and until you are advised otherwise, you may not participate, in any capacity, in BHS football program activities. You may be present for public football program events or other public District activities, and may be present at District facilities, only when, where and under the same conditions that other members of the general public are allowed to be present. On such occasions, your presence is conditioned upon full compliance with all District policies and procedures. Please contact John Polm to arrange for the immediate return of any District property in your possession.

I regret the necessity of this action. Please know that the District remains willing to discuss ways of accommodating your private religious exercise. Please contact me if you wish to discuss the options I have previously identified, or any other options you may have in mind.

Sincerely,

Aaron Leavell, Ed.D.
Superintendent

/pg

# EXHIBIT

# G



**Bremerton School District Statement and Q&A
Regarding Assistant Football Coach Joe Kennedy**

This afternoon, the Bremerton School District informed Bremerton High School assistant football coach Joe Kennedy that he has been placed on paid administrative leave. This action was necessitated by Kennedy's refusal to comply with the District's lawful and constitutionally-required directives that he refrain from engaging in overt, public religious displays on the football field while on duty as a coach. While the District appreciates Kennedy's many positive contributions to the BHS football program, and therefore regrets the necessity of this action, Kennedy's conduct poses a genuine risk that the District will be liable for violating the federal and state constitutional rights of students or others. For this reason, Kennedy will not be allowed to further violate the District's directives.

**Has Kennedy been fired?**

No. He remains employed by the District, and will be paid as such throughout the remainder of his contract term, unless his employment status is changed in the future. However, unless and until he affirms his intention to comply with the District's directives, he will not participate, in any capacity, in BHS football program activities.

Of course, like any other member of the community, Kennedy may attend District events that are open to the public on the same terms as any other community member.

**Why can't Kennedy lead students in voluntary prayer? Nobody is forced to participate, are they?**

There is indeed no evidence that students have been directly coerced to pray with Kennedy. But that isn't the standard. Over fifteen years ago, the United States Supreme Court said as much. In *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000), the Court held that a school district's practice of simply allowing its facilities to be used for religious expression during a district-sponsored football game violated the First Amendment's Establishment Clause because of the reasonable perception by students and attendees of district endorsement of religion. That decision makes clear that students can pray on their own; but it is a constitutional violation of students' rights for a District employee, acting as such, to initiate prayers with students. It is equally clear that District employees may not participate in even student-initiated prayer. *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (1995). While attending games may be voluntary for most students, students required to be present by virtue of their participation in football or cheerleading will necessarily suffer a degree of coercion to participate in religious activity when their coaches lead or endorse it.

Notably, we believe Mr. Kennedy understands this. On September 17, 2015, the District notified him that he was prohibited from repeating his prior practices of leading players in a pre-game prayer in the locker room or leading players in a post-game prayer immediately following games.



To the District's knowledge, Mr. Kennedy has complied with those directives not to intentionally involve students in his on-duty religious activities. However, he has continued a practice of engaging in a public religious display immediately following games, while he is still on duty.

**Why has the District prohibited Mr. Kennedy from praying on his own?**

It hasn't. The District respects Mr. Kennedy's own constitutional right to free exercise of religion, and understands that it has a duty to reasonably accommodate that exercise under Title VII of the Civil Rights Act. To that end, the District has repeatedly offered to accommodate Kennedy's religious exercise by providing him with a private location to use for prayer that does not interfere with his performance of his duties. Examples are private locations within the school building or athletic facility, or even in the Memorial Stadium press box. The District has also encouraged Kennedy to offer his own suggestions for ways in which his desire to engage in private prayer can be accommodated without subjecting the District to liability for violating the Establishment Clause.

To date, Mr. Kennedy has not taken the District up on any of these offers. Instead, his legal representatives have clearly stated in the media that an accommodation that does not allow Kennedy the spotlight of the 50-yard line immediately following games will be unacceptable to him.

**Why does Kennedy have to hide in order to pray?**

He doesn't have to "hide." However, the District cannot allow an employee, while still on duty, to engage in religious conduct or display that a reasonable observer, aware of the context, would perceive as District endorsement of religion. This "endorsement" standard was identified by the Supreme Court in *Santa Fe*, and the federal courts have expanded upon it in the fifteen years since that decision. For example, in 2008, a federal appeals court held that a football coach known to have previously led students in prayer must not be allowed even to kneel or bow his head while students prayed, as this would constitute District endorsement of religion in violation of the Constitution. *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153. And in 2006, the Ninth Circuit Court of Appeals held that a public employer's interests in avoiding such Establishment Clause violations "outweigh the resulting limitations on [an employee's] free exercise of his religion at work." *Berry v. Dep't of Social Services*, 447 F.3d 642.

If the District allowed Kennedy to engage in a public religious display in the midst of the performance of his duties, the result would be the same as in East Brunswick: The District would be subject to liability for violating the rights of its students if it allows this practice to continue. The District cannot put scarce funds needed for the District's basic educational mandate (which our State Supreme Court has already determined to be constitutionally inadequate) at such risk. Therefore, Kennedy's free exercise rights must be exercised only in a way that will not result in such a violation. The accommodations offered by the District are reasonable and would allow such exercise by Mr. Kennedy, while avoiding violating the rights of others.



**Isn't Kennedy off duty after the game ends, and free to do what he wants?**

No. All paid coaches in District athletic programs are required to remain with the program, performing duties as assigned, following athletic contests. These events clearly do not end upon the blowing of the final whistle. At that point, players engage in post-game traditions, such as the singing of the BHS fight song and exchanging congratulatory and uplifting words with the opposing team's players. They then return to the locker room to change out of their uniforms, and are then released to their parents or are authorized to leave. During that time, those students remain in the care of the District, and the District's employees have a legal obligation to maintain supervision of the players until they have left the event. We believe that all of the District's coaches understand this, and that players' parents reasonably expect it.

**What about a moment of silence?**

The District has given preliminary consideration to the option of calling for a moment of silence at the end of football games. However, the U.S. Supreme Court ruled in 1985 that a moment of silence adopted for the purpose of facilitating prayer constitutes state endorsement of religion in violation of the Establishment Clause. *Wallace v. Jaffree*, 472 U.S. 38. The various federal appeals courts have subsequently issued varying, possibly contradictory, decisions on this topic. At best, the constitutionality of a District-endorsed moment of silence is debatable – particularly if the practice is adopted for the specific purpose of facilitating an employee's desire to engage in a public religious display while on duty. While the District may continue to explore this option, it is not presently satisfied that it would survive a constitutional challenge.

**Hasn't the Supreme Court allowed prayers at public meetings? How is this different?**

Yes. In 2014, the U.S. Supreme Court held in *Town of Greece v. Galloway*, 134 S.Ct. 1811, that it was not a violation of the Establishment Clause for a town council to begin its meetings with a brief prayer. Those prayers were provided by a variety of individuals of various faiths. The Court held that this tradition was authorized in the narrow circumstance of opening legislative sessions, where it was "meant to lend gravity to the occasion and reflect values long part of the Nation's heritage," and to "invite lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing." The Court noted that the practice dates to the framing of the Constitution itself. The *Greece* case does not invalidate the Court's prior, more restrictive application of the Establishment Clause in the context of public schools, where the audience consists of large numbers of students, rather than mostly adults.

**Why has this come up now, when Kennedy has been praying on the field for years?**

The District's recent directives were not the result of formal complaints about Kennedy's prayers in the locker room and on the field. These activities simply were not known to District administrators until an employee of another district mentioned the post-game prayers to a



District administrator. That administrator recognized the clear legal issues presented by these activities, and this prompted the District's inquiry and subsequent directives.

**If nobody complained, why not leave Kennedy alone?**

This was not an option. The prayer sessions with students clearly violated the Establishment Clause. The District cannot allow students' rights to be violated simply because none of them complain. Embedded in the federal court precedent discussed above is the reasonable expectation that students will feel coerced to go along with religious activity that is led or endorsed by their teachers and coaches. It is very likely that over the years, players have joined in these activities because to do otherwise would mean potentially alienating themselves from their team, and possibly their coaches. The District has a fundamental obligation to protect the rights of all of its students.

**Is the District allowing other groups to use the football field for religious activities?**

No. While District facilities can be used by private groups for religious activities, the District cannot allow this to occur while those same facilities are being used for District functions. During and after football games – and until the attendees leave these events – the field and stadium are exclusively in use by the District, for the District-sponsored events. The football field is not a public forum when it is in use for a District-sponsored athletic event. Thus, no group will be approved to use it for their own purposes while these events are occurring, and the District will take steps to enforce the closure of the field to non-participants while it is still in use for the District event.

# EXHIBIT H

## Upload Documents

**Nam**  Kennedy, Joseph Anth  **ID:**  100000514

**Resume:**

Joseph A. Kennedy

Objective: Ready to lead and excel as Assistant Football Coach where my extensive skills and experiences can measurably improve team work, physical fitness, and sportmanship of the football program.

HIGHLIGHTS OF QUALIFICATIONS

Senior Martial Arts Instructor
Swim Instructor
Senior advisor for department heads
Training and operations manager for 200 personnel
CEO recognition for 20 years of exemplary service
Director of sales and public relations

PROFESSIONAL EXPERIENCE

Instructor Staff, Portland Oregon and Kanoehe Bay Hawaii

Senior Martial Arts Instructor
Senior Advisor for 228 personnel
Swim InstructorDirector of Training, Operations and Physical fitness Coordinator responsible for:
planning, organizing, coordinating, supervising, or evaluating community, industrial, outdoor, institutional, or other training, operations and recreational programs for 228 personnel
Planning, establishing, instructing, and evaluating training, operations and recreational curriculum for 228 personnel
Instructing in the principles and techniques of training, operations and recreational planning and management
Served as the leadership role in the programs and activities of local, regional, national, and/or global training, operations and recreational organizations
Substance Abuse Control Officer for 228 personnel
Volunteer chaperone for middle school field trips

Recruiting Stations, Bellingham Washington, Lewiston Idaho, and Boise Idaho

Senior member of an energized recruiting team, in a highly visibility, high-impact position.
Worked extensively with 4 schools districts, 17 high schools and 11 middle schools
Assisted in coaching Wrestling at 4 local high schools
Assisted in coaching Football at 4 local high schools
Substitute Teacher for Canyon county school district
Guest speaker for 6 school districts graduations, award ceremonies, career fairs
Assisted schools counselors with students
Assistant coach for Special Olympics
Worked with the community to increase prospects awareness within managed territory
Highly Experienced in managing a remote team.
Provided accurate forecasts of daily, weekly, monthly & yearly goals
Managed activities of assigned staff (screening, enlisting, training, coaching, rewarding, motivating, disciplining, etc.)
Maintained positive customer relationships to maximize productivity/services opportunity
Advised higher echelons of opportunities and issues

WORK HISTORY

10/2006 - Present  Puget Sound Naval Ship Yard
02/1988 - 9/2006   United States Marine Corps
08/1986 – 02/1988   United States Army Reserve

EDUCATION

High School Diploma Bremerton High School 1988

# EXHIBIT
# I



# BREMERTON SCHOOL DISTRICT
## COACHING EVALUATION FORM

Name of Coach: _Joe Kennedy_

Building: _BHS_

Assignment: _Asst. FB Coach_

Date: _12/20/12_

**S   N I**   Satisfactory   Needs Improvement

## PROFESSIONAL RELATIONSHIPS:
- X _____ •Cooperates with administration, faculty, and other staff.
- X _____ •Establishes and maintains positive relations with parents and community.
- X _____ •Follows school, district, league and WIAA policies.
- X _____ •Has valid First Aid and CPR card.

## RELATIONSHIPS WITH COACHING ASSOCIATES:
- X _____ •Maintains positive working relationships with district coaches of the same sport.
- X _____ •Supports and cooperates with other sports and activity programs.
- — _____ •**Head Coach** – Plans, organizes, and delegates responsibility well.
- — _____ •Supports assistant coaches.
- X _____ •**Assistant Coach** – Actively involved, works with other coaches.
- X _____ •Supports head coach.

## COACH – ATHLETE RESPONSIBILITIES:
- X _____ •Honest and consistent in all relationships and established policies.
- X _____ •Analyzes the strengths and limitations of athletes.
- X _____ •Maintains the respect of participants in the program.
- X _____ •Encourages and assists with academic achievement of participants.
- X _____ •Supervises team both home and away.
- X _____ •Maintains professional relationship with officials.
- X _____ •Makes sure all athletes have been properly cleared through the Athletic Director's office, i.e. physical, insurance form/waiver, emergency card, parent permission form, ASB card and eligibility, before allowing athlete to participate in practices.

## COACHING TECHNIQUES:
- X _____ •Uses sound and accepted teaching techniques and conducts organized practice sessions.
- X _____ •Participates in off-season conditioning and weight training program for athletes.
- X _____ •Teaches fundamentals.
- X _____ •Teaches specific safety procedures for activity.

**S    N I**    Satisfactory  Needs Improvement

**RELATED RESPONSIBILITIES:**

| | |
|---|---|
| X | •Complies with inventory, equipment care, and storage responsibilities. |
| X | •Has thorough knowledge of assigned position. |
| X | •Upgrades knowledge by participating in at least one professional clinic per year. |
| X | •Hands in proper verification for WIAA Coaches Standards reports. |
| — | •**Head Coach** – files year-end activity report as required. |
| — | •Complies with budget and orders equipment in a timely manner. |
| — | •Knows and enforces current district guidelines for transportation of students to school sponsored events.  Inform assistant coaches of their responsibilities for team transportation. |
| — | •Applies discipline in a fair, positive manner as outlined in the Student Athletic Handbook, and files discipline reports with the Athletic Director. |
| — | •Cooperates with media and responds to reasonable requests. |
| ✓ | •Holds meetings when appropriate with parents and athletes prior to first contest to establish positive communication. |

**SAFETY MEASURES:**

| | |
|---|---|
| X | •Adheres to efficient and sound program of injury prevention. |
| X | •When injuries do occur follows prescribed routine and maintains good communications with injured participant. |

**GENERAL COMMENTS:**

Joe does an excellent job mentoring players
+ building character in thr.

**RECOMMENDATIONS:**

Return as Asst. Coach

_____          _____
Signature of Coach                              Date
(Coach's signature does not indicate agreement with the above evaluation, only recognition that it has been read and discussed).

_____          _____
Signature of Athletic Director                Date                      1/05



# BREMERTON SCHOOL DISTRICT
## COACHING EVALUATION FORM

**Name of Coach:** *Joe Kennedy*

**Building:** *BHS*

**Assignment:** *Football – Asst. Coach*

**Date:** *March 2012*

**S     N I**     Satisfactory     Needs Improvement

## PROFESSIONAL RELATIONSHIPS:

- [✓] ____ •Cooperates with administration, faculty, and other staff.
- [✓] ____ •Establishes and maintains positive relations with parents and community.
- [✓] ____ •Follows school, district, league and WIAA policies.
- [✓] ____ •Has valid First Aid and CPR card.

## RELATIONSHIPS WITH COACHING ASSOCIATES:

- [✓] ____ •Maintains positive working relationships with district coaches of the same sport.
- [✓] ____ •Supports and cooperates with other sports and activity programs.
- [✓] ____ •**Head Coach** – Plans, organizes, and delegates responsibility well.
- [✓] ____ •Supports assistant coaches.
- [✓] ____ •**Assistant Coach** – Actively involved, works with other coaches.
- [✓] ____ •Supports head coach.

## COACH – ATHLETE RESPONSIBILITIES:

- [✓] ____ •Honest and consistent in all relationships and established policies.
- [✓] ____ •Analyzes the strengths and limitations of athletes.
- [✓] ____ •Maintains the respect of participants in the program.
- [✓] ____ •Encourages and assists with academic achievement of participants.
- [✓] ____ •Supervises team both home and away.
- [✓] ____ •Maintains professional relationship with officials.
- [✓] ____ •Makes sure all athletes have been properly cleared through the Athletic Director's office, i.e. physical, insurance form/waiver, emergency card, parent permission form, ASB card and eligibility, before allowing athlete to participate in practices.

## COACHING TECHNIQUES:

- [✓] ____ •Uses sound and accepted teaching techniques and conducts organized practice sessions.
- [✓] ____ •Participates in off-season conditioning and weight training program for athletes.
- [✓] ____ •Teaches fundamentals.
- [✓] ____ •Teaches specific safety procedures for activity.

**S    N I**   Satisfactory  Needs Improvement

**RELATED RESPONSIBILITIES:**
- ✓ _____ •Complies with inventory, equipment care, and storage responsibilities.
- ✓ _____ •Has thorough knowledge of assigned position.
- ✓ _____ •Upgrades knowledge by participating in at least one professional clinic per year.
- ✓ _____ •Hands in proper verification for WIAA Coaches Standards reports.
- ✓ _____ •**Head Coach** – files year-end activity report as required.
- ✓ _____ •Complies with budget and orders equipment in a timely manner.
- ✓ _____ •Knows and enforces current district guidelines for transportation of students to school sponsored events.  Inform assistant coaches of their responsibilities for team transportation.
- ✓ _____ •Applies discipline in a fair, positive manner as outlined in the Student Athletic Handbook, and files discipline reports with the Athletic Director.
- ✓ _____ •Cooperates with media and responds to reasonable requests.
- ✓ _____ •Holds meetings when appropriate with parents and athletes prior to first contest to establish positive communication.

**SAFETY MEASURES:**
- ✓ _____ •Adheres to efficient and sound program of injury prevention.
- ✓ _____ •When injuries do occur follows prescribed routine and maintains good communications with injured participant.

**GENERAL COMMENTS:**

Joe continues to do a great job as a mentor + coach. Her work with our players and the character builder is a great asset to our communities.

**RECOMMENDATIONS:**

Return as a coach.

_____          6/27/12
Signature of Coach                                    Date
(Coach's signature does not indicate agreement with the above evaluation, only recognition that it has been read and discussed).

_____          7/10/2012
Signature of Athletic Director                    Date                    1/05

RECEIVED

APR 0 9 2010

PERSONNEL

# BREMERTON SCHOOL DISTRICT
## COACHING EVALUATION FORM

**Name of Coach:** Joe Kennedy

**Building:** BHS

**Assignment:** Asst. FB

**Date:** 11.20.09

**S    N I    Satisfactory    Needs Improvement**

## PROFESSIONAL RELATIONSHIPS:

- ✓ _____ • Cooperates with administration, faculty, and other staff.
- ✓ _____ • Establishes and maintains positive relations with parents and community.
- ✓ _____ • Follows school, district, league and WIAA policies.
- ✓ _____ • Has valid First Aid and CPR card.

## RELATIONSHIPS WITH COACHING ASSOCIATES:

- ✓ _____ • Maintains positive working relationships with district coaches of the same sport.
- ✓ _____ • Supports and cooperates with other sports and activity programs.
- _____ _____ • **Head Coach** – Plans, organizes, and delegates responsibility well.
- _____ _____ • Supports assistant coaches.
- ✓ _____ • **Assistant Coach** – Actively involved, works with other coaches.
- ✓ _____ • Supports head coach.

## COACH – ATHLETE RESPONSIBILITIES:

- ✓ _____ • Honest and consistent in all relationships and established policies.
- ✓ _____ • Analyzes the strengths and limitations of athletes.
- ✓ _____ • Maintains the respect of participants in the program.
- ✓ _____ • Encourages and assists with academic achievement of participants.
- ✓ _____ • Supervises team both home and away.
- ✓ _____ • Maintains professional relationship with officials.
- ✓ _____ • Makes sure all athletes have been properly cleared through the Athletic Director's office, i.e. physical, insurance form/waiver, emergency card, parent permission form, ASB card and eligibility, before allowing athlete to participate in practices.

## COACHING TECHNIQUES:

- ✓ _____ • Uses sound and accepted teaching techniques and conducts organized practice sessions.
- ✓ _____ • Participates in off-season conditioning and weight training program for athletes.
- ✓ _____ • Teaches fundamentals.
- ✓ _____ • Teaches specific safety procedures for activity.

**S    N I    Satisfactory  Needs Improvement**

**RELATED RESPONSIBILITIES:**

_✓_ _____ •Complies with inventory, equipment care, and storage responsibilities.

_✓_ _____ •Has thorough knowledge of assigned position.

_✓_ _____ •Upgrades knowledge by participating in at least one professional clinic per year.

_✓_ _____ •Hands in proper verification for WIAA Coaches Standards reports.

___ _____ •**Head Coach** – files year-end activity report as required.

_✓_ _____ •Complies with budget and orders equipment in a timely manner.

_✓_ _____ •Knows and enforces current district guidelines for transportation of students to school sponsored events.  Inform assistant coaches of their responsibilities for team transportation.

_✓_ _____ •Applies discipline in a fair, positive manner as outlined in the Student Athletic Handbook, and files discipline reports with the Athletic Director.

_✓_ _____ •Cooperates with media and responds to reasonable requests.

_✓_ _____ •Holds meetings when appropriate with parents and athletes prior to first contest to establish positive communication.

**SAFETY MEASURES:**

_✓_ _____ •Adheres to efficient and sound program of injury prevention.

_✓_ _____ •When injuries do occur follows prescribed routine and maintains good communications with injured participant.

**GENERAL COMMENTS:** Joe continues to bring energy and excitement to practice everyday. His enthusiasm and positive attitude is great for team morel.

**RECOMMENDATIONS:**

Re-hire

_____          11/20/09
**Signature of Coach**                                      **Date**
(Coach's signature does not indicate agreement with the above evaluation, only recognition that it has been read and discussed).

_____          _____
**Signature of Athletic Director**                        **Date**                    1/05



# BREMERTON SCHOOL DISTRICT
# COACHING EVALUATION FORM

**Name of Coach:** Joe Kennedy

**Building:** BHS

**Assignment:** Asst. FB

**Date:** 6-26-08

RECEIVED

**S    U**    Satisfactory  Unsatisfactory

JUL 0 6 2009

PERSONNEL

## PROFESSIONAL RELATIONSHIPS:
_____ ✓ _____ •Cooperates with administration, faculty, and other staff.
_____ ✓ _____ •Establishes and maintains positive relations with parents and community.
_____ ✓ _____ •Follows school, district, league and WIAA policies.
_____ ✓ _____ •Has valid First Aid and CPR card.

## RELATIONSHIPS WITH COACHING ASSOCIATES:
_____ ✓ _____ •Maintains positive working relationships with district coaches of the
                same sport.
_____ ✓ _____ •Supports and cooperates with other sports and activity programs.
_____ _____ •**Head Coach** – Plans, organizes, and delegates responsibility well.
_____ ✓ _____ •Supports assistant coaches.
_____ ✓ _____ •**Assistant Coach** – Actively involved, works with other coaches.
_____ ✓ _____ •Supports head coach.

## COACH – ATHLETE RESPONSIBILITIES:
_____ ✓ _____ •Honest and consistent in all relationships and established policies.
_____ ✓ _____ •Analyzes the strengths and limitations of athletes.
_____ ✓ _____ •Maintains the respect of participants in the program.
_____ ✓ _____ •Encourages and assists with academic achievement of participants.
_____ ✓ _____ •Supervises team both home and away.
_____ ✓ _____ •Maintains professional relationship with officials.
_____ _____ •Makes sure all athletes have been properly cleared through the Athletic
                Director's office, i.e. physical, insurance form/waiver, emergency card,
                parent permission form, ASB card and eligibility, before allowing athlete
                to participate in practices.

## COACHING TECHNIQUES:
_____ ✓ _____ •Uses sound and accepted teaching techniques and conducts organized
                practice sessions.
_____ ✓ _____ •Participates in off-season conditioning and weight training program
                for athletes.
_____ ✓ _____ •Teaches fundamentals.
_____ ✓ _____ •Teaches specific safety procedures for activity.

**S     U**     Satisfactory  Unsatisfactory

**RELATED RESPONSIBILITIES:**
___✓___ _____•Complies with inventory, equipment care, and storage responsibilities.
___✓___ _____•Has thorough knowledge of assigned position.
_____ _____•Upgrades knowledge by participating in at least one professional clinic
___✓___ per year.
_____ _____•Hands in proper verification for WIAA Coaches Standards reports.
_____ _____•**Head Coach** – files year-end activity report as required.
___✓___ _____•Complies with budget and orders equipment in a timely manner.
___✓___ _____•Knows and enforces current district guidelines for transportation of
students to school sponsored events.  Inform assistant coaches of their
responsibilities for team transportation.
___✓___ _____•Applies discipline in a fair, positive manner as outlined in the Student
Athletic Handbook, and files discipline reports with the Athletic Director.
___✓___ _____•Cooperates with media and responds to reasonable requests.
___✓___ _____•Holds meetings when appropriate with parents and athletes prior to
first contest to establish positive communication.

**SAFETY MEASURES:**
___✓___ _____•Adheres to efficient and sound program of injury prevention.
___✓___ _____•When injuries do occur follows prescribed routine and maintains good
communications with injured participant.

**GENERAL COMMENTS:**

*great job!*

**RECOMMENDATIONS:**

*Re-hire*

_____          _____
Signature of Coach                                                            Date
(Coach's signature does not indicate agreement with the above evaluation, only recognition that it has been read and discussed).

_____          _____

# EXHIBIT

# J



# **BREMERTON SCHOOL DISTRICT**
# COACHING EVALUATION FORM

Name of Coach:    ___Joe Kennedy_____

Building:    ____BHS_____

Assignment: _Assistant Football Coach_____

Date:    ___November 20, 2015_____

**S     N I**     Satisfactory    Needs Improvement

**PROFESSIONAL RELATIONSHIPS:**
_____ _X___•Cooperates with administration, faculty, and other staff.
_____ _X___•Establishes and maintains positive relations with parents and community.
_____ _X___•Follows school, district, league and WIAA policies.
_X___ _____•Has valid First Aid and CPR card.

**RELATIONSHIPS WITH COACHING ASSOCIATES:**
_X__ _____•Maintains positive working relationships with district coaches of the
           same sport.
_X__ _____•Supports and cooperates with other sports and activity programs.
__N/A ___•**Head Coach** – Plans, organizes, and delegates responsibility well.
__N/A ___•Supports assistant coaches.
____ _X___•**Assistant Coach** – Actively involved, works with other coaches.
_X___ _____•Supports head coach.

**COACH – ATHLETE RESPONSIBILITIES:**
_X__ _____•Honest and consistent in all relationships and established policies.
_X__ _____•Analyzes the strengths and limitations of athletes.
_____ _X___•Maintains the respect of participants in the program.
_X___ _____•Encourages and assists with academic achievement of participants.
_____ _X___•Supervises team both home and away.
_X___ _____•Maintains professional relationship with officials.
_N/A__ ___•Makes sure all athletes have been properly cleared through the Athletic
           Director's office, i.e. physical, insurance form/waiver, emergency card,
           parent permission form, ASB card and eligibility, before allowing athlete
           to participate in practices.

**COACHING TECHNIQUES:**
_X___ _____•Uses sound and accepted teaching techniques and conducts organized
           practice sessions.
_X___ _____•Participates in off-season conditioning and weight training program
           for athletes.
_X___ _____•Teaches fundamentals.
_X___ _____•Teaches specific safety procedures for activity.

**S     N I**     Satisfactory  Needs Improvement

**RELATED RESPONSIBILITIES:**

_N/A_ ____ •Complies with inventory, equipment care, and storage responsibilities.

_X__ _____•Has thorough knowledge of assigned position.

____ ____ •Upgrades knowledge by participating in at least one professional clinic
        per year.

_N/A_ ____•Hands in proper verification for WIAA Coaches Standards reports.

_N/A_ ____•**Head Coach** – files year-end activity report as required.

_N/A_ ____•Complies with budget and orders equipment in a timely manner.

_N/A_ ____•Knows and enforces current district guidelines for transportation of
        students to school sponsored events.  Inform assistant coaches of their
        responsibilities for team transportation.

_N/A_ ____•Applies discipline in a fair, positive manner as outlined in the Student
        Athletic Handbook, and files discipline reports with the Athletic Director.

_N/A_ ____•Cooperates with media and responds to reasonable requests.

_N/A_ ____•Holds meetings when appropriate with parents and athletes prior to
        first contest to establish positive communication.

**SAFETY MEASURES:**

_X__ _____•Adheres to efficient and sound program of injury prevention.

_X__ _____•When injuries do occur follows prescribed routine and maintains good
        communications with injured participant.

**GENERAL COMMENTS:**

Mr. Kennedy failed to follow district policy and his actions demonstrated a lack of cooperation
with administration.  The subsequent situations contributed to negative relations between
parents, students, community members, coaches and the school district.

Mr. Kennedy failed to supervise student-athletes after games due to his interactions with
media and community.  Prior to his public defiance of district directions, Mr. Kennedy had
assisted in student supervision.  However, most of the season he did not supervise student-
athletes after games.

**RECOMMENDATIONS:**

Do Not Rehire…

_____        _____

Signature of Coach                                                    Date
   (Coach's signature does not indicate agreement with the above evaluation, only recognition that it has been read and discussed).

_____        _____

Signature of Athletic Director                                    Date                        1/05

# EXHIBIT K



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7010 0290 0000 2017 4825

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

June 27, 2016

Mr. Joseph Kennedy
c/o Rebekah Perry Ricketts, Esquire
Law Offices of Gibson & Dunn
2100 McKinney Ave.
Dallas, TX  75201-6912

Re:  EEOC Charge Against Bremerton School District
     No. 551201600452

Dear Mr. Kennedy:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Seattle District Office, Seattle, WA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Vanita Gupta
                                        Principal Deputy Assistant Attorney General
                                        Civil Rights Division

                                        by   *Karen L. Ferguson*
                                             Karen L. Ferguson
                                        Supervisory Civil Rights Analyst
                                        Employment Litigation Section

cc: Seattle District Office, EEOC
    Bremerton School District