1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JOSEPH A. KENNEDY,

               *Plaintiff*,

    v.

BREMERTON SCHOOL DISTRICT,

               *Defendant*.

CASE NO. 3:16-CV-05694-RBL

**PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION AND**
**SUPPORTING MEMORANDUM OF**
**LAW**

NOTE ON MOTION CALENDAR:
September 16, 2016

ORAL ARGUMENT REQUESTED

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    Coach Kennedy's Sincerely Held Religious Beliefs Require Him to Offer a Brief Prayer of Thanksgiving After BHS Football Games ............. 3

    B.    BSD Issues an Initial Set of Directives for Coach Kennedy's Religious Expression ....................................................................................................... 4

    C.    BSD Changes the Rules and Issues a New Ban on All "Demonstrative Religious Activity" ...................................................................................... 6

    D.    BSD Retaliates by Subjecting Coach Kennedy to a Series of Adverse Employment Actions ............................................................................... 7

LEGAL STANDARD ........................................................................................................... 8

ARGUMENT ........................................................................................................................ 8

    II.    Coach Kennedy Is Entitled to a Preliminary Injunction ........................ 8

    A.    Coach Kennedy Is Likely to Succeed on the Merits of His First Amendment Claims ............................................................................... 8

        1.    Coach Kennedy's Religious Speech Is on a Matter of Public Concern ..................................................................................... 9

        2.    Coach Kennedy Spoke as a Private Citizen, Not a Public Employee .................................................................................. 10

        3.    Coach Kennedy's Religious Expression Was a Substantial Factor in the Adverse Employment Actions ............................................. 12

        4.    BSD Has No Adequate Justification for Discriminating Against Coach Kennedy ........................................................................ 14

            i.    Coach Kennedy Has No Post-Game Supervisory Obligations That Would Prohibit Him from Engaging in "Fleeting" Religious Expression ...................................... 15

            ii.    Coach Kennedy's Brief, Private Religious Expression Does Not Violate the Establishment Clause ................... 16

        5.    BSD Would Not Have Taken the Adverse Employment Actions Absent Coach Kennedy's Religious Expression .......................... 21

    B.    Coach Kennedy Will Suffer Irreparable Harm Without a Preliminary Injunction ............................................................................................... 22

    C.    The Balance of Equities Tips Heavily in Coach Kennedy's Favor ......... 23

    D.    A Preliminary Injunction Is in the Public Interest ................................. 24

CONCLUSION ................................................................................................................... 24

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adler v. Duval Cty. Sch. Bd.*,
   250 F.3d 1330 (11th Cir. 2001)..................................................................................18

*Anthoine v. N. Central Cntys. Consortium*,
   605 F.3d 740 (9th Cir. 2010)......................................................................................12

*Arc of California v. Douglas*,
   757 F.3d 975 (9th Cir. 2014)...................................................................................8, 22

*Arizona Dream Act Coalition v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014)....................................................................................23

*Board of Ed. of Westside Cmty. Schs. (Dist. 66) v. Mergens*,
   496 U.S. 226 (1990) ...........................................................................................17, 20

*Borden v. Sch. Dist. of Twp. of E. Brunswick*,
   523 F.3d 153 (3d Cir. 2008)........................................................................................21

*Chandler v. Siegelman*,
   230 F.3d 1313 (11th Cir. 2000)......................................................................17, 18, 21

*Child Evangelism Fellowship v. Montgomery Cnty. Public Schs.*,
   373 F.3d 589 (4th Cir. 2004)......................................................................................16

*Colman v. City of Seattle*,
   No. C05-0754 RSM, 2006 WL 1842978 (W.D. Wash. June 30, 2006) ........................14

*Coomes v. Edmonds Sch. Dist. No. 15*,
   816 F.3d 1255 (9th Cir. 2016)...............................................................................10, 12

*Coszalter v. City of Salem*,
   320 F.3d 968 (9th Cir. 2003)......................................................................................14

*Dahlia v. Rodriguez*,
   735 F.3d 1060 (9th Cir. 2013)..........................................................................10, 11, 12

*Doe v. Harris*,
   772 F.3d 563 (9th Cir. 2014)......................................................................................23

*Doe v. Lawrence Livermore Nat'l Lab.*,
   131 F.3d 836 (9th Cir. 1997)......................................................................................24

*Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*,
   340 F.3d 605 (8th Cir. 2003)......................................................................................18

*Ellins v. City of Sierra Madre*,
   710 F.3d 1049 (9th Cir. 2013)................................................................................12, 13

*Elrod v. Burns*,
    427 U.S. 347 (1976)..................................................................................22

*Eng v. Cooley*,
    552 F.3d 1062 (9th Cir. 2009)........................................................ *passim*

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)..................................................................................10

*Garcia v. Lawn*,
    805 F.2d 1400 (9th Cir. 1986)..................................................................23

*Good News Club v. Milford Cent. Sch.*,
    533 U.S. 98 (2001)............................................................................16, 20

*Graziosi v. City of Greenville*,
    775 F.3d 731 (5th Cir. 2015)..............................................................10, 11

*Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*,
    9 F.3d 1295 (7th Cir. 1993)......................................................................20

*Hills v. Scottsdale Unified Sch. Dist. No. 48*,
    329 F.3d 1044 (9th Cir. 2003)......................................................16, 19, 20

*Hunter v. Town of Mocksville*,
    789 F.3d 389 (4th Cir. 2015)....................................................................10

*Johnson v. Poway Unified Sch. Dist.*,
    658 F.3d 954 (9th Cir. 2011)................................................................9, 19

*Karl v. City of Mountlake Terrace*,
    678 F.3d 1062 (9th Cir. 2012)....................................................................9

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009).............................................................2, 22

*Lane v. Franks*,
    134 S. Ct. 2369 (2014)..................................................................10, 11, 12

*McDonald v. Pierce Cty. Fire Protection Dist. No. 13*,
    No. C04-5778 RBL, 2006 WL 223740 (W.D. Wash. Jan. 30, 2006)..........12

*Morse v. Frederick*,
    551 U.S. 393 (2007)....................................................................................8

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977)..................................................................................21

*Nichol v. ARIN Intermediate Unit 28*,
    268 F. Supp. 2d 536 (W.D. Pa. 2003)......................................................16

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

*Nunez v. Davis*,
   169 F.3d 1222 (9th Cir. 1999) .......................................................................... 15

*Nurre v. Whitehead*,
   580 F.3d 1087 (9th Cir. 2009) .......................................................................... 19

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968) .......................................................................................... 9

*Prince v. Jacoby*,
   303 F.3d 1074 (9th Cir. 2002) .......................................................................... 20

*Robinson v. York*,
   566 F.3d 817 (9th Cir. 2009) ............................................................................ 15

*Rosario-Torres v. Hernandez-Colon*,
   889 F.2d 314 (1st Cir. 1989) ............................................................................ 24

*Rosenberger v. Rector & Visitors of U. of Va.*,
   515 U.S. 819 (1995) ......................................................................................... 19

*Sammartano v. First Judicial Dist. Ct.*,
   303 F.3d 959 (9th Cir. 2002),
   *abrogated on other grounds by Winter*, 555 U.S. 7 (2008) ........................... 24

*Sanders Cty. Republican Cent. Comm. v. Bullock*,
   698 F.3d 741 (9th Cir. 2012) ................................................................... 2, 22, 23

*Santa Fe Indep. Sch. Dist. v. Doe*,
   530 U.S. 290 (2000) ............................................................... 2, 17, 18, 19

*Scott v. Roberts*,
   612 F.3d 1279 (11th Cir. 2010) ....................................................................... 23

*Seidman v. Paradise Valley Unified Sch. Dist. No. 69*,
   327 F. Supp. 2d 1098 (D. Ariz. 2004) ............................................................. 17

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) ........................................................................................... 8

*Tucker v. State of Cal. Dep't of Educ.*,
   97 F.3d 1204 (9th Cir. 1996) .............................................................. 9, 10, 14, 19

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ................................................................. 2, 23, 24

*Wigg v. Sioux Falls Sch. Dist.*,
   382 F.3d 807 (8th Cir. 2004) ........................................................................... 16

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................................... *passim*

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page iv

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

# INTRODUCTION

Plaintiff Joseph A. Kennedy ("Coach Kennedy"), a popular and well-respected football coach at Bremerton High School ("BHS"), was suspended and then fired from his coaching job for offering a brief, quiet prayer at the conclusion of BHS football games.  This case is about Coach Kennedy's First Amendment right to pray quietly and alone after BHS football games, and to do so on the field where the game was played.

Defendant Bremerton School District ("BSD" or the "District") has publicly admitted that Coach Kennedy's religious expression is "fleeting"—lasting no more than 30 seconds—and that no student, parent, or member of the community ever complained about that conduct in Coach Kennedy's eight years of coaching at BHS.  Letter to Coach Kennedy, Oct. 23, 2015, App. 18; BSD Statement and Q&A, Oct. 28, 2015, App. 23–24.  BSD has further conceded that there is "*no evidence*" that students have ever been "coerced" to pray with Coach Kennedy, and that he never "actively encouraged, or required, [student] participation" in any religious activity.  BSD Statement and Q&A, Oct. 28, 2015, App. 21; Letter to Coach Kennedy, Sept. 17, 2015, App. 4.

But the District was not satisfied with Coach Kennedy's full "compli[ance]" with its "directives not to intentionally involve students in his on-duty religious activities."  BSD Statement and Q&A, Oct. 28, 2015, App. 22.  Instead of abiding by its written policies—and its prior instructions to Coach Kennedy—BSD changed the rules.  In a sweeping new directive, BSD purported to prohibit on-duty school employees from engaging in any and all "*demonstrative religious activity*" that is "readily observable to . . . students and the attending public."  Letter to Coach Kennedy, Oct. 23, 2015, App. 19 (emphasis added).  When Coach Kennedy engaged in the brief, quiet prayer that is required by his faith after the next BHS football game, BSD suspended him.  The District later retaliated against Coach Kennedy by giving him a poor performance evaluation—for the first time in his entire BHS coaching career—and then firing him.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1    Coach Kennedy is likely to succeed on the merits of his First Amendment claims because

2  BSD's blanket ban on "demonstrative religious activity" by on-duty school employees is baldly

3  unconstitutional.   Coach Kennedy's private religious expression is fully protected by the First

4  Amendment, and—by the District's own admission—that expression was the primary factor in the

5  adverse employment actions.  The alternative justifications BSD has offered are either purely pretextual

6  or premised on a wildly erroneous view of the Establishment Clause.  Because there is a complete

7  absence of "school involvement" in determining whether Coach Kennedy would speak or what he

8  would say, no "objective observer" would confuse Coach Kennedy's speech with the speech of the

9  State.  *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 305, 308 (2000).

10   Coach Kennedy readily satisfies the remaining factors of the preliminary injunction standard.

11  The loss of his "First Amendment freedoms . . . unquestionably constitutes irreparable injury."  *Klein*

12  *v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009).  That is particularly true because the

13  start of another BHS football season is "imminent"—with the opening game scheduled for

14  September 2—and Coach Kennedy's First Amendment rights are being "chilled daily."  *Sanders Cty.*

15  *Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).  Finally, the balance of equities

16  and the public interest favor Coach Kennedy, since it clearly "would not be equitable or in the public's

17  interest to allow the state . . . to violate the requirements of federal law."  *Valle del Sol Inc. v. Whiting*,

18  732 F.3d 1006, 1029 (9th Cir. 2013).

19   For all these reasons, Coach Kennedy moves this Court to enter a preliminary injunction

20  ordering BSD to cease discriminating against him in violation of the First Amendment, reinstate him

21  as a BHS football coach, and allow him to take a knee at midfield at the conclusion of BHS football

22  games and say a silent prayer lasting 15–30 seconds.

23

24

25

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 2

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

**FACTUAL BACKGROUND**

A.    **Coach Kennedy's Sincerely Held Religious Beliefs Require Him to Offer a Brief Prayer of Thanksgiving After BHS Football Games**

Coach Kennedy has been employed as a football coach at BHS since 2008.  Declaration of Joseph A. Kennedy ("Kennedy Decl."), ¶ 2.  He has worked as an assistant coach for the BHS varsity football team and the head coach for the BHS junior varsity football team.  *Id.*

Prior to fall 2015, Coach Kennedy received overwhelmingly positive performance evaluations, which confirm that he "d[id] an excellent job mentoring players and building character in them," that "[h]is work with our players . . . is a great asset to our community," and that "[h]is enthusiasm and positive attitude is great for team [morale]."  BSD Coaching Evaluation Forms, App. 26–33.  Each of Coach Kennedy's prior evaluations recommended rehiring him for the following year.  Kennedy Decl. ¶ 8.

Coach Kennedy is a practicing Christian.  *Id.* ¶ 10.  After watching *Facing the Giants* (2006), a faith-based film about a high school football team, Coach Kennedy made a commitment to God that he would give thanks through prayer, at the end of each game, for what the players had accomplished and for the opportunity to be part of their lives through the game of football.  *Id.* ¶ 11.

Specifically, after the game is over, and after the players and coaches from both teams have met to shake hands at midfield, Coach Kennedy feels called to pause on the playing field to engage in private religious expression.  *Id.* ¶ 12.  He takes a knee at the 50-yard line and offers a brief, quiet prayer of thanksgiving for player safety, sportsmanship, and spirited competition.  *Id.*  That prayer lasts approximately 30 seconds.  *Id.*  Because Coach Kennedy's prayer lifts up the players and recognizes their hard work and sportsmanship during the game, his sincerely held religious beliefs require him to pray on the field where the game was played.  *Id.* ¶ 14.

Coach Kennedy has engaged in private religious expression at the conclusion of BHS football games since he first started work as a BHS football coach.  *Id.* ¶ 16.  Initially, in 2008, Coach Kennedy prayed alone.  *Id.* ¶ 17.  After several games where he prayed alone, some BHS players asked whether they could join him.  *Id.*  Coach Kennedy responded, "This is a free country.  You can do what you

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1 | want." *Id.*  Over time, the number of players who gathered near Coach Kennedy after the game grew
2 | to include the majority of the team, although the number of players who participated varied. *Id.* ¶ 18.
3 | Sometimes no players gathered, and Coach Kennedy prayed alone. *Id.*  Sometimes BHS players invited
4 | players from the opposing team to join. *Id.*

5 | Eventually, Coach Kennedy began giving short motivational speeches to the players after the
6 | game. *Id.* ¶ 19.  Although the exact wording would vary from game to game, Coach Kennedy's post-
7 | game speeches would be similar to the following:  "Lord, I lift these guys up for what they just did on
8 | the field.  They battled for 48 minutes and even though they came here as rivals, they can leave here as
9 | friends.  It doesn't matter what our beliefs are—we believe in our team and we believe in each other." *Id.*[1]

10 | In the past, Coach Kennedy sometimes participated in pre- and post-game locker room prayers
11 | that the BHS football team engaged in as a matter of school tradition.   Kennedy Decl. ¶ 20.   This
12 | activity "predated [his] involvement with the program."  Letter to Coach Kennedy, Sept. 17, 2015,
13 | App. 4.   Coach Kennedy's sincerely held religious beliefs do not require him to lead any prayer,
14 | involving students or otherwise.  Kennedy Decl. ¶ 21.  He immediately ceased participating in all locker
15 | room prayers upon receiving instructions to do so. *Id.*

16 | Other BHS coaches have also engaged in religious expression at the beginning and end of BHS
17 | football games. *Id.* ¶ 23.  For example, BHS Assistant Coach David Boynton has engaged in a Buddhist
18 | chant near the 50-yard line at the conclusion of many BHS football games. *Id.*

19 | **B.** **BSD Issues an Initial Set of Directives for Coach Kennedy's Religious Expression**
20 | BSD learned of Coach Kennedy's religious expression for the first time in fall 2015, when an
21 | employee from another high school approached a BHS administrator to compliment Coach Kennedy's

---

[1]   Some former BHS players have said that they "didn't view" the post-game speech "as a prayer at all."  Kelsey Harkness, "After Losing His Public School Job for Praying, Coach Kennedy Speaks Out," *The Daily Signal*, Jan. 26, 2016, http://dailysignal.com/2016/01/26/after-losing-his-public-school-job-for-praying-coach-kennedy-speaks-out/.
Another former player has said that, "I prayed because I'm Catholic, but some walked off.  There was never any pressure."  Christine Clarridge, "Crowd Prays with Coach as He Defies School District," *Seattle Times*, Oct. 16, 2015, http://www.seattletimes.com/seattlenews/education/scores-join-coach-in-postgame-prayer/.

ability to bring players from opposing teams together after the game.  BSD Statement and Q&A, Oct. 28, 2015, App. 23–24.

On September 17, 2015, BSD Superintendent Aaron Leavell sent Coach Kennedy a letter announcing that BSD "has been conducting an inquiry into whether District staff have appropriately complied with Board Policy 2340, 'Religious-Related Activities and Practices.'"  Letter to Coach Kennedy, Sept. 17, 2015, App. 4.  Board Policy 2340 provides as follows:

> As a matter of individual liberty, a student may of his/her own volition engage in private, non-disruptive prayer at any time not in conflict with learning activities.  School staff shall neither encourage nor discourage a student from engaging in non-disruptive oral or silent prayer or any other form of devotional activity.

Board Policy 2340, Aug. 13, 1992, App. 3.  Notably, Board Policy 2340 does not prohibit demonstrative religious expression by on-duty school employees.

BSD's September 17, 2015 letter admitted that any student participation in Coach's Kennedy's post-game religious expression was entirely "voluntary," that Coach Kennedy "ha[d] not actively encouraged, or required, participation" by the students.  Letter to Coach Kennedy, Sept. 17, 2015, App. 4.  BSD nevertheless opined that Coach Kennedy's actions "would very likely be found to violate the First Amendment's Establishment Clause."  *Id.*  The District went on to prescribe certain guidelines for religious expression, stating that, "[i]n order to avoid the perception of endorsement," Coach Kennedy's religious expression "should either be non-demonstrative (*i.e.*, not outwardly discernable as religious activity) if students are also engaged in religious conduct, or it should occur while students are not engaging in such conduct."  App. 6.

After receiving BSD's 2015 letter, Coach Kennedy temporarily stopped his practice of engaging in private religious expression immediately after BHS football games.  Kennedy Decl. ¶ 29.  At the conclusion of the game on September 18, 2015, Coach Kennedy gave a short motivational speech to the players, but did not offer any words or expression of thanksgiving.  *Id.*  On his drive home, Coach Kennedy felt "dirty" because he had broken his commitment to God.  *Id.* ¶ 30.  He turned

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 5

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

his car around and went back to the field, where he waited until everyone else had left the stadium.  *Id.*

Then Coach Kennedy walked to the 50-yard line, where he knelt to pray alone.  *Id.*

C.    **BSD Changes the Rules and Issues a New Ban on All "Demonstrative Religious Activity"**

On October 14, 2015, Hiram Sasser, counsel for Coach Kennedy, sent a letter to Superintendent Leavell and the BSD School Board.  In that letter, Coach Kennedy informed BSD that he is compelled by his sincerely held religious beliefs—his commitment to God—to pray following each football game. Letter to BSD, Oct. 14, 2015, App. 11.  He also formally requested a religious accommodation under Title VII of the Civil Rights Act that would affirm his right to engage in a brief, quiet prayer at midfield at the conclusion of BHS games.  *Id.*

After the football game on October 16, Coach Kennedy walked to midfield for the customary handshake with the opposing team.  Kennedy Decl. ¶ 32.  He waited until the BHS players were walking toward the stands to sing the post-game fight song.  *Id.*  Then he knelt at the 50-yard line, closed his eyes, and prayed a brief, silent prayer.  *Id.*  While Coach Kennedy was kneeling with his eyes closed, coaches and players from the opposing team, as well as members of the public and media, spontaneously joined him on the field and knelt beside him.  *Id.* ¶ 33.

On October 23, 2015, just hours before the football game scheduled for that night, Superintendent Leavell sent Coach Kennedy a second letter that "emphasize[d] [his] appreciation for [Coach Kennedy's] efforts to comply with the September 17 directives," and acknowledged that Coach Kennedy's religious expression on October 16 was "fleeting."  Letter to Coach Kennedy, Oct. 23, 2015, App. 17–18.    Nonetheless, BSD went on to deny Coach Kennedy's request for a religious accommodation and opine that his "overtly religious conduct" was prohibited by the Establishment Clause.  App. 18.  For the first time, BSD purported to prohibit Coach Kennedy from engaging in any "demonstrative religious activity" that is "readily observable to (if not intended to be observed by) students and the attending public."  App. 19.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1    At the conclusion of the BHS varsity football game that night, Coach Kennedy knelt alone at

2    the 50-yard line and bowed his head for a brief, quiet prayer.  Kennedy Decl. ¶ 37.

### D.    BSD Retaliates by Subjecting Coach Kennedy to a Series of Adverse Employment Actions

5    On October 28, 2015, BSD placed Coach Kennedy on paid administrative leave and prohibited

6    him from "participat[ing], in any capacity, in BHS football program activities."  Letter to Coach

7    Kennedy, Oct. 28, 2015, App. 20.  The District's stated reason for these adverse employment actions

8    was that Coach Kennedy had "engag[ed] in overt, public and demonstrative religious conduct while

9    still on duty as an assistant football coach."  *Id.*

10    In a public document entitled "Bremerton School District Q&A Regarding Assistant Football

11    Coach Joe Kennedy," the District stated that it had placed Coach Kennedy on administrative leave

12    because he "engag[ed] in overt, public religious displays on the football field while on duty as a coach."

13    BSD Statement and Q&A, Oct. 28, 2015, App. 21.  At the same time, the District conceded that Coach

14    Kennedy "has complied with [BSD's] directives not to intentionally involve students in his on-duty

15    religious activities."  App. 22.

16    In November 2015, BSD further retaliated against Coach Kennedy by giving him a poor

17    performance evaluation for the first time in his BHS coaching career.  BSD Coaching Evaluation Form,

18    Nov. 20, 2015, App. 35.  The evaluation recommended that Coach Kennedy not be rehired because he

19    allegedly "failed to follow district policy" regarding religious expression and allegedly "failed to

20    supervise student-athletes after games."  *Id.*  Subsequently, Coach Kennedy was not rehired for the

21    following year.  Kennedy Decl. ¶ 40.

22    Although Coach David Boynton engaged in a Buddhist chant near the 50-yard line at the

23    conclusion of many BHS football games—and continued to do so after the October 23, 2015 letter was

24    issued—BSD did not take adverse employment action against Coach Boynton.  *Id.* ¶¶ 23–24.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1    Coach Kennedy promptly filed a complaint of religious discrimination with the EEOC on

2    December 15, 2015. The U.S. Department of Justice issued a right-to-sue letter on June 27, 2016.

3    App. 36. Coach Kennedy filed suit on August 9, 2016, alleging violations of his rights under the First

4    Amendment and Title VII of the Civil Rights Act of 1964.[2]

## LEGAL STANDARD

6    A plaintiff can demonstrate that he is entitled to a preliminary injunction by showing that (1)

7    he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of

8    preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public

9    interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts in the Ninth Circuit

10    evaluate these factors under a "sliding scale" approach, such that "serious questions going to the merits

11    and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

12    injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the

13    injunction is in the public interest." *Arc of California v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014)

14    (internal citation omitted)).

## ARGUMENT

## II. Coach Kennedy Is Entitled to a Preliminary Injunction

### A. Coach Kennedy Is Likely to Succeed on the Merits of His First Amendment Claims

18    It is well established that public school employees do not "shed their constitutional rights to

19    freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch.*

20    *Dist.*, 393 U.S. 503, 506 (1969); *Morse v. Frederick*, 551 U.S. 393, 403 (2007) ("First Amendment

21    rights, applied in light of the special characteristics of the school environment, are available *to teachers*

22    and students") (emphasis added). Thus, the government "may not abuse its position as employer to

---

[2]   Only Coach Kennedy's First Amendment claims are at issue in this motion.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

stifle 'the First Amendment rights [of] its employees.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

To determine whether a government employer has violated a public employee's First Amendment rights, the Ninth Circuit has refined the traditional *Pickering* balancing test into a "sequential five-step" analysis:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070.

A public employee states a prima facie First Amendment violation by showing—on the "first three steps"—that he "engaged in protected speech activities," and that his "protected speech was a substantial or motivating factor" in the adverse employment action. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). The burden then shifts to the government to try to "escape liability" on the final two prongs. *Id.* Because Coach Kennedy's speech amply satisfies that test—and because BSD's alternative justifications are unavailing—he is "likely to succeed on the merits" of his First Amendment claims. *Winter*, 555 U.S. at 20.

## 1. Coach Kennedy's Religious Speech Is on a Matter of Public Concern

At the conclusion of BHS football games, Coach Kennedy offers a "brief, quiet prayer of thanksgiving for player sportsmanship, safety, and spirited competition." Kennedy Decl. ¶ 12; *see also id.* ¶ 11 ("I made a commitment to God that I would give thanks through prayer, at the end of each game"). Because Coach Kennedy's speech concerns religion, it is "unquestionably of inherent public concern." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011); *see also Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d 1204, 1210 (9th Cir. 1996) ("[T]he speech is religious expression and it is obviously of public concern.").

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1

## 2.    Coach Kennedy Spoke as a Private Citizen, Not a Public Employee

Coach Kennedy spoke "as a private citizen," not a public employee, when he offered his brief, quiet prayer at the conclusion of BHS football games.  *Eng*, 552 F.3d at 1070.

The First Amendment clearly "protects a public employee's right" to speak "as a citizen" on matters of public concern.  *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 (9th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).  That remains true when the speech "concerns information related to or learned through public employment." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014).  "After all, public employees do not renounce their citizenship when they accept employment," and the Supreme Court "has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights."  *Id.*  Moreover, "speech by a public employee, even a teacher, does not always represent, or even appear to represent, the views of the State." *Tucker*, 97 F.3d at 1213.

To determine when a public employee's speech is protected, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties."  *Coomes*, 816 F.3d at 1260 (quoting *Lane*, 134 S. Ct. at 2379); *see also Hunter v. Town of Mocksville*, 789 F.3d 389, 396–97 (4th Cir. 2015) (same); *Graziosi v. City of Greenville*, 775 F.3d 731, 737 (5th Cir. 2015) (same).  Thus, as long as Coach Kennedy's religious expression is "outside the scope of his ordinary job responsibilities," it constitutes "speech as a citizen for First Amendment purposes."  *Lane*, 134 S. Ct. at 2378.[3]

Coach Kennedy's religious expression clearly constitutes speech "as a citizen."  As a factual matter, his religious expression takes place "[a]fter the game is over, and after the players and coaches

---

[3]    The Ninth Circuit treats the "as a citizen" inquiry as a mixed question of law and fact.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1072 (9th Cir. 2013) (en banc).  The "scope and content of [Coach Kennedy's] job responsibilities is a question of fact."  *Id.*  This factual inquiry is a "practical" one, and is "not limited to a formalistic review of [Coach Kennedy's] job description."  *Coomes*, 816 F.3d at 1260.  The Court must then decide, as a matter of law, "the ultimate constitutional significance of those facts."  *Id.*

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1  from both teams have met to shake hands at midfield." Kennedy Decl. ¶ 12. Coach Kennedy then

2  "take[s] a knee at the 50-yard line and offer[s] a brief, quiet prayer of thanksgiving" that "lasts

3  approximately 30 seconds." *Id.*

4  Nothing about Coach Kennedy's "ordinary job responsibilities" requires him to pause at

5  midfield, at the end of each game, to "give thanks through prayer." *Id.* ¶ 27. That is abundantly

6  confirmed by BSD's own correspondence, which purported to prohibit Coach Kennedy from engaging

7  in "demonstrative religious conduct" while he was on duty. Letter to Coach Kennedy, Oct. 28, 2015,

8  App. 20; *see also* Letter to Coach Kennedy, Oct. 23, 2015, App. 19 (same). Because Coach Kennedy's

9  speech was "in direct contravention" to BSD's (revised) directives, *see Dahlia*, 735 F.3d at 1075–76,

10  there can be no dispute that his religious expression is "outside the ordinary scope of his responsibilities

11  as a BSD employee." Kennedy Decl. ¶ 15.

12  The fact that Coach Kennedy is still wearing "BHS-logoed attire" when he takes a knee at the

13  50-yard line does not change the fact that his speech is protected. Letter to Coach Kennedy, Oct. 23,

14  2015, App. 18. Even if that apparel identified him as a BHS football coach—and it does not, *see*

15  Kennedy Decl. ¶ 9—merely "identifying oneself as a public employee does not forfeit one's ability to

16  claim First Amendment protections." *Graziosi*, 775 F.3d at 737.

17  Nor does the content of Coach Kennedy's prayer—which in some sense "relate[s]" to his public

18  employment—alter the analysis. *Lane*, 134 S. Ct. at 2377. At the end of each game, Coach Kennedy

19  offers a brief prayer of thanksgiving "for what the players . . . accomplished and for the opportunity to

20  be part of their lives through the game of football." Kennedy Decl. ¶ 11. That prayer is, of course,

21  informed by Coach Kennedy's relationships with his players. But the mere fact that his religious

22  expression broadly "concerns information related to . . . [his] public employment" in no way

23  undermines the reach of the First Amendment. *Lane*, 134 S. Ct. at 2377.

24

25

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 11

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1    Because Coach Kennedy's religious expression is clearly outside the "scope of h[is]

2    employment duties," he spoke "as a citizen," not a public employee.  *Coomes*, 816 F.3d at 1260.  His

3    speech therefore "lies at the heart of the First Amendment."  *Lane*, 134 S. Ct. at 2377.

4
         **3.     Coach Kennedy's Religious Expression Was a Substantial Factor in the**
5                   **Adverse Employment Actions**

6        BSD's own correspondence confirms that Coach Kennedy's protected religious expression was

7    a "substantial or motivating factor in the adverse employment action."  *Eng*, 552 F.3d at 1070.

8        *First*, Coach Kennedy was clearly subject to an "adverse employment action."  To constitute

9    an adverse employment action in a First Amendment case, "a government act of retaliation need not

10   be severe and it need not be of a certain kind."  *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740,

11   750 (9th Cir. 2010) (internal citations omitted).  Because "[t]he goal is to prevent, or redress, actions

12   by a government employer that chill the exercise of protected First Amendment rights," "even minor

13   acts of retaliation can infringe on an employee's First Amendment rights."  *Ellins v. City of Sierra*

14   *Madre*, 710 F.3d 1049, 1061 (9th Cir. 2013).

15       Here, Coach Kennedy was subject to a series of adverse actions based on his protected religious

16   expression—including suspension from his job, an "unsatisfactory evaluation," and ultimately

17   "termination of his employment."  *Anthoine*, 605 F.3d at 750.  All of these are classic examples of

18   adverse employment actions.  *See, e.g.*, *Dahlia*, 735 F.3d at 1078–79.

19       *Second*, Coach Kennedy's protected religious expression was—by BSD's own admission—a

20   "substantial or motivating factor" in the adverse employment actions.  To show that an adverse

21   employment action was motivated by retaliation, a plaintiff may introduce evidence that (1) "the speech

22   and adverse action were proximate in time"; (2) "the employer expressed opposition to the speech"; or

23   (3) "the proffered explanations for the adverse action were false and pretextual."  *Ellins*, 710 F.3d at

24   1062.  Any one of these factors would be sufficient.  *See McDonald v. Pierce Cty. Fire Protection Dist.*

25

1   *No. 13*, No. C04-5778 RBL, 2006 WL 223740, at *5 (W.D. Wash. Jan. 30, 2006) (Leighton, J.).  Coach

2   Kennedy satisfies all three.

3   On October 28, 2015, BSD placed Coach Kennedy on administrative leave and prohibited him

4   from "participat[ing], in any capacity, in BHS football program activities."  Letter to Coach Kennedy,

5   Oct. 28, 2015, App. 20.  The District later retaliated against Coach Kennedy by giving him a poor

6   performance evaluation—for the first time in his entire BHS coaching career—and failing to renew his

7   contract.  Kennedy Decl. ¶ 40.

8   BSD's stated justification for its adverse employment actions makes clear that the District acted

9   on the basis of Coach Kennedy's religious expression.  In its October 28, 2015 letter, BSD stated that

10   Coach Kennedy had "violated [BSD] directives by engaging in overt, public and demonstrative

11   religious conduct while still on duty as an assistant coach."  Letter to Coach Kennedy, Oct. 28, 2015,

12   App. 20.  BSD then announced that, "Effective immediately, . . . you are placed on paid administrative

13   leave from your position as an assistant coach."  *Id.*  In a public statement, BSD reiterated that "*[t]his*

14   *action was necessitated*" by Coach Kennedy's "refusal to . . . refrain from engaging in overt, public

15   religious displays on the football field while on duty as a coach."  BSD Statement and Q&A, Oct. 28,

16   2015, App. 21 (emphasis added).

17   Thus, BSD's adverse actions—which began within *days* of Coach Kennedy's religious

18   expression—were indisputably "proximate in time" to his protected speech.  *Ellins*, 710 F.3d at 1062

19   ("three to eight months is easily within a time range that can support an inference of retaliation").  And

20   BSD repeatedly "expressed opposition" to Coach Kennedy's speech in its written correspondence, *see*

21   *id.*, going so far as to claim that the adverse employment action "was necessitated" by Coach Kennedy's

22   religious expression.

23   Moreover, BSD's own actions amply demonstrate that its "proffered explanations"—discussed

24   more fully below, *see supra* at 15–21—are merely pretextual.  *Ellins*, 710 F.3d at 1062.  BSD's initial

25   guidelines stated only that Coach Kennedy's religious expression "should either be non-demonstrative

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 13

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1   . . . or it should occur while students are not engaging in [religious] conduct." Letter to Coach Kennedy,

2   Sept. 17, 2015, App. 6.  But when Coach Kennedy fully "compl[ied]" with the District's "directives

3   not to intentionally involve students in his on-duty religious activities," BSD changed the rules to

4   prohibit all "demonstrative religious activity."  BSD Statement and Q&A, Oct. 28, 2015, App. 22;

5   Letter to Coach Kennedy, Oct. 23, 2015, App. 19.

6          BSD then proceeded to enforce its revised policy *only against Coach Kennedy*.  Although

7   Coach Boynton engaged in a Buddhist chant near the 50-yard line at the conclusion of many BHS

8   games—and continued to do so after BSD issued its ban on "demonstrative" religious activity—BSD

9   took no steps to enforce its revised policy against him.  Kennedy Decl. ¶¶ 23–24.  Coach Boynton was

10  never suspended—let alone dismissed—on the basis of his religious expression.  *Id.*

11  This is precisely the type of "inconsistent application of [school] policy" that supports an inference of

12  pretext.  *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003); *see also Colman v. City of*

13  *Seattle*, No. C05-0754 RSM, 2006 WL 1842978, at *8 (W.D. Wash. June 30, 2006) ("pretextual

14  explanation[s] . . . cast[] doubt on other explanations that, standing alone, might appear to be true").

15         On these facts, there can be little doubt that Coach Kennedy's speech was a "substantial or

16  motivating factor" in the District's adverse employment actions.  *Eng*, 552 F.3d at 1070.

17
           **4.     BSD Has No Adequate Justification for Discriminating Against Coach**
18         **Kennedy**

19         Because Coach Kennedy has clearly stated a prima facie First Amendment violation, the burden

20  falls to BSD to show an "adequate justification" for its discriminatory actions.  *Eng*, 552 F.3d at 1070.

21  The government bears a "greater" burden where, as here, it "seek[s] to justify a broad deterrent on

22  speech that affects an entire group of its employees."  *Tucker*, 97 F.3d at 1210.  BSD has proffered two

23  justifications for its actions—one based on Coach Kennedy's alleged post-game supervisory

24  obligations, and one based on an alleged Establishment Clause violation.  Both are unavailing.

25

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

i.   **Coach Kennedy Has No Post-Game Supervisory Obligations That Would Prohibit Him from Engaging in "Fleeting" Religious Expression**

BSD has claimed that Coach Kennedy's religious expression "drew [him] away from [his] work" because he "continued to have job responsibilities, including the supervision of players," after the game.  Letter to Coach Kennedy, Oct. 23, 2015, App. 18.  BSD repeated that claim in its November 20, 2015 performance evaluation, asserting that Coach Kennedy "failed to supervise student-athletes after games."  BSD Coaching Evaluation Form, Nov. 20, 2015, App. 35.

The factual premise of BSD's argument is simply wrong.  The District has publicly admitted that Coach Kennedy's religious expression is "fleeting."  Letter to Coach Kennedy, Oct. 23, 2015, App. 18.  And the District has never formally or informally assigned any post-game supervisory obligations that would prohibit Coach Kennedy from engaging in a "fleeting" prayer that lasts no more than 30 seconds—a shorter period of time than would be required for a trip to the bathroom.  Kennedy Decl. ¶ 35.

For a court to find that the government's interest in a "smoothly-running" workplace "outweighs" an employee's First Amendment rights, "defendants must demonstrate actual, material and substantial disruption, or reasonable predictions of disruption in the workplace." *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009) (internal quotation marks omitted).  The absence of any "substantial disruption" is illustrated by the fact that BSD was completely unaware of Coach Kennedy's religious expression for the first *eight years* of his tenure as a BHS coach.  BSD Statement and Q&A, Oct. 28, 2015, App. 23–24.  And no student, parent, or member of the community ever complained about Coach Kennedy's private religious expression at the conclusion of BHS football games.  *Id.*

Indeed, the only arguable "disruption" here is the direct result of *BSD's own discrimination* against Coach Kennedy by prohibiting his religious expression and then taking adverse employment action against him.  Disruption that results from unconstitutional discrimination cannot, of course, constitute an adequate justification.  *See Nunez v. Davis*, 169 F.3d 1222, 1229 (9th Cir. 1999) ("real,

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 15

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

not imagined, disruption is required"); *see also Nichol v. ARIN Intermediate Unit 28*, 268 F. Supp. 2d 536, 560 (W.D. Pa. 2003) ("Plaintiff's wearing her cross has not been disruptive, controversial (until banned by ARIN), distracting or confusing to students, nor has it caused any dissension or problems in the working or school environment.").

The pretextual nature of BSD's claim is made clear by its proposed "accommodation." In its October 23, 2015 letter, the District suggested that Coach Kennedy should abandon his typical practice and instead go to a "private location within the school building, athletic facility or press box" in order to pray. Letter to Coach Kennedy, Oct. 23, 2015, App. 19. That invitation belies any concerns about post-game supervision, since traveling to a location dozens or hundreds of yards away would obviously take Coach Kennedy away from his players for a significantly longer period of time. Thus, BSD has effectively admitted that Coach Kennedy's post-game supervisory obligations—whatever they may be—are no reason to prohibit his private religious expression.

**ii.    Coach Kennedy's Brief, Private Religious Expression Does Not Violate the Establishment Clause**

BSD has also opined that its actions are justified because Coach Kennedy's post-game religious expression would "almost certainly" be considered "District endorsement of religion in violation of the United States Constitution." Letter to Coach Kennedy, Oct. 23, 2015, App. 18. The District is wrong about that too.

1.    In order to justify a restriction on protected speech, the District must "demonstrate[] that the Establishment Clause would be violated if it permitted" the speech at issue. *Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d 1044, 1053 (9th Cir. 2003); *see also Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 112, 120 (2001) (rejecting speech restriction that was not "required to avoid violating the Establishment Clause"); *Child Evangelism Fellowship v. Montgomery Cnty. Public Schs.*, 373 F.3d 589, 594 (4th Cir. 2004) (same); *Wigg v. Sioux Falls Sch. Dist.*, 382 F.3d 807, 812–13 (8th

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 16

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Cir. 2004) (same); *Seidman v. Paradise Valley Unified Sch. Dist. No. 69*, 327 F. Supp. 2d 1098, 1112 (D. Ariz. 2004) (same).  There is no such violation here.

The Supreme Court has repeatedly reaffirmed the basic principle that "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302 (2000) (quoting *Board of Ed. of Westside Cmty. Schs. (Dist. 66) v. Mergens*, 496 U.S. 226, 250 (1990) (plurality)).

In *Santa Fe*, the Supreme Court specifically addressed the private speech inquiry, and concluded that a school-sponsored, student-led invocation prayer before football games was public speech rather than constitutionally protected private speech.  530 U.S. at 309.  Critical to the Court's holding was the fact that the school "board *ha[d] chosen to permit* students to deliver a brief invocation and/or message" in order to "solemnize the event."  *Id.* at 199 n.6, 306.  Because the school policy "approve[d] of only one specific kind of message, an 'invocation,'" the Court concluded that "the District ha[d] failed to divorce itself from the religious content in the invocations."  *Id.* at 305, 309.

Thus, "*Santa Fe* does not obliterate the distinction between State speech and private speech in the school context."  *Chandler v. Siegelman*, 230 F.3d 1313, 1316 (11th Cir. 2000).  Instead, "[w]hat the Court condemned in *Santa Fe* was not private speech endorsing religion, but the delivery of a school-sponsored prayer."  *Id.*; *see Santa Fe*, 530 U.S. at 305 (the "degree of school involvement" made clear that the pregame prayers "bear the imprint of the State").  "Private speech endorsing religion is constitutionally protected—even in school."  *Chandler*, 230 F.3d at 1317.

After *Santa Fe*, the relevant inquiry remains "whether an objective observer, acquainted with the text, legislative history, and implementation of the [policy], would perceive it as a state endorsement of prayer in public schools."  *Santa Fe*, 530 U.S. at 308 (internal citation omitted).

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1    2.    In this case, no "objective observer"—particularly one who is "acquainted with" the

2    relevant facts and history—would confuse Coach Kennedy's brief, private prayer with a prayer that is

3    endorsed by the State. *Id.*

4    At the conclusion of BHS football games, Coach Kennedy takes a knee at midfield and offers

5    a brief, quiet prayer of thanksgiving for player safety, sportsmanship, and spirited competition.

6    Kennedy Decl. ¶ 12.  The District has no involvement in regulating "the topic and the content" of

7    Coach Kennedy's religious expression. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605,

8    612 (8th Cir. 2003).  Nor is Coach Kennedy's prayer "the product of any school policy" that "actively

9    or surreptitiously encourages" religious expression. *Chandler*, 230 F.3d at 1317.  Indeed, the District

10   was *not even aware* of Coach Kennedy's religious expression for the first eight years of his tenure at

11   BHS.  *Cf. Doe*, 340 F.3d at 612 ("there is no evidence that any representative of the School District

12   had any knowledge of [the speaker's] intentions").

13   "The *complete absence of any involvement*" by the District in determining "whether" Coach

14   Kennedy would speak, as well as "the complete autonomy afforded to [Coach Kennedy] in determining

15   the content" of his speech, "indicates a lack of state-sponsorship." *Id.*; *see also Adler v. Duval Cty.*

16   *Sch. Bd.*, 250 F.3d 1330, 1342 (11th Cir. 2001) (en banc) (same).  Because there is no "school

17   involvement" in Coach Kennedy's religious expression, his prayers do not "bear the imprint of the

18   State." *Santa Fe*, 530 U.S. at 305.

19   The fact that Coach Kennedy offers his brief, quiet prayer on the playing field does not alter

20   this result.  Coach Kennedy's "fleeting" religious expression takes place after the football game, when

21   "[p]arents, fans, and members of the community frequently walk[] onto the field to congratulate players

22   and socialize after the game."  Kennedy Decl. ¶ 25.  Indeed, BHS Athletic Director Jeff Barton has

23   described the BHS football field as a "public space" that cannot be closed to members of the community

24   after football games.  *Id.* ¶ 26; *see also* Email from BSD Superintendent Aaron Leavell, Sept. 18, 2015,

25

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

App. 10 ("[W]hen the community comes down onto the field tonight after the game, we will not be able to prevent that from happening.").[4]

There is no "captive" audience here, as in a classroom or at a graduation ceremony. *See, e.g.*, *Poway*, 658 F.3d at 954 (classroom); *Nurre v. Whitehead*, 580 F.3d 1087, 1095 (9th Cir. 2009) (graduation ceremony); *see also Hills*, 329 F.3d at 1054 n.8 ("graduation exercise" is a "decidedly different context . . . in which the possibility that the speech bears the imprimatur of the school is heightened"). Nor are Coach Kennedy's prayers "broadcast over the school's public address system." *Santa Fe*, 530 U.S. at 307. Instead, Coach Kennedy offers his brief, quiet prayer at a time when BSD has allowed "unrestricted public access to the football field." Kennedy Decl. ¶ 25.

Thus, nothing about Coach Kennedy's conduct "is likely to cause a reasonable person to believe that the state is speaking or supporting his views." *Tucker*, 97 F.3d at 1212; *see also id.* at 1213 ("Allowing [public employees] to discuss whatever subject they choose at work, be it religion or football, may incidentally benefit religion (or football), but it would not give the appearance of a state endorsement.").

3.   BSD has offered a handful of reasons why Coach Kennedy's private speech purportedly constitutes a "District endorsement of religion." BSD Statement and Q&A, Oct. 28, 2015, App. 22. None are persuasive.

BSD leans on the fact that the "audience" at a BHS football game "consists of large numbers of students, rather than mostly adults." App. 23. But the Supreme Court has expressly "decline[d] to employ Establishment Clause jurisprudence" as a "modified heckler's veto, in which . . . religious

---

[4]   Although the Ninth Circuit has made clear that the *Pickering*-based inquiry controls in First Amendment cases involving public employees, *see Poway*, 658 F.3d at 975, these facts make clear that BSD has created a limited public forum for public interaction and expression on the football field at the conclusion of games. And "[o]nce it has opened a limited forum, . . . the State must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of U. of Va.*, 515 U.S. 819, 829–30 (1995).

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

activity can be proscribed on the basis of what the youngest members of the audience might misperceive." *Good News Club*, 533 U.S. at 119.

Put simply, "Schools . . . do not endorse everything they fail to censor." *Hills*, 329 F.3d at 1055 (quoting *Mergens*, 496 U.S. at 250).  That is especially true because schools can dispel any "mistaken inference of endorsement" by making clear to students that private speech is not the speech of the school.  *Prince v. Jacoby*, 303 F.3d 1074, 1094 (9th Cir. 2002).  As the Ninth Circuit has held, "the desirable approach is not for schools to throw up their hands because of the possible misconceptions about endorsement of religion."  *Hills*, 329 F.3d at 1055.  Instead, it is:

> [f]ar better to teach [students] about the [F]irst [A]mendment, about the difference between private and public action, about why we tolerate divergent views. . . . *The school's proper response is to educate the audience rather than squelch the speaker.* Schools may explain that they do not endorse speech by permitting it.  If pupils do not comprehend so simple a lesson, then one wonders whether the [ ] schools can teach anything at all.  Free speech, free exercise, and the ban on establishment are quite compatible when the government remains neutral and educates the public about the reasons.

*Id.* (emphasis added) (quoting *Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*, 9 F.3d 1295, 1299–1300 (7th Cir. 1993)).

BSD further suggests that Coach Kennedy's speech is unprotected due to his prior involvement in giving post-game motivational speeches to the players that included religious content.  BSD Statement and Q&A, Oct. 28, 2015, App. 22.  That argument is also unavailing.

Nothing about Coach Kennedy's sincerely held religious beliefs requires him to lead any prayer, involving students or otherwise, at the conclusion of BHS football games.  Kennedy Decl. ¶ 21. Instead, his commitment to God is simply that he will "give thanks through prayer, at the end of each game."  *Id.* ¶ 11.  BSD has publicly admitted that students were never "coerced," "required," or "actively encouraged" to participate in any religious activity.  BSD Statement and Q&A, Oct. 28, 2015, App. 21; Letter to Coach Kennedy, Sept. 17, 2015, App. 4.

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Thus, it should be no surprise that Coach Kennedy fully complied with the District's directives not to involve students in his religious expression.  But BSD suspended him anyway, explaining as follows:

> To the District's knowledge, *Mr. Kennedy has complied with those directives not to intentionally involve students in his on-duty religious activities*.  However, he has continued a practice of engaging in public religious display immediately following games, while he is still on duty.

BSD Statement and Q&A, Oct. 28, 2015, App. 22 (emphasis added).

Accordingly, this is not a case where a coach seeks to "bow his head and take a knee" during a student-led prayer, after years of "organizing, participating in, and leading" that same activity.  *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 178–79 (3d Cir. 2008).  Instead, the District's own correspondence makes clear that the only conduct at issue—and the sole reason for the adverse employment actions—is Coach Kennedy's private prayer at midfield.

In sum, "[p]rivate speech endorsing religion is constitutionally protected—even in school." *Chandler*, 230 F.3d at 1317.  And the facts of this case are clear that Coach Kennedy's brief, quiet prayer is purely private speech.

### 5.   BSD Would Not Have Taken the Adverse Employment Actions Absent Coach Kennedy's Religious Expression

Finally, the District also bears the burden to show that it "would have taken the adverse employment action even absent the protected speech."  *Eng*, 552 F.3d at 1070.  In other words, the government "may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action." *Id.* at 1072 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Because this inquiry is "purely a question of fact," the court must "assume the truth of the plaintiff's allegations." *Id.*

As explained above, *see infra* at 13–14, Coach Kennedy has put forward ample evidence of retaliatory animus—including the proximity of the speech and the adverse actions, BSD's public

1    opposition to his speech, and the pretextual nature of BSD's alternative justifications.   Indeed, the

2    District has publicly admitted that Coach Kennedy's religious expression was *the reason* for taking

3    adverse employment action against him.   BSD Statement and Q&A, Oct. 28, 2015, App. 21.

4           Thus, BSD itself has made clear that Coach Kennedy's religious expression was the "but-for

5    cause of the employment action." *Eng*, 552 F.3d at 1072.

6                                          *     *     *

7           For all these reasons, Coach Kennedy is likely to succeed on the merits of his First Amendment

8    claims.   At a bare minimum, he has clearly raised "serious questions going to the merits."   *Arc of*

9    *California*, 757 F.3d at 983.

10   **B.       Coach Kennedy Will Suffer Irreparable Harm Without a Preliminary Injunction**

11          Coach Kennedy is also "likely to suffer irreparable harm in the absence of preliminary relief."

12   *Winter*, 555 U.S. at 20.   Both the Ninth Circuit and the Supreme Court "have repeatedly held that '[t]he

13   loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes

14   irreparable injury.'"   *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (quoting

15   *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (collecting cases).   Because Coach Kennedy continues to

16   suffer the loss of his First Amendment rights due to the District's discriminatory actions, he will

17   "unquestionably" suffer irreparable injury without a preliminary injunction.   *Id.*

18          Moreover, the start of another BHS football season is "imminent," and the First Amendment

19   rights of Coach Kennedy—and all BSD employees—are being "chilled daily."   *Sanders Cty.*

20   *Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012).[5]   The Ninth Circuit has

21   expressly recognized that the "chilling effect of retaliatory activity can constitute irreparable harm,"

22   because retaliatory action "carries with it the distinct risk that other employees may be deterred from

23

24   _____

     [5]    The first BHS football game of the season is scheduled for September 2, 2016.   *See* BHS Football Schedule,
25   http://bhs.bremertondist100.tandem.co/index.php?type=reports&action=show&id=121 (last visited Aug. 24, 2016).
     The regular season will conclude on October 28, 2016.   *Id.*

protecting their rights under the [law].”  *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986) (internal

citation omitted).  “The harm is a continuing one so long as the retaliation remains in effect.”  *Id.* at

1405–06.

Coach Kennedy cannot be made whole through monetary remedies.  *See, e.g.*, *Scott v. Roberts*,

612 F.3d 1279, 1295 (11th Cir. 2010) (“chilled free speech . . . because of [its] intangible nature,

[can]not be compensated for by monetary damages”).  There are approximately 12 high school seniors

on the BHS varsity roster for the 2015 season that Coach Kennedy has coached since they were high

school freshmen.  Kennedy Decl. ¶ 43.  Absent this Court’s intervention, Coach Kennedy will be

irreparably deprived of his First Amendment rights—and of the opportunity to participate in these

players’ last season of high school football.

### C.    The Balance of Equities Tips Heavily in Coach Kennedy’s Favor

Given the strength of Coach Kennedy’s First Amendment claims and the irreparable nature of

his harm, “the balance of equities tips in his favor.”  *Winter*, 555 U.S. at 20.  “[B]y establishing a

likelihood that [BSD’s] policy violates the U.S. Constitution,” Coach Kennedy “ha[s] also established

that both the public interest and the balance of the equities favor a preliminary injunction.”  *Arizona

Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).  “[I]t is clear that it would not be

equitable or in the public’s interest to allow the state . . . to violate the requirements of federal law,

especially when there are no adequate remedies available.”  *Valle del Sol Inc. v. Whiting*, 732 F.3d

1006, 1029 (9th Cir. 2013).

The balance of equities also favors Coach Kennedy because it is “[his] First Amendment rights

[that] are being chilled.”  *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).  BSD, by contrast, “can

derive no legally cognizable benefit from being permitted to further enforce an unconstitutional limit

on . . . speech.”  *Sanders Cty. Republican Cent. Comm.*, 698 F.3d at 749.[6]

---

[6]    BSD cannot, of course, claim to prevail on the equities based on any administrative “burdens” associated with
reinstating Coach Kennedy to the coaching positions he held prior to the District’s discriminatory acts.  These

### D.     A Preliminary Injunction Is in the Public Interest

Finally, a preliminary injunction is clearly "in the public interest." *Winter*, 555 U.S. at 20.  The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding First Amendment principles," since the "ongoing enforcement of the potentially unconstitutional regulations" would also infringe "the free expression interests . . . of other people subjected to the same restrictions." *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. at 20.  As noted above, the enforcement of an unconstitutional law is clearly contrary to the public interest.  *Valle del Sol Inc.*, 732 F.3d at 1029.

### CONCLUSION

Accordingly, Coach Kennedy moves this Court to enter a preliminary injunction as follows:

1.     Declare that BSD's discrimination against Coach Kennedy on the basis of his religious expression violates Coach Kennedy's rights to free speech and free exercise of religion as protected by the First Amendment;

2.     Order BSD to cease discrimination against Coach Kennedy on the basis of his religious expression in violation of the First Amendment;

3.     Order BSD to reinstate Coach Kennedy to a football coaching position at BHS;

4.     Order BSD to allow Coach Kennedy to take a knee at the 50-yard line at the conclusion of BHS football games and say a silent prayer that lasts 15–30 seconds;

5.     Award Coach Kennedy attorneys' fees and costs;

6.     Award Coach Kennedy pre- and post-judgment interest; and

7.     Award Coach Kennedy all other appropriate relief as the Court deems just and proper.

---

"routinely 'incidental' burdens" are nothing more than the "foreseeable sequelae of [BSD's] wrongdoing," and are therefore insufficient "to tip the scales against reinstatement when First Amendment rights are at stake." *Rosario-Torres v. Hernandez-Colon*, 889 F.2d 314, 322 (1st Cir. 1989) (en banc); *see also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 841 (9th Cir. 1997) ("[J]ob reinstatement constitutes prospective injunctive relief" because it "compel[s] the state official to cease her actions in violation of federal law and to comply with constitutional requirements.").

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Dated:  August 24, 2016

Respectfully submitted,

Hiram Sasser*
    SBA No. 24039157
Michael Berry*
    SBA No. 24085835
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
Tel:  (972) 941-6162
Fax:  (972) 423-6162
*hsasser@firstliberty.org*
*mberry@firstliberty.org*

   /s/ *Rebekah Perry Ricketts*   
Rebekah Perry Ricketts*
    SBA No. 24074883
Benjamin D. Wilson
    SBA No. 24084105
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Tel:  (214) 698-3100
Fax:  (214) 571-2900
*rricketts@gibsondunn.com*
*bwilson@gibsondunn.com*

Anthony J. Ferate*
    SBA No. 21171
FERATE PLLC
4308 Echohollow Trail
Edmond, OK 73025
Tel: (202) 486-7211
*aj@feratepllc.com*

Jeffrey Paul Helsdon
    WSBA No. 17479
OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel:  (253) 564-9500
Fax:  (253) 414-3500
*jhelsdon@tacomalawfirm.com*

*Counsel for Plaintiff Joseph A. Kennedy*

   * Admitted *pro hac vice*.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 25

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2016, the foregoing document was served via electronic filing on all counsel of record in this case.


/s/ *Rebekah Perry Ricketts*
Counsel for Plaintiff

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
Page 26

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500