EXHIBIT 10

27



# PORTER FOSTER RORICK LLP

800 Two Union Square | 601 Union Street | Seattle, Washington 98101 | Tel (206) 622-0203 | Fax (206) 223-2003 | www.pfrwa.com

April 6, 2016

Hattie Y. Reed, Office Automation Assistant
U.S. Equal Opportunity Commission
Seattle Field Office
909 First Avenue, Suite 400
Seattle, Washington 98104-1061

    Re:    **Joseph A. Kennedy, EEOC Charge No. 551-2016-00452**

Dear Ms. Reed:

On behalf of the Bremerton School District, this letter and the attached documents constitute the District's response to your office's March 7, 2016 request for information. For the reasons described below, the District denies that it has discriminated against the Complainant on the basis of religion.

**Background**

The Bremerton School District is a municipal corporation. The District is responsible for 5,200 students across four elementary schools, one early learning center (preschool through third grade), one STEM academy (preschool through eighth grade), one middle school, one high school, one alternative high school, a technical skills center, and a kindergarten through eighth grade home school partnership program. The District's superintendent is Aaron Leavell, Ed.D. An organizational chart is attached as Exhibit A.

The District employed Mr. Kennedy (Complainant) as a football coach from 2008 until the 2015-2016 school year. He worked as an assistant coach for the varsity high school team and a head coach for the junior varsity high school team. Job descriptions for both positions are attached as Exhibits B and C.

Coaches in the District are represented by the Bremerton Coaches and Activities Association. Coaches are employed under one-year contracts with the District and are evaluated once a year. See Exhibit D at 3. Coaches sign an agreement acknowledging that they have read all District policies and procedures. Exhibit E (Kennedy 2015 agreement).

Football games are organized District events. The facilities—stadium, field and locker room—are under the District's exclusive control during these events. Both head coaches and

28

Hattie Y. Reed
April 6, 2016
Page 2

assistant coaches are responsible for supervising students before, during, and after games until students are released to parents or otherwise allowed to leave. See Exhibit B (assistant coach job description stating duties include "assist[ing] head coach with his/her supervisory responsibilities;" "accompany[ing] and direct[ing] all games at home or out of town;" and supervising dressing rooms). For the past ten years, assistant coaches have been expected to remain with the team following completion of the game. This includes supervising student activities immediately following the completion of the game (when at home games players have a tradition of going to the sideline to sing the school's fight song to those in the stands), along with accompanying and supervising students as they return to the locker room, engage in post-game discussions with coaches, change into their street clothes and are ultimately released from the activity. During his employment with the District, Complainant regularly came to the locker room following football games, was responsible for supervising players in the locker room, and regularly helped supervise students until they were picked up by parents or otherwise left school grounds.

**Allegations of Discrimination**

Complainant contends the District discriminated against him based on his religion by denying his request for accommodation and treating him less favorably than similarly situated employees. The District denies all allegations of discrimination. The District's directives regarding Complainant's on-duty prayer were based on firmly-established First Amendment jurisprudence. Further, the District repeatedly attempted to accommodate Complainant's religious exercise in a manner consistent with the Establishment Clause.

In the beginning of the 2015-2016 school year, the District became aware that Complainant had invited another school's football team to join him and the team in a post-game prayer. The District, having previously been unaware of such activities, conducted an inquiry into whether its staff appropriately complied with Board Policy 2340, titled "Religious-Related Activities and Practices." That Policy is attached as Exhibit F.

The District's inquiry revealed that Complainant had been leading the students and coaching staff in pre-game prayers in the locker room and had been giving inspirational speeches at midfield following football games, including overtly religious references constituting prayer. On September 17, 2015, Superintendent Leavell wrote Complainant a letter regarding these "problematic practices within the football program." That letter is attached as Exhibit G. Superintendent Leavell's letter explained that "both activities would very likely be found to violate the First Amendment's Establishment Clause, exposing the District to significant liability." Exhibit G at 1.

29

In his September 17 letter, Superintendent Leavell directed Complainant to adhere to Policy 2340, directing him to omit religious expression from his motivational talks with students and provided specific guidance on the conduct expected of District employees to avoid any perception of endorsement of religion. The letter states that students may initiate religious expression, but that such expression cannot be suggested, encouraged, discouraged, or supervised by District staff. Further, the District specifically informed Complainant that he was free to engage in religious activity, including prayer, "so long as it does not interfere with job responsibilities. Such activity must be physically separate from any student activity, and students may not be allowed to join such activity." Exhibit G at 3.

On October 14, 2015, the District received a letter from an attorney, Hiram Sasser of the Liberty Institute, written on behalf of Complainant. Exhibit H. That letter requested the District accommodate Complainant's practice of post-game prayer, disputed that the directives in the District's September 17 letter were necessary or lawful, and stated that Complainant would continue his practice of praying at the 50-yard line immediately following the October 16, 2015 homecoming football game at Bremerton High School.

On October 16, following that game, Complainant knelt at midfield and bowed his head in prayer. By letter dated October 23, 2015, Superintendent Leavell informed Complainant that his actions were inconsistent with the requirements laid out in the September 17 letter, and likely constituted an endorsement of religion in violation of the U.S. Constitution. Exhibit I. Recognizing the District's obligations under Title VII of the Civil Rights Act, Dr. Leavell reiterated that the District would accommodate employee religious exercise so long as that exercise did not constitute endorsement or interfere with Complainant's performance of his job duties. Dr. Leavell noted that developing accommodations is an interactive process and invited Complainant to discuss options with the District, including providing Complainant with a private place for religious observance, not observable to students or the public, before and after games. Specific options offered by Dr. Leavell included allowing Complainant to return to the locker room or school building, or allowing Complainant's use of an unused press box at the high school's stadium. Exhibit I at 3. Instead of proposing alternative accommodations meeting the District's need to avoid an Establishment Clause violation, the Complainant's legal representatives stated in the media that the options offered by the District were no accommodations at all. Exhibit J. These comments made clear that anything short of an opportunity to engage in on-duty demonstrative prayer activity in the middle of the field, while still in school-logoed coaching attire, under the stadium lights, while students, staff and parents were still present and engaged in the organized post-game activities, would be unacceptable to Complainant and his legal team. It seems clear that the public spectacle of his conduct was central to Complainant's position.

Hattie Y. Reed
April 6, 2016
Page 4

Following his receipt of the October 23 letter, Complainant assistant coached a District varsity football game. While on duty following that game, Complainant kneeled on the field and prayed. Three days later, on October 26, 2015, Complainant acted as head coach for the junior varsity football game. Before Complainant's post-game talk, and while players were present and engaging in post-game traditions, Complainant kneeled on the field and prayed. At these times, the audience attending both games remained present in the stands, observing the traditional post-game activities.

In response to Complainant's conduct, Dr. Leavell placed Complainant on paid administrative leave. By letter dated October 28, 2015, Dr. Leavell stated that Complainant's conduct on October 23 and October 26 was "in direct violation of the directives set forth in my October 23 letter." That letter is attached as Exhibit K. Dr. Leavell again informed Complainant that the District remained willing to accommodate his private religious exercise, and urged Complainant to contact him to discuss options for doing so.

In November 2015, following completion of the football season, District Athletic Director Jeff Barton completed the 2015-2016 Coaching Evaluation Form for Complainant. Exhibit L. The evaluation recommended that Complainant not be rehired, and provided the following explanation:

> Mr. Kennedy failed to follow district policy and his actions demonstrated a lack of cooperation with administration. The subsequent situations contributed to negative relations between parents, students, community members, coaches, and the school district. Mr. Kennedy failed to supervise student-athletes after games due to his interactions with media and community. Prior to his public defiance of district directions, Mr. Kennedy had assisted in student supervision. However, most of the season he did not supervise student-athletes after games.

Under the bargaining agreement with Complainant's bargaining unit, the Bremerton Coaches and Activities Association, all coaching assignments "shall be for one year only." See Exhibit D at 3, Section 6.1; Exhibit M (notification of reasonable assurance memorandum from H.R.). By its terms, Complainant's contract expired upon completion of the 2015-2016 football season.

31

Hattie Y. Reed
April 6, 2016
Page 5

### Policies and Procedures

The District maintains a policy on "Religious-Related Activities and Practices" establishing guidelines regarding the preservation of student constitutional rights. Policy 2340, Exhibit F. The District also maintains a policy and procedure regarding non-discrimination. Policy and Procedure 5010, Exhibit N.

### Establishment Clause Concerns

The District's course of action in this matter has been driven solely by concern that Complainant's conduct might violate the constitutional rights of students and other community members, thereby subjecting the District to significant potential liability. In *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000), the U.S. Supreme Court held that a school district's practice of simply allowing its facilities to be used for religious expression during a district-sponsored football game violated the First Amendment's Establishment Clause because of the reasonable perception by students and attendees of district endorsement of religion. While attending games may be voluntary for most students, students required to be present by virtue of their participation in football or cheerleading will necessarily suffer a degree of coercion to participate in religious activity when their coaches lead or endorse it. *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (5th Cir. 1995).

Federal case law establishes that the District cannot allow an employee, while still on duty, to engage in religious conduct or display that a reasonable observer, aware of the context, would perceive as District endorsement of religion. This "endorsement" standard was identified by the Supreme Court in *Santa Fe*, and the federal courts have expanded upon it in the fifteen years since that decision. For example, in 2008, a federal appeals court held that a football coach who, like Complainant, was known to have previously led students in prayer must not be allowed even to kneel or bow his head while students prayed, as this would constitute District endorsement of religion in violation of the Constitution. *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153 (3d Cir. 2008). And in 2006, the Ninth Circuit Court of Appeals held that a public employer's interests in avoiding such Establishment Clause violations "outweigh the resulting limitations on [an employee's] free exercise of his religion at work." *Berry v. Dep't of Social Services*, 447 F.3d 642, 646 (9th Cir. 2006).

Given the similarity of facts to the *Borden* case, including Complainant's now well-publicized history of leading students in prayer, if the District allowed Complainant to engage in a public religious display in the midst of the performance of his duties, the result would be the same as in *Borden*: The District would have been subject to liability for violating the rights of its students. Therefore, Complainant's free exercise rights could be exercised only in a way that would not constitute a District endorsement of religion. The

Hattie Y. Reed
April 6, 2016
Page 6

accommodations offered by the District were reasonable and would have allowed such exercise by Complainant, while respecting the rights of others.[1]

**Additional Requested Information**

Your office requested information regarding other District employees who engaged in similar conduct during the period January 1, 2013 to present. Request for Information No. 6. The District is not aware of any other employee who engaged in similar conduct during the requested time period.

Complainant contends that Assistant Coach David Boynton "has engaged in a Buddhist chant near the 50-yard line at the conclusion of many BHS football games" without adverse employment consequences. The first the District heard of this practice was in the media coverage surrounding Complainant's filing of his complaint with EEOC. No District administrator has observed Mr. Boynton's alleged conduct. To the District's knowledge, Mr. Boynton's activities at football games have not been overtly religious. Mr. Boynton has not been disciplined for this activity.

**Conclusion**

The District denies it discriminated against Complainant on the basis of religion. During the course of their duties, District employees must not take actions a reasonable observer would perceive as a government endorsement of religion. Complainant's midfield prayers, which occurred immediately after the conclusion of official District athletic contests, under the stadium lights, and in full view of District parents, community members, and media, could very well be viewed as endorsement and subject the District to liability. The District also repeatedly offered to accommodate Complainant's religious exercise in a manner consistent with the Establishment Clause.

---

[1] It was suggested that the District could simply allow a moment of silence at football games to accommodate Complainant's desire to pray. The District considered this option; however, the U.S. Supreme Court has ruled that a moment of silence adopted for the purpose of facilitating prayer constitutes state endorsement of religion in violation of the Establishment Clause. *Wallace v. Jaffree*, 472 U.S. 38 (1985). The various federal appeals courts have subsequently issued varying, possibly contradictory, decisions on this topic. At best, the constitutionality of a District-endorsed moment of silence is debatable, particularly if the practice is adopted for the specific purpose of facilitating an employee's desire to engage in a public religious display while on duty.

33

Hattie Y. Reed
April 6, 2016
Page 7

      The District respectfully request that your agency dismiss the complaint. Please contact me if you require any further information.

      Sincerely,

      PORTER FOSTER RORICK LLP

      Jeffrey Ganson

JG:
cc:    Dr. Aaron Leavell
Enclosure - Exhibits

34