EXHIBIT 12


Bremerton
School
District

September 17, 2015

Dear Mr. Kennedy:

As you are aware, the Bremerton School District has been conducting an inquiry into whether District staff have appropriately complied with Board Policy 2340, "Religious-Related Activities and Practices," particularly with respect to the Bremerton High School football program. That policy is intended to implement the District's obligation to ensure that the fundamental constitutional rights of all members of the District community are honored. I wish to thank you for your candid cooperation and assistance in that process.

The District's inquiry has revealed two problematic practices within the football program. First, we learned that you have a practice, at most games, of providing an inspirational talk at midfield following the completion of the game. Students from both Bremerton High School and the opposing team (along with coaches from the opposing team and sometimes other attendees of the game) are invited to participate in this activity. During the activity, you hold up a helmet from each team and speak while the students and other participants kneel. Your talks have included overtly religious references, and you acknowledged that they likely constitute prayer. You explained that you began kneeling at midfield following games when you first started coaching at BHS, and that over time students asked to join, with the activity evolving organically.

Second, you acknowledged that prior to most games, in the locker room, you lead the students and coaching staff in a prayer. You explained that this activity predated your involvement with the program.

Each activity has been voluntary. While students and others have either been invited or allowed to join in, you have not actively encouraged, or required, participation. Nevertheless, as I believe you now understand, both activities would very likely be found to violate the First Amendment's Establishment Clause, exposing the District to significant risk of liability.

The District's inquiry revealed that there has been little, if any, training of coaching staff regarding Policy 2340 or the broad range of issues related to religious conduct of District staff in relation to students. Many assistant coaches, including yourself, are not professional educators and thus likely have not been exposed to extensive education and training regarding the admittedly complex constitutional law issues arising in public education. Thus, while I am concerned that you continued the midfield postgame prayer in games on September 11 and 14, 2015, following direction from your head coach as well as the BHS athletic director to cease these activities, I also understand how these practices developed and persisted over time, and know that they have been entirely well intentioned.

That said, I believe we agree that going forward, it is imperative that clear parameters be established and consistently followed in order to ensure that the rights of all BHS community members are respected and honored. Board Policy 2340 includes the following statement:

> As a matter of individual liberty, a student may of his/her own volition engage in private, non-disruptive prayer at any time not in conflict with learning activities. School staff shall neither encourage nor discourage a student from engaging in non-disruptive oral or silent prayer or any other form of devotional activity.

This policy is intended to implement the District's obligations under the First Amendment to the United States Constitution, which reads:

> Congress shall make no law respecting *an establishment of religion*, or *prohibiting the free exercise thereof*; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Many decades of federal court litigation, including decisions of the United States Supreme Court, have fleshed out the meaning of the First Amendment's Establishment Clause and Free Exercise Clause. In the public schools context, it is clear that schools and their employees may not directly prohibit students from participating in religious activities, nor may they require students to participate in religious activities. Further, it is equally clear that school staff may not indirectly encourage students to engage in religious activity (or discourage them from doing so), or even engage in action that is likely to be perceived as endorsing (or opposing) religion or religious activity. In short, schools and their employees, while performing their job duties, must remain neutral – allowing non-disruptive student religious activity, while neither endorsing nor discouraging it.

As pertains to athletics, the federal courts have held that:

- Schools may not allow prayers to be read – even by students – over the public address system at even optional extracurricular events, such as football games – *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000)
- Schools may not allow coaches to initiate, lead or supervise student prayer – *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (5th Cir. 1995)
- Schools may not even allow coaches to participate in or appear to endorse religious activity that is entirely student-initiated – *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153 (3rd Cir. 2008)

I recognize that you and all District employees possess fundamental free exercise and free expression rights under the First Amendment. However, the courts have held that where there is direct tension between the district's need to avoid an Establishment Clause violation and a school employee's free exercise or expression rights, the latter must yield so far as necessary to avoid school endorsement of religious activities. *Borden*, above; Berger *v. Rensselaer Central School Corp.*, 982 F.2d 1160 (7th Cir. 1993). The District is clearly bound by these federal precedents. Should the District disregard them, allowing conduct that violates the Establishment Clause, the

District will be subjected to significant potential liability, endangering precious funds needed to educate the District's students and sustain its important programs.

Therefore, the following clear standards apply and must be adhered to going forward:

- You may continue to provide motivational, inspirational talks to students before, during and after games and other team activity, focusing on appropriate themes such as unity, teamwork, responsibility, safety, endeavor and the like that have long characterized your very positive and beneficial talks with students.
- Your talks with students may not include religious expression, including prayer. They must remain entirely secular in nature, so as to avoid alienation of any team member.
- Students are free to initiate and engage in religious activity, including prayer, so long as it does not interfere with school or team activities. Student religious activity must be entirely and genuinely student-initiated, and may not be suggested, encouraged (or discouraged), or supervised by any District staff.
- If students engage in religious activity, school staff may not take any action likely to be perceived by a reasonable observer, who is aware of the history and context of such activity at BHS, as endorsement of that activity. Examples identified in the *Borden* case include kneeling or bowing of the head during the students' religious activity.
- You and all District staff are free to engage in religious activity, including prayer, so long as it does not interfere with job responsibilities. Such activity must be physically separate from any student activity, and students may not be allowed to join such activity. In order to avoid the perception of endorsement discussed above, such activity should either be non-demonstrative (*i.e.*, not outwardly discernible as religious activity) if students are also engaged in religious conduct, or it should occur while students are not engaging in such conduct.

I understand that the foregoing parameters may not address every potential scenario. They are intended to ensure that existing problematic practices do not continue. I encourage you to raise any questions you may have about these parameters, or scenarios not clearly addressed by them, with your supervisors, and also invite you to address such questions directly to me. I am sincerely committed to honoring your rights and continuing your outstanding contributions to the BHS football program, while also ensuring that the District is not exposed to liability because we have inadvertently violated the rights of students or other community members. I am confident that we share these important goals, and can work together to achieve them going forward.

Sincerely,

Aaron Leavell, Superintendent
Bremerton School District