# EXHIBIT 13



**LIBERTY**
I N S T I T U T E
*Restoring Religious Liberty In America.*

October 14, 2015

*Via Certified Mail RRR and E-mail*

Bremerton School District
134 Marion Avenue N
Bremerton, WA 98312

Aaron Leavell, Superintendent
Scott Rahm, Board Member
J. David Rubie, Board Member
Jonee Dubos, Board Member
Alyson Rotter, Board Member
Carolynn Perkins, Board Member

**Subj: Request for Coach Joseph A. Kennedy to Continue Post-Game Prayer**

Dear Superintendent Leavell and Board Members:

    Bremerton High School (BHS) football coach Joseph "Joe" Kennedy retained Liberty Institute and volunteer counsel Anthony J. Ferate (BHS '94) to represent him in this matter. Please direct all correspondence related to this matter to Liberty Institute at the contact information provided below.

    Coach Kennedy has been a football coach at BHS since August 2008. Currently, Coach Kennedy serves as the varsity assistant coach, and as the junior varsity head coach. Since August 2008, Coach Kennedy has engaged in a private religious activity whereby at the conclusion of each football game, he walks to the 50-yard line and prays. By letter dated September 17, 2015, you directed Coach Kennedy to cease this private religious expression. This letter constitutes Coach Kennedy's request for a religious accommodation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, allowing him to continue his post-game personal prayer, and that you rescind the directive in your September 17 letter that he cease his post-game personal prayer. The First Amendment to the United States Constitution and federal statutory law protect Coach Kennedy's right to private religious expression following BHS football games. Indeed, Bremerton School District's attempts to ban or prohibit Coach Kennedy's private religious expression violate both the First Amendment to the U.S. Constitution and Title VII of the Civil Rights Act of 1964.

    In order to understand why Coach Kennedy's private religious expression is constitutionally protected, it is important to understand the factual context surrounding Coach Kennedy's practice. Coach Kennedy is motivated by his sincerely-held religious beliefs to pray following each football game. Coach Kennedy's inspiration for doing so came about after he watched the film "Facing the Giants." After watching the film,

October 14, 2015
Page 2

Coach Kennedy felt compelled by his religious faith, and his sincerely-held religious beliefs, to begin thanking God for the young men he is privileged to coach.

**Factual Background**

Since August 2008, Coach Kennedy's practice has remained largely unchanged. Coach Kennedy's first post-game prayer occurred on his very first game as a coach. After the game ended and his official coaching duties ceased, Coach Kennedy walked, alone, to the 50-yard line where he audibly spoke a short prayer of thanksgiving for player safety, fair play, and spirited competition. Coach Kennedy did not announce what he was doing, nor did he invite anyone to join him. He quietly, but audibly, prayed alone, away from the coaches, players, and fans. This practice continued for several games until several students approached Coach Kennedy and asked if they were permitted to be there when he prayed, to which he responded, "it's a free country, you can do whatever you want to do." Thereafter, after subsequent games, students continued to voluntarily go where Coach Kennedy prayed. Members of the opposing team also sometimes went to where Coach Kennedy prayed.

Although Coach Kennedy's prayers are verbal, he does not pray in the name of a specific religion or deity, and he does not say "amen." Each post-game prayer lasts approximately fifteen to twenty seconds, during which Coach Kennedy is unaware of who may or may not be in the vicinity. Coach Kennedy's sole intent, as motivated by his sincerely-held religious beliefs, is to say a brief prayer of thanksgiving and then move on. Coach Kennedy has never received a complaint about his post-game personal prayers.

To summarize, Coach Kennedy engages in private religious expression during non-instructional hours, after his official duties as a coach have ceased. He neither requests, encourages, nor discourages students from participating in, or coming to where he prays. His prayers neither proselytize nor denigrate the beliefs of others. And he has never received a complaint about his post-game personal prayers. Under these circumstances, there is no constitutional prohibition against Coach Kennedy's private religious expression, regardless of whether students voluntarily come to the location where he is praying.

**Coach Kennedy's Private Religious Expression is Constitutionally Protected**

Bremerton School District Board Policy 2340, "Religious Activities and Practices," is largely silent on the First Amendment rights of District employees. But the United States Supreme Court rejected the notion that public school employees relinquish First Amendment rights by virtue of their government employment. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

October 14, 2015
Page 3

The Supreme Court has repeatedly held that the First Amendment requires public school officials to be neutral in their treatment of religion, showing neither favoritism toward nor hostility against religious adherents. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 18 (1947). Accordingly, the First Amendment forbids religious activity that is sponsored by the government but protects religious activity that is initiated by individuals acting privately, as is the case with Coach Kennedy. As the Court explained in several cases, "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. v. Mergens*, 496 U.S. 226, 250 (1990) (plurality op.).

The First Amendment to the United States Constitution prohibits the government from "abridging the freedom of speech" of private individuals. U.S. Const., amend. I. This prohibition applies to state and local governments through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940); *Lovell v. Griffin*, 303 U.S. 444, 450 (1938). The government also may not suppress or exclude the speech of private individuals for the sole reason that their speech is religious. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995); *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Widmar v. Vincent*, 454 U.S. 263 (1981). As the Supreme Court explained:

> [P]rivate religious speech, far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression. . . . Indeed, in Anglo-American history, at least, government suppression of speech has so commonly been directed precisely at religious speech that a free-speech clause without religion would be Hamlet without the prince.

*Pinette*, 515 U.S. at 760. Furthermore, the Court held that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel v. Ctr. Moriches Sch. Dist.*, 508 U.S. 384 (1993).

Your September 17 letter states that these bans on religious expression are necessary to avoid an Establishment Clause violation, an argument the Supreme Court expressly questioned. *See Good News Club*, 533 U.S. at 113 (questioning "whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination"). As support for this dubious legal argument, you cite to *Borden v. Sch. Dist. of the Twnshp. of East Brunswick*, 523 F.3d 153 (3rd Cir. 2008). But that same opinion you cite states "not every religious display of a school official will have the necessary 'history and context' to be an Establishment Clause violation." *Id.* at 166. Indeed, "speech by a public employee, *even a teacher*, does not always represent, or even appear to represent, the views of the state." *Tucker v. Calif. Dep't of Educ.*, 97 F.3d 1204, 1213 (9th Cir. 1996) (emphasis added). Here, Coach Kennedy's private religious expression cannot be said to invoke the imprimatur of the government.

October 14, 2015
Page 4

The case of *Wigg v. Sioux Falls Sch. Dist.*, 382 F.3d 807 (8th Cir. 2004), is instructive. In *Wigg*, the court affirmed the right of a public elementary school teacher to participate in an explicitly Christian, proselytizing, after-school program in the same school in which she taught. The facts of *Wigg*, when compared to the present matter, demonstrate the wrongness of Bremerton School District's directives to Coach Kennedy:

| *Wigg* | **Coach Kennedy** |
|---|---|
| Public school employee | Public school employee |
| Elementary school ($2^{nd} - 3^{rd}$ grade) | Secondary school ($9^{th} - 12^{th}$ grade) |
| Proselytizing after school | Private, personal prayer after football games |
| In classroom | In football stadium |

The *Wigg* court concluded that the school district's "effort to avoid an establishment of religion . . . unnecessarily limits the ability of its employees to engage in private religious speech on their own time." *Id.* at 814. The court found the school's policy "preventing [school] employees from participating in religious-based activities [was] viewpoint discriminatory and, thus, per se unconstitutional." *Id.* The court held the teacher's after school proselytizing was constitutionally protected as private speech that did not put the school district at risk of violating the Establishment Clause. *Id.* at 815.

There can be no legitimate concern that the District is somehow establishing religion because it merely permits one of its coaches, on his own time, to say a short personal prayer after a football game. "The proposition that schools do not endorse everything they fail to censor is not complicated." *Mergens*, 496 U.S. at 250 (plurality op.). As the U.S. Court of Appeals for the Ninth Circuit explained, "the desirable approach is not for schools to throw up their hands because of the possible misconceptions about endorsement of religion," finding instead that it is

> [f]ar better to teach [students] about the [F]irst [A]mendment, about the difference between private and public action, about why we tolerate divergent views . . . . The school's proper response is to educate the audience rather than squelch the speaker. Schools may explain that they do not endorse speech by permitting it. If pupils do not comprehend so simple a lesson, then one wonders whether the [] schools can teach anything at all. Free speech, free exercise, and the ban on establishment are quite compatible when the government remains neutral and educates the public about the reasons.

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044, 1055 (9th Cir. 2003) (quoting *Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*, 9 F.3d 1295, 1299-1300 (7th Cir. 1993)).

October 14, 2015
Page 5

No reasonable observer could conclude that a football coach who waits until the game is over and the players have left the field and then walks to mid-field to say a short, private, personal prayer is speaking on behalf of the state. Quite the opposite, Coach Kennedy is engaged in private religious expression upon which the state may not infringe. In fact, any attempt by Bremerton School District to ban or prohibit Coach Kennedy—or any private citizen—from praying violates the First Amendment. In *Tucker*, the U.S. Court of Appeals for the Ninth Circuit held that the California Department of Education's ban on religious advocacy and displays in the workplace—even when the stated reason was to avoid the appearance of supporting religion—was unconstitutional. The District's ban on Coach Kennedy's private religious expression is likewise unconstitutional.

Under Title VII of the Civil Rights Act of 1964, Bremerton School District may not discriminate against Coach Kennedy on the basis of his religious exercise, and it must accommodate his sincerely-held religious beliefs. Title VII provides that "it shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a). Additionally, Title VII requires Bremerton School District to accommodate its employees' religious practices. 42 U.S.C. § 2000e(j); 29 CFR § 1605.2. Therefore, you must permit Coach Kennedy to continue his post-game prayers.

**Students May Voluntarily Come to Where Coach Kennedy Prays**

In your September 17 letter, you acknowledged that Coach Kennedy does not encourage or require participation in his practice of private, post-game prayer. You also acknowledge that Bremerton School District Board Policy 2340 permits BHS students to voluntarily engage in prayer. But your directive to Coach Kennedy is inconsistent with Board Policy 2340: "You and all District staff are free to engage in religious activity, including prayer . . . [but] students may not be allowed to join such activity." You also prohibit Coach Kennedy from joining student-initiated prayers. Incredibly, you take the extra step of banning Coach Kennedy from bowing his head or even being physically present where students may be praying. This too is unconstitutional.

This is tantamount to a declaration that Coach Kennedy, while praying as you concede he is allowed to do, must flee the scene if students voluntarily come to the same area and pray as well. There is no requirement in the law that Coach Kennedy flee from students if they voluntarily choose to come to a place where he is privately praying during personal time. According to the U.S. Department of Education's "Guidance on Constitutionally Protected Prayer in Public Elementary and Secondary Schools" ("Guidance"), teachers may "take part in religious activities where the overall context makes clear that they are not participating in their official capacities." The Guidance also

October 14, 2015
Page 6

provides a solution for schools seeking to avoid the appearance of school sponsorship or endorsement of student speech: school officials "may make appropriate, neutral disclaimers to clarify that such speech (whether religious or non-religious) is the speaker's and not the school's." Guidance on Constitutionally Protected Prayer in Public Elementary and Secondary Schools, U.S. Dept. of Educ., Feb. 7, 2003, http://www2.ed.gov/policy/gen/guid/religionandschools/prayer_guidance.html (last visited October 12, 2015). This simple, constitutionally sound solution also applies to school employee speech, and is far less restrictive than Bremerton School District's outright ban on Coach Kennedy's private religious expression, and its requirement that he flee should students voluntarily appear where he happens to be praying. Coach Kennedy, or another school official, can simply clarify that the prayer is the speaker's private speech, and not that of the School District.

**Conclusion**

For the reasons provided herein, there is no lawful prohibition against Coach Kennedy's practice of saying a private, post-game prayer. The prayers are Coach Kennedy's private religious speech, and no reasonable observer could conclude that BHS sponsors, endorses, or encourages student participation. To the extent that students voluntarily choose to join Coach Kennedy, the District must not discriminate against, prohibit or interfere with student-initiated religious activities. A simple disclaimer that Coach Kennedy's prayers are his private speech will suffice to avoid any constitutional concerns.

Beginning on October 16, 2015, Coach Kennedy will continue his practice of saying a private, post-game prayer at the 50-yard line. We respectfully request that, by no later than 5:00pm on October 16, 2015, you rescind the directive in your letter of September 17, 2015, that he cease doing so, and that you permit Coach Kennedy to continue his practice of saying a private, post-game prayer at the 50-yard line.

Sincerely,

Hiram Sasser
Deputy Chief Counsel