# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

JOSEPH A. KENNEDY,

    *Plaintiff*,

v.

BREMERTON SCHOOL DISTRICT,

    *Defendant*.

CASE NO. 3:16-CV-05694-RBL

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

ORAL ARGUMENT REQUESTED

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

**TABLE OF CONTENTS**

Page

Introduction ........................................................................................................................................ 1

Argument ........................................................................................................................................... 2

I. Coach Kennedy Seeks to Preserve the Last Peaceable State of Affairs Between the Parties ................................................................................................................................. 2

II. BSD Acted Under Color of Law When It Discriminated Against Coach Kennedy ............... 3

III. Coach Kennedy Is Entitled to a Preliminary Injunction ........................................................ 5

    A. Coach Kennedy Is Likely to Succeed on the Merits of His First Amendment Claims ........................................................................................................................ 5

        1. Coach Kennedy Spoke as a Private Citizen, Not a Public Employee .............. 6

        2. Coach Kennedy's Religious Expression Was a Substantial Factor in the Adverse Employment Actions ...................................................................... 8

        3. BSD Has No Adequate Justification for Its Discriminatory Actions ............... 9

            i. BSD Must Show an Actual Violation of the Establishment Clause to Justify Its Discrimination Against Coach Kennedy ............. 9

            ii. Coach Kennedy's Brief, Private Religious Expression Does Not Violate the Establishment Clause ............................................... 10

        4. BSD Would Not Have Taken the Adverse Employment Actions Absent Coach Kennedy's Religious Expression ........................................... 11

    B. Coach Kennedy Will Suffer Irreparable Harm Without a Preliminary Injunction .................................................................................................................. 12

    C. The Balance of Equities Tips Heavily in Coach Kennedy's Favor .......................... 12

    D. A Preliminary Injunction Is in the Public Interest ..................................................... 12

Conclusion ....................................................................................................................................... 12

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page i

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)..........................................................................................................3

*Ariz. Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014).......................................................................................2, 3

*Borden v. Sch. Dist. Twp. of E. Brunswick*,
  523 F.3d 153 (3d Cir. 2008)............................................................................................10

*Connick v. Myers*,
  461 U.S. 138 (1983)..........................................................................................................4

*Coomes v. Edmonds Sch. Dist. No. 15*,
  816 F.3d 1255 (9th Cir. 2016)..........................................................................................6

*Coszalter v. City of Salem*,
  320 F.3d 968 (9th Cir. 2003)............................................................................................5

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013)...................................................................................5, 6, 7

*Doe v. Duncanville Indep. Sch. Dist.*,
  70 F.3d 402 (5th Cir. 1995).........................................................................................8, 10

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014)..........................................................................................12

*Eng v. Cooley*,
  552 F.3d 1062 (9th Cir. 2009)................................................................................. *passim*

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006).......................................................................................................6, 7

*Good News Club v. Milford Cent. Sch.*,
  533 U.S. 98 (2001)............................................................................................................9

*Grossman v. S. Shore Pub. Sch. Dist.*,
  507 F.3d 1097 (7th Cir. 2007)..........................................................................................8

*Gutowsky v. Cty. of Placer*,
  108 F.3d 256 (9th Cir. 1997)............................................................................................5

*Hills v. Scottsdale Unified Sch. Dist. No. 48*,
  329 F.3d 1044 (9th Cir. 2003)..........................................................................................9

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page ii

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

*Johnson v. Poway Unified Sch. Dist.*,
   658 F.3d 954 (9th Cir. 2011)..........................................................................................7

*Karl v. City of Mountlake Terrace*,
   678 F.3d 1062 (9th Cir. 2012)........................................................................................9

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009)......................................................................................12

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
   508 U.S. 384 (1993).........................................................................................9, 10, 11

*Lane v. Franks*,
   134 S. Ct. 2369 (2014)................................................................................................6, 7

*Lee v. Weisman*,
   505 U.S. 577 (1992)......................................................................................................11

*Lytle v. Carl*,
   382 F.3d 978 (9th Cir. 2004)......................................................................................3, 4

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009)..........................................................................................2

*McGreevy v. Stroup*,
   413 F.3d 359 (3d Cir. 2005)...........................................................................................4

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978).......................................................................................................3

*N.D. ex rel. Parents Acting as Guardians Ad Litem v. Haw. Dep't of Educ.*,
   600 F.3d 1104 (9th Cir. 2010).......................................................................................3

*Patsy v. Bd. of Regents*,
   457 U.S. 496 (1982).......................................................................................................5

*Peloza v. Capistrano Unified Sch. Dist.*,
   37 F.3d 517 (9th Cir. 1994)............................................................................................8

*Rutan v. Republican Party of Ill.*,
   497 U.S. 62 (1990).........................................................................................................5

*Santa Fe Indep. Sch. Dist. v. Doe*,
   530 U.S. 290 (2000)...............................................................................................10, 11

*Stanley v. Univ. of S. Cal.*,
   13 F.3d 1313 (9th Cir. 1994)..........................................................................................2

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969)................................................................................................1, 11

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page iii

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

*Widmar v. Vincent*,
   454 U.S. 263 (1981)..................................................................................................9

**Statutes**

28 U.S.C. § 1331 ..........................................................................................................3

42 U.S.C. § 1983 ...................................................................................................1, 3, 5

Wash. Rev. Code § 28A.400.010................................................................................4

**Treatises**

11A Charles Alan Wright et al., *Federal Practice & Procedure* (3d ed. 2016) .....................2

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................................... *passim*

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page iv

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

## INTRODUCTION

This case is about Coach Kennedy's right to kneel at midfield at the conclusion of BHS football games and say a silent prayer lasting 15–30 seconds. BSD does not—because it cannot—offer any justification for prohibiting that religious expression.

Indeed, the District never so much as mentions the language of its own rule—or, for that matter, much of its own correspondence—which prohibits any and all "demonstrative religious activity" by on-duty school employees. Letter to Coach Kennedy, Oct. 23, 2015, App. 19. That omission speaks for itself: BSD's rule is baldly unconstitutional. On its face, that rule would prohibit on-duty school employees from praying over lunch in the cafeteria, making the sign of the cross, wearing a yarmulke or headscarf, or engaging in *any other visible religious conduct*.

Thus, BSD's rule forces public school employees to "shed their constitutional rights to freedom of speech [and] expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). That is precisely what the First Amendment forbids.

In a transparent attempt to avoid the merits, the District now claims that Coach Kennedy is without a remedy because BSD took no adverse action against him. That is wildly incorrect. The District—by its own admission—acted on the basis of official policy, as established by Board Policy 2340 and BSD's official correspondence.

Moreover, BSD has expressly stated that Coach Kennedy "*will not participate, in any capacity*, in BHS football program activities" until he abandons his religious expression and "affirms his intention to comply with the District's directives." Letter to Community, Oct. 28, 2015, App. 21 (emphasis added). The District cannot escape § 1983 liability while at the same time adhering to its unconstitutional policy.

Because Coach Kennedy's private religious expression is clearly protected by the First Amendment, and because he satisfies the balance of the relevant standard, this Court should issue a preliminary injunction in his favor.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 1

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

**ARGUMENT**

**I.  Coach Kennedy Seeks to Preserve the Last Peaceable State of Affairs Between the Parties**

BSD claims that Coach Kennedy's requested injunction is mandatory, requiring a heightened burden of proof. That is incorrect—Coach Kennedy seeks a prohibitory injunction.

A prohibitory injunction "prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009) (internal citation omitted). "The relevant status quo" is, of course, "the legally relevant relationship between the parties *before the controversy arose*." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (emphasis added). Courts thus look to the "last peaceable uncontested status existing between the parties before the dispute developed." 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2948 (3d ed. 2016) (collecting cases).

Coach Kennedy seeks to preserve that "last peaceable uncontested status" between the parties—one that persisted for nearly eight years before BSD began discriminating against him on the basis of his private religious expression. BSD claims that such an injunction would constitute mandatory relief, citing *Stanley v. University of Southern California*, 13 F.3d 1313 (9th Cir. 1994). But the plaintiff in *Stanley* turned down a multi-year extension of her coaching contract—and then sought an injunction to compel the university "to pay her $28,000 a year *more* than she received when her employment contract expired." *Id.* at 1320 (emphasis added). Because the requested injunction "would have forced USC to hire a person at a substantially higher rate of pay than she had received prior to the expiration of her employment contract," there could be no argument that Stanley sought to "maintain[] the status quo." *Id.*

That is not this case. Coach Kennedy simply seeks to return to the status quo that existed before BSD banned "demonstrative" religious conduct by on-duty employees, and then took adverse action against him on that basis. Thus, "like other injunctions that prohibit enforcement of a new law or policy, [Coach Kennedy's] requested injunction is prohibitory." *Ariz. Dream Act Coal.*, 757 F.3d at

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 2

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1061. That restoring the status quo will require reinstating him does not mean the relief he seeks is mandatory. *See, e.g.*, *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (preliminary injunction not mandatory even where it required altering contractual arrangement).

The relief Coach Kennedy seeks will preserve the last peaceable state of affairs before BSD took adverse employment action against him. It is not a mandatory injunction.

## II. BSD Acted Under Color of Law When It Discriminated Against Coach Kennedy

BSD's lead argument is that it did not act under color of law for purposes of § 1983 when it took adverse employment action against Coach Kennedy.[1] BSD Br. 7–9 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). That is wrong on multiple levels.

1. "A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). *Monell* is amply satisfied here—BSD acted pursuant to an official policy and through a final policymaker.

BSD took adverse action against Coach Kennedy on the putative basis of official policy—District Policy 2340—and official letters purporting to interpret that policy. *See, e.g.*, Letter to Community, Sept. 17, 2015, App. 7 (citing Board Policy 2340 and explaining that "[i]t is up to the District to establish clear parameters that will ensure compliance"); Letter to Coach Kennedy, Oct. 23, 2015, App. 20 ("I provided you with guidance and a set of standards for compliance with . . . Board Policy 2340"). BSD then suspended Coach Kennedy for "violating [its] directives" by engaging in "demonstrative religious conduct." Letter to Coach Kennedy, Oct. 28, 2015, App. 20. In light of the

---

[1] BSD's contention that "[t]his Court's jurisdiction . . . depends upon the viability and scope of the § 1983 claim," BSD Br. 7, is incorrect. Regardless of the "viability and scope" of the claim, this Court has subject-matter jurisdiction because 42 U.S.C. § 1983, under which this case arises, "surely is a 'la[w] of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 505 (2006) (quoting 28 U.S.C. § 1331) (alteration in original).

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 3

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

District's repeated references to its own policies and directives—on official BSD letterhead, signed by BSD Superintendent Aaron Leavell—there is no question that BSD took action against Coach Kennedy on the basis of official policy, as established by Board Policy 2340 and BSD's official correspondence.

Even if official policy were not at issue, the District's adverse actions against Coach Kennedy were initiated by Superintendent Leavell, who is a final policymaker for purposes of § 1983.[2] *See, e.g.*, *Lytle*, 382 F.3d at 982 (superintendent and assistant superintendent were final policymakers); *see also McGreevy v. Stroup*, 413 F.3d 359, 369 (3d Cir. 2005) (superintendent and principal were final policymakers). Indeed, BSD's own brief acknowledges that Leavell's letters to Coach Kennedy are "the District's letters" and represent "the District's motivation." BSD Br. 17.

BSD claims that its adverse actions have caused Coach Kennedy no harm because "no District policy prevented [him] from coaching in 2016." BSD Br. 8. That misses the point entirely.[3] Coach Kennedy can return to the BHS coaching staff only if he foregoes his First Amendment right to private religious expression. BSD has made clear that "unless and until [Coach Kennedy] affirms his intention to comply with the District's directives, *he will not participate, in any capacity, in BHS football program activities*." Letter to Community, Oct. 28, 2015, App. 21 (emphasis added). Offering Coach Kennedy the "opportunity" to coach only if he abandons his First Amendment rights violates the well-established rule that "a state cannot condition public employment on a basis that infringes the employee's . . . freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983).[4]

---

[2] Under Washington law, "[t]he superintendent shall have supervision over the several departments of the schools thereof." Wash. Rev. Code § 28A.400.010. The Bremerton School Board has granted the Superintendent "executive responsibility" to manage the District in accordance with state and federal law. *See* Bremerton Policies & Procedures Section 1620, http://www.bremertonschools.org/domain/121 (last visited Sept. 15, 2016).

[3] That Coach Kennedy's one-year contract expired is irrelevant. BSD's contrary suggestion would effectively immunize the District from liability for *any* constitutional violation against *any* employee on a one-year contract—effectively stripping public employees everywhere of their constitutional rights.

[4] That Coach Kennedy did not formally re-apply for a coaching position in 2016 is of no moment. BSD had already made clear that it would not permit Coach Kennedy to participate in the BHS football program "in any capacity" unless he agreed to abide by BSD's unconstitutional directives. Knowing that he would be a "victim of unlawful discrimination" if he applied without agreeing to forfeit his constitutional rights, any further action by Coach Kennedy "would have been futile"—and a § 1983 plaintiff need not engage in such a futile act. *Gutowsky v. Cty. of Placer*, 108 F.3d 256, 260 (9th Cir. 1997) (internal citations omitted).

REPLY IN SUPPORT OF PLAINTIFF'S  
MOTION FOR PRELIMINARY INJUNCTION  
Page 4

OLDFIELD & HELSDON, PLLC  
1401 Regents Blvd., Suite 102  
Fircrest, WA 98466  
Tel: (253) 564-9500 • Fax: (253) 414-3500

2. BSD also contends that Coach Kennedy's administrative suspension and negative performance evaluation were not adverse employment actions at all. That argument fares no better.

The Supreme Court has made clear that "even minor acts of retaliation can infringe on an employee's First Amendment rights." *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75–76 (1990)). Moreover, "placement on administrative leave can constitute an adverse employment action" where the effects of that action "appear 'reasonably likely to deter' employees from engaging in protected activity." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (en banc). BSD's actions here—prohibiting "demonstrative" religious expression by on-duty employees, on pain of suspension and termination— clearly "'chill[s] the exercise of protected' First Amendment rights" of all BSD employees. *Id.* at 1078. BSD's administrative suspension of Coach Kennedy thus constitutes an adverse employment action.[5]

BSD's decision to give Coach Kennedy a negative performance evaluation also constitutes an adverse employment action. BSD complains that Coach Kennedy did not appeal from the evaluation— but there is no requirement to exhaust state remedies before bringing a § 1983 claim. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982) ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.").

### III. Coach Kennedy Is Entitled to a Preliminary Injunction

#### A. Coach Kennedy Is Likely to Succeed on the Merits of His First Amendment Claims

BSD concedes—as it must—that Coach Kennedy's religious expression is on a matter of public concern. His speech amply satisfies the remaining prongs of the *Eng* analysis as well.

---

[5] BSD claims that Coach Kennedy has not alleged an adverse action under *Dahlia* because he "does not allege any . . . collateral effects from his administrative leave." BSD Br. 9. But *Dahlia* never conditioned its holding on the presence of any "collateral effects"—instead, it incorporated those effects in its analysis of whether the employer's action was "reasonably likely to deter employees from engaging in protected activity." 735 F.3d at 1078–79. In any event, Coach Kennedy has indeed suffered collateral effects analogous to those at issue in *Dahlia*, since the bar on his participation in the BHS football program obviously prevented him from furthering his coaching career and continuing his coaching relationship with BHS players. Letter to Community, Oct. 28, 2015, App. 21.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 5

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

### 1. Coach Kennedy Spoke as a Private Citizen, Not a Public Employee

BSD begins with the blanket assertion that "speech by school district employees, while on duty" is—by definition—speech as a public employee. BSD Br. 11. Not so.

In *Lane v. Franks*, 134 S. Ct. 2369 (2014)—a case BSD fails even to mention, much less analyze—the Supreme Court unanimously admonished the lower courts for reading *Garcetti v. Ceballos*, 547 U.S. 410 (2006) "far too broadly," exactly as BSD does here. 134 S. Ct. at 2379. According to *Lane*, the "critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Id.* Speech "outside the scope of [an employee's] ordinary job responsibilities is speech as a citizen for First Amendment purposes." *Id.* at 2378. The Ninth Circuit has expressly adopted *Lane*'s "critical question" test in analyzing public employee speech. *See, e.g.*, *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1260 (9th Cir. 2016) (quoting *Lane*, 134 S. Ct. at 2379).

BSD does not dispute that Coach Kennedy's brief, quiet prayer is "outside the scope of his ordinary job responsibilities." *Lane*, 134 S. Ct. at 2378. Instead, it invents a "temporal scope" test that would remove First Amendment protection from *any* religious expression made while a public employee is on duty. BSD Br. 16 ("There is no term of his contract . . . that gives [Coach Kennedy] the authority to step outside of his duties at the time and place of his choosing.").

BSD's test is inconsistent with *Garcetti*, and flatly violates *Lane*. Indeed, because public employees "may receive First Amendment protection *for expressions made at work*," the Ninth Circuit has expressly cautioned courts *not* to determine whether an employee spoke pursuant to his official duties based merely on whether he "expressed his views inside his office, rather than publicly." *Dahlia*, 735 F.3d at 1069 (emphasis added) (quoting *Garcetti*, 547 U.S. at 421). Rather than applying a bright-line temporal test to determine the scope of an employee's duties, courts must engage in a "practical, fact-specific inquiry" into an employee's actual job responsibilities. *Id.* at 1071, 1074.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 6

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Although BSD attempts to sidestep *Lane*, *Dahlia*, and their progeny, it cannot alter the fact that nothing about Coach Kennedy's "ordinary job responsibilities" requires him to pause at midfield to pray at the conclusion of football games. The duties BSD discusses—supervising players, caring for injuries, securing equipment, and "maintaining order"—are obviously unrelated to Coach Kennedy's religious expression. BSD Br. 14. Further, "the fact that [Coach Kennedy] [was] threatened or harassed by his superiors for engaging in a particular type of speech provides strong evidence that the act of speech was not, as a 'practical' matter, within [his] job duties." *Dahlia*, 735 F.3d at 1075 (internal citation omitted). That should be the end of the inquiry.

The authority that BSD relies on is either badly overstated or at odds with *Lane*. In *Johnson v. Poway Unified School District*, 658 F.3d 954 (9th Cir. 2011), the Ninth Circuit held that a teacher spoke as an employee, not as a citizen, when he displayed banners with religious messages in the classroom.[6] Specifically, the Court held that the "scope and content of [Johnson's] job responsibilities" included "speaking to his class in his classroom during class hours." *Id.* at 967. And the banners at issue were displayed under a "long-standing . . . District policy, practice, and custom, of permitting teachers to decorate their classrooms subject to specific limitations." *Id*. In concluding the teacher spoke "as an employee," the Court emphasized that "Johnson took advantage of his position to press his particular views upon the impressionable and 'captive' minds before him." *Id.* at 968.

Those facts bear no resemblance to this case. Coach Kennedy's "fleeting" religious expression occurs after the game, when "[p]arents, fans, and members of the community frequently walk[] onto the field to congratulate players and socialize." Kennedy Decl. ¶ 25. There is no "captive" audience. And BSD has conceded that Coach Kennedy never took advantage of his position to "coerce," "require," or "actively encourage" students to participate in any religious activity. BSD

---

[6] To the extent BSD's overbroad reading of *Poway* turns on the "owes its existence" inquiry, *see* BSD Br. 11–12, it bears noting that the lower court in *Lane* relied on that same dicta from *Garcetti*—and the Supreme Court unanimously reversed, chiding the court below for reading *Garcetti* "far too broadly." 134 S. Ct. at 2376, 2379.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 7

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

Statement and Q&A, Oct. 28, 2015, App. 21; Letter to Coach Kennedy, Sept. 17, 2015, App. 4.

The balance of BSD's cited cases primarily involve the Establishment Clause issue—addressed in prong 4 of the *Eng* test—rather than the speech "as a citizen" inquiry. Each of those cases involves school officials who sought to engage in religious expression with students.[7] Here, by contrast, Coach Kennedy fully "complied with [BSD's] directives not to intentionally involve students" in his religious expression. App. 21–22. And the relief he requests is to "pray quietly and alone" at the conclusion of BHS football games. Kennedy Br. 1.[8]

### 2. Coach Kennedy's Religious Expression Was a Substantial Factor in the Adverse Employment Actions

Coach Kennedy's protected religious expression was—by BSD's own admission—a "substantial or motivating factor" in the adverse employment actions. Kennedy Br. 12–14. But BSD doubles down on its brazen claim that it took no adverse employment actions at all. BSD Br. 16–17. As shown, that is incorrect. *See*, *supra*, § II.

BSD next asserts that Coach Kennedy misunderstands the "crux" of the test because "[t]here is no evidence the District cared about the speech itself." BSD Br. 17. But, of course, as BSD has repeatedly explained, it was the *religious nature* of Coach Kennedy's speech that the District found objectionable. Letter to Coach Kennedy, Oct. 28, 2015, App. 20 (Coach Kennedy allegedly "violated [BSD] directives by engaging in overt, public and demonstrative religious conduct while still on duty as an assistant coach."). Indeed, the District has admitted that Coach Kennedy's religious expression

---

[7] *See Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 522 (9th Cir. 1994) (affirming "school district's restriction on Peloza's ability to talk with students about religion during the school day"); *see also Grossman v. S. Shore Pub. Sch. Dist.*, 507 F.3d 1097, 1100 (7th Cir. 2007) ("school administrators could forbid [guidance counselor] to pray with students or to urge abstinence on them in lieu of contraception"); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1995) ("district court did not err in enjoining [school] employees and agents from participating in student-initiated prayers").

[8] BSD complains about "publicity," going so far as to accuse Coach Kennedy of "lack[ing] candor" because he seeks to engage in a "prominent" prayer. BSD Br. 3, 16. Nothing is further from the truth. Coach Kennedy's "fleeting" religious expression was so unobtrusive that BSD—by its own admission—was wholly unaware of his religious practice for the *first eight years* of his tenure. *Id.* at 2. The only "publicity" present here is the direct result of the District's heavy-handed attempt to stamp out Coach Kennedy's religious expression.

REPLY IN SUPPORT OF PLAINTIFF'S  
MOTION FOR PRELIMINARY INJUNCTION  
Page 8

OLDFIELD & HELSDON, PLLC  
1401 Regents Blvd., Suite 102  
Fircrest, WA 98466  
Tel: (253) 564-9500 • Fax: (253) 414-3500

is what allegedly "necessitated" the adverse employment action it took against him. BSD Statement and Q&A, Oct. 28, 2015, App. 21 (suspension was "necessitated" by "refusal to . . . refrain from engaging in overt, public religious displays on the football field while on duty as a coach.").

### 3. BSD Has No Adequate Justification for Its Discriminatory Actions

The burden now shifts to BSD to try to "escape liability" on the final two prongs of the *Eng* test. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012). Since BSD has abandoned any argument that it took adverse employment action against Coach Kennedy based on his alleged failure to supervise students after games, the District rests its entire defense on its inaccurate reading of the Establishment Clause.

#### i. BSD Must Show an Actual Violation of the Establishment Clause to Justify Its Discrimination Against Coach Kennedy

BSD claims that its interest in "[a]voiding an Establishment Clause *lawsuit*" justifies its adverse employment actions—even if Coach Kennedy's religious expression did not violate the Establishment Clause. BSD Br. 17–18 (emphasis added).

But the Supreme Court—including in the cases BSD erroneously cites—has held the opposite. BSD cannot abridge constitutionally protected speech merely because it *fears* an Establishment Clause violation—only an *actual* violation is sufficient. *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 112 (2001) (rejecting school district's religious speech restriction because it was not "required to avoid violating the Establishment Clause"); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993) (rejecting school district's ban on religious speech because permitting the speech at issue "would not have been an establishment of religion"); *Widmar v. Vincent*, 454 U.S. 263, 271–72 (1981) (same). The Ninth Circuit is in accord. *See Hills v. Scottsdale Unified Sch. Dist. No. 48*, 329 F.3d 1044, 1053, 1056 (9th Cir. 2003) (striking down speech restrictions where the school district failed to "demonstrate[] that the Establishment Clause would be violated").

In short, the mere specter of an Establishment Clause violation may "fright[en] . . . school attorneys of [Bremerton] School District," but that is not sufficient to justify banning Coach Kennedy's

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 9

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

silent prayer. *Lamb's Chapel*, 508 U.S. at 398 (Scalia, J., concurring in the judgment). BSD must show an actual violation—and that it cannot do.

### ii. Coach Kennedy's Brief, Private Religious Expression Does Not Violate the Establishment Clause

The reason that BSD retreats headlong from the merits of the Establishment Clause inquiry is apparent. BSD does not dispute the basic distinction between "*government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 302 (2000). Instead, BSD simply asserts that a reasonable observer of Coach Kennedy's religious expression "would perceive the message that Kennedy, and hence the school, was endorsing and putting its imprimatur on the prayer." BSD Br. 19.

BSD supplies no authority—because there is none—for the proposition that a reasonable observer would view the act of kneeling on the playing field for 15–30 seconds as a school-sponsored prayer. Instead, the District cites cases where school employees "manifest[ed] approval and solidarity with student religious exercises." *Duncanville*, 70 F.3d at 406 n.4; *see Borden v. Sch. Dist. Twp. of E. Brunswick*, 523 F.3d 153, 178 (3d Cir. 2008) (same). BSD then asserts—with scant explanation—that a reasonable observer of Coach Kennedy's silent prayer would divine a state endorsement from the "necessary historical context." BSD Br. 20.

The reasonable observer is not so dense. True, an understanding of the relevant "history" and "implementation" would include the knowledge that BHS players previously joined Coach Kennedy's religious expression. *Santa Fe*, 530 U.S. at 308. But a reasonable observer would also be fully aware that students were never "coerced," "required," or "actively encouraged" to participate in any religious activity—and that Coach Kennedy fully "complied" with the District's "directives not to intentionally involve students in his on-duty religious activities." BSD Statement and Q&A, Oct. 28, 2015, App. 21–22; Letter to Coach Kennedy, Sept. 17, 2015, App. 4.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 10

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

The reasonable observer would thus see Coach Kennedy kneel silently at midfield and—at most—conclude that he is engaged in a personal moment of silence. Indeed, the District itself admits that it is "*without sufficient knowledge*" to "admit or deny" whether Coach Kennedy "prayed a brief, silent prayer" at the 50-yard line following the BHS football game on October 16, 2015. Answer ¶ 53 (emphasis added). To the extent BSD is a reasonable observer, it has perceived no state endorsement.

No federal court has embraced BSD's extreme view of the First Amendment. BSD's argument, if accepted, would strip Coach Kennedy—and every other public school employee—of "their constitutional rights to freedom of speech [and] expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506. Indeed, BSD's theory of the Establishment Clause would prohibit a teacher sitting alone in the cafeteria from silently praying before lunch on the ground that any student who happened to see her would perceive a state endorsement of religion. That is absurd.

BSD's fallback arguments—relying on inaccurate formulations of inapplicable Establishment Clause tests—likewise fail. BSD's coercion arguments can be readily discarded, given that BSD itself has admitted that Coach Kennedy did "not actively encourage[], or require[], participation" in the "voluntary" prayer, App. 4, and that there is "*no evidence* that students have been directly coerced to pray with Kennedy." App 21.[9] And the fact that BSD seeks to resurrect the "ghoul" of *Lemon*, *see Lamb's Chapel*, 508 U.S. at 398 (Scalia, J., concurring in the judgment)—when *Santa Fe* is clearly the applicable precedent—simply underscores the weakness of its arguments.

### 4. BSD Would Not Have Taken the Adverse Employment Actions Absent Coach Kennedy's Religious Expression

BSD bizarrely claims that it satisfies step five of the *Eng* test—that "the state would have taken the adverse employment action even absent the protected speech," *Eng v. Cooley*, 552 F.3d 1062, 1070

---

[9] BSD's claim that Coach Kennedy's silent prayer "does not differ substantially" from the conduct in *Lee v. Weisman*, 505 U.S. 577 (1992), and *Santa Fe* likewise strains credulity. BSD Br. 22. *Lee* involved "official prayers delivered to a captive audience of public school students and their families" at a graduation ceremony, where both the clergyman who delivered the prayers and the content of the prayers themselves were chosen by the school principal. 505 U.S. at 630 (Souter, J., concurring); *id.* at 587–88 (majority op.). *Santa Fe* involved a pre-game prayer delivered "over the school's public address system, by a speaker representing the student body, under the supervision of school faculty, and pursuant to a school policy that explicitly and implicitly encourage[d] public prayer." 530 U.S. at 310.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 11

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

1  (9th Cir. 2009)—because it took action against Coach Kennedy for engaging in protected speech after it directed him to stop his religious expression. BSD effectively admits that *Eng* step five is satisfied.

### B. Coach Kennedy Will Suffer Irreparable Harm Without a Preliminary Injunction

BSD spends only three sentences arguing Coach Kennedy will suffer no irreparable harm because he "can appear at games and pray" in the stands, and because "he did not even bother to apply for a 2016 coaching job." BSD Br. 23. But no injunction would ever issue if the freedom to exercise First Amendment rights somewhere else—the stands, the street, the quiet of one's own home—remedied the harm inflicted by an adverse employment action. And, as already explained, *see supra* § II, note 4, Coach Kennedy was not obligated to forego his First Amendment rights to apply for a 2016 job. In short, BSD has no answer to the well-established rule that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (internal quotation marks omitted).

### C. The Balance of Equities Tips Heavily in Coach Kennedy's Favor

Because Coach Kennedy's "First Amendment rights are being chilled, the "balance of equities favors [him]." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).

### D. A Preliminary Injunction Is in the Public Interest

BSD does not dispute that courts have widely recognized a "significant public interest in upholding free speech principles." *Klein*, 584 F.3d at 1208. Instead, the District asserts that an injunction is not in the public interest because allowing Coach Kennedy to pray would work an Establishment Clause violation. But Coach Kennedy's silent prayer would work no Establishment Clause violation—while allowing BSD's policy to stand would infringe not only Coach Kennedy's First Amendment rights, but chill or destroy those of every other BSD employee.

### CONCLUSION

The Court should enter a preliminary injunction in favor of Coach Kennedy.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 12

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

| | | |
|---|---|---|
| 1 | Dated:  September 15, 2016 | Respectfully submitted, |
| 2 | Hiram Sasser*<br>    SBA No. 24039157 | /s/ *Rebekah Perry Ricketts*<br>Rebekah Perry Ricketts* |
| 3 | Michael Berry*<br>    SBA No. 24085835 | SBA No. 24074883<br>Benjamin D. Wilson |
| 4 | FIRST LIBERTY INSTITUTE<br>2001 West Plano Parkway, Suite 1600 | SBA No. 24084105<br>GIBSON, DUNN & CRUTCHER LLP |
| 5 | Plano, TX 75075<br>Tel:  (972) 941-6162 | 2100 McKinney Avenue, Suite 1100<br>Dallas, TX 75201<br>Tel:  (214) 698-3100 |
| 6 | Fax:  (972) 423-6162<br>hsasser@firstliberty.org<br>mberry@firstliberty.org | Fax:  (214) 571-2900<br>rricketts@gibsondunn.com<br>bwilson@gibsondunn.com |
| 7 | Anthony J. Ferate*<br>    SBA No. 21171 | Jeffrey Paul Helsdon |
| 8 | FERATE PLLC<br>4308 Echohollow Trail | WSBA No. 17479<br>OLDFIELD & HELSDON, PLLC |
| 9 | Edmond, OK 73025<br>Tel: (202) 486-7211 | 1401 Regents Blvd., Suite 102<br>Fircrest, WA 98466<br>Tel:  (253) 564-9500 |
| 10 | aj@feratepllc.com | Fax:  (253) 414-3500<br>jhelsdon@tacomalawfirm.com |
| 11 | | *Counsel for Plaintiff Joseph A. Kennedy* |

24     * Admitted *pro hac vice*.

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 13

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2016, the foregoing document was served via electronic filing on all counsel of record in this case.

                         /s/ *Rebekah Perry Ricketts*
                         Counsel for Plaintiff

REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
Page 14

OLDFIELD & HELSDON, PLLC
1401 Regents Blvd., Suite 102
Fircrest, WA 98466
Tel: (253) 564-9500 • Fax: (253) 414-3500