# EXHIBIT 2




## Bremerton School District Statement and Q&A
## Regarding Assistant Football Coach Joe Kennedy

This afternoon, the Bremerton School District informed Bremerton High School assistant football coach Joe Kennedy that he has been placed on paid administrative leave. This action was necessitated by Kennedy's refusal to comply with the District's lawful and constitutionally-required directives that he refrain from engaging in overt, public religious displays on the football field while on duty as a coach. While the District appreciates Kennedy's many positive contributions to the BHS football program, and therefore regrets the necessity of this action, Kennedy's conduct poses a genuine risk that the District will be liable for violating the federal and state constitutional rights of students or others. For this reason, Kennedy will not be allowed to further violate the District's directives.

### Has Kennedy been fired?

No. He remains employed by the District, and will be paid as such throughout the remainder of his contract term, unless his employment status is changed in the future. However, unless and until he affirms his intention to comply with the District's directives, he will not participate, in any capacity, in BHS football program activities.

Of course, like any other member of the community, Kennedy may attend District events that are open to the public on the same terms as any other community member.

### Why can't Kennedy lead students in voluntary prayer? Nobody is forced to participate, are they?

There is indeed no evidence that students have been directly coerced to pray with Kennedy. But that isn't the standard. Over fifteen years ago, the United States Supreme Court said as much. In *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000), the Court held that a school district's practice of simply allowing its facilities to be used for religious expression during a district-sponsored football game violated the First Amendment's Establishment Clause because of the reasonable perception by students and attendees of district endorsement of religion. That decision makes clear that students can pray on their own; but it is a constitutional violation of students' rights for a District employee, acting as such, to initiate prayers with students. It is equally clear that District employees may not participate in even student-initiated prayer. *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402 (1995). While attending games may be voluntary for most students, students required to be present by virtue of their participation in football or cheerleading will necessarily suffer a degree of coercion to participate in religious activity when their coaches lead or endorse it.

Notably, we believe Mr. Kennedy understands this. On September 17, 2015, the District notified him that he was prohibited from repeating his prior practices of leading players in a pre-game prayer in the locker room or leading players in a post-game prayer immediately following games.

B19003168



To the District's knowledge, Mr. Kennedy has complied with those directives not to intentionally involve students in his on-duty religious activities. However, he has continued a practice of engaging in a public religious display immediately following games, while he is still on duty.

**Why has the District prohibited Mr. Kennedy from praying on his own?**

It hasn't. The District respects Mr. Kennedy's own constitutional right to free exercise of religion, and understands that it has a duty to reasonably accommodate that exercise under Title VII of the Civil Rights Act. To that end, the District has repeatedly offered to accommodate Kennedy's religious exercise by providing him with a private location to use for prayer that does not interfere with his performance of his duties. Examples are private locations within the school building or athletic facility, or even in the Memorial Stadium press box. The District has also encouraged Kennedy to offer his own suggestions for ways in which his desire to engage in private prayer can be accommodated without subjecting the District to liability for violating the Establishment Clause.

To date, Mr. Kennedy has not taken the District up on any of these offers. Instead, his legal representatives have clearly stated in the media that an accommodation that does not allow Kennedy the spotlight of the 50-yard line immediately following games will be unacceptable to him.

**Why does Kennedy have to hide in order to pray?**

He doesn't have to "hide." However, the District cannot allow an employee, while still on duty, to engage in religious conduct or display that a reasonable observer, aware of the context, would perceive as District endorsement of religion. This "endorsement" standard was identified by the Supreme Court in *Santa Fe*, and the federal courts have expanded upon it in the fifteen years since that decision. For example, in 2008, a federal appeals court held that a football coach known to have previously led students in prayer must not be allowed even to kneel or bow his head while students prayed, as this would constitute District endorsement of religion in violation of the Constitution. *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153. And in 2006, the Ninth Circuit Court of Appeals held that a public employer's interests in avoiding such Establishment Clause violations "outweigh the resulting limitations on [an employee's] free exercise of his religion at work." *Berry v. Dep't of Social Services*, 447 F.3d 642.

If the District allowed Kennedy to engage in a public religious display in the midst of the performance of his duties, the result would be the same as in East Brunswick: The District would be subject to liability for violating the rights of its students if it allows this practice to continue. The District cannot put scarce funds needed for the District's basic educational mandate (which our State Supreme Court has already determined to be constitutionally inadequate) at such risk. Therefore, Kennedy's free exercise rights must be exercised only in a way that will not result in such a violation. The accommodations offered by the District are reasonable and would allow such exercise by Mr. Kennedy, while avoiding violating the rights of others.

B19003169



**Isn't Kennedy off duty after the game ends, and free to do what he wants?**

No. All paid coaches in District athletic programs are required to remain with the program, performing duties as assigned, following athletic contests. These events clearly do not end upon the blowing of the final whistle. At that point, players engage in post-game traditions, such as the singing of the BHS fight song and exchanging congratulatory and uplifting words with the opposing team's players. They then return to the locker room to change out of their uniforms, and are then released to their parents or are authorized to leave. During that time, those students remain in the care of the District, and the District's employees have a legal obligation to maintain supervision of the players until they have left the event. We believe that all of the District's coaches understand this, and that players' parents reasonably expect it.

**What about a moment of silence?**

The District has given preliminary consideration to the option of calling for a moment of silence at the end of football games. However, the U.S. Supreme Court ruled in 1985 that a moment of silence adopted for the purpose of facilitating prayer constitutes state endorsement of religion in violation of the Establishment Clause. *Wallace v. Jaffree*, 472 U.S. 38. The various federal appeals courts have subsequently issued varying, possibly contradictory, decisions on this topic. At best, the constitutionality of a District-endorsed moment of silence is debatable – particularly if the practice is adopted for the specific purpose of facilitating an employee's desire to engage in a public religious display while on duty. While the District may continue to explore this option, it is not presently satisfied that it would survive a constitutional challenge.

**Hasn't the Supreme Court allowed prayers at public meetings? How is this different?**

Yes. In 2014, the U.S. Supreme Court held in *Town of Greece v. Galloway*, 134 S.Ct. 1811, that it was not a violation of the Establishment Clause for a town council to begin its meetings with a brief prayer. Those prayers were provided by a variety of individuals of various faiths. The Court held that this tradition was authorized in the narrow circumstance of opening legislative sessions, where it was "meant to lend gravity to the occasion and reflect values long part of the Nation's heritage," and to "invite lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing." The Court noted that the practice dates to the framing of the Constitution itself. The *Greece* case does not invalidate the Court's prior, more restrictive application of the Establishment Clause in the context of public schools, where the audience consists of large numbers of students, rather than mostly adults.

**Why has this come up now, when Kennedy has been praying on the field for years?**

The District's recent directives were not the result of formal complaints about Kennedy's prayers in the locker room and on the field. These activities simply were not known to District administrators until an employee of another district mentioned the post-game prayers to a

B19003170



District administrator. That administrator recognized the clear legal issues presented by these activities, and this prompted the District's inquiry and subsequent directives.

### If nobody complained, why not leave Kennedy alone?

This was not an option. The prayer sessions with students clearly violated the Establishment Clause. The District cannot allow students' rights to be violated simply because none of them complain. Embedded in the federal court precedent discussed above is the reasonable expectation that students will feel coerced to go along with religious activity that is led or endorsed by their teachers and coaches. It is very likely that over the years, players have joined in these activities because to do otherwise would mean potentially alienating themselves from their team, and possibly their coaches. The District has a fundamental obligation to protect the rights of all of its students.

### Is the District allowing other groups to use the football field for religious activities?

No. While District facilities can be used by private groups for religious activities, the District cannot allow this to occur while those same facilities are being used for District functions. During and after football games – and until the attendees leave these events – the field and stadium are exclusively in use by the District, for the District-sponsored events. The football field is not a public forum when it is in use for a District-sponsored athletic event. Thus, no group will be approved to use it for their own purposes while these events are occurring, and the District will take steps to enforce the closure of the field to non-participants while it is still in use for the District event.

B19003171